VACHE A. THOMASSIAN  (S.B. #289053)
vache@kjtlawgroup.com
CASPAR JIVALAGIAN (S.B. #282818)
caspar@kjtlawgroup.com
KJT LAW GROUP LLP
230 N. Maryland Ave., Suite 306
Glendale, CA 91206
Telephone:   818.507.8525

CHRISTOPHER A. ADAMS (S.B. #266440)
ca@AdamsEmploymentCounsel.com
ADAMS EMPLOYMENT COUNSEL
4740 Calle Carga
Camarillo, CA 93012
Telephone:   818.425.1437

Attorneys for Plaintiff Juan Guzman-Lopez,
on behalf of himself and all others similarly
situated

*Additional Attorneys listed on the next page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN M. GUZMAN-LOPEZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE AMERICAN BOTTLING COMPANY, a corporation; KEURIG-DR. PEPPER, INC., a corporation; and DOES 1-20, inclusive <br><br> Defendants. | Case No.:  2:19-cv-04358-R-GJS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JUAN GUZMAN-LOPEZ' MOTION FOR CLASS CERTIFICATION** <br><br> Date:    December 2, 2019 <br> Time:  10:00 a.m. <br> Place:  Courtroom 880, 10th Floor <br> Judge:  Manuel L. Real |

KJT LAWGROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

Brian R. Short (SBN 236140)
*Brian@ShortLegal.com*
Dorota A. James (SBN 309933)
*Dorota@ShortLegal.com*
ShortLegal, APC
350 10th Ave., Suite 1000
San Diego, California 92101
Telephone: 619.272.0720
Facsimile: 619.839.3129

Attorneys for Plaintiff Juan Guzman-Lopez,
on behalf of himself and all others similarly
situated

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KJT LAWGROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

# **TABLE OF CONTENTS**

I.    INTRODUCTION          1
II.   FACTUAL BACKGROUND     4
    1.   Non-Compliant Rest Break Policies                                              5
    2.   Off–the–Clock Work                                                             5
    3.   Inability to Take Meal and Rest Breaks                                         6
    4.   Experience of Class Members Mirror the Experiences of Plaintiff                7
III.  PROCEDURAL HISTORY    8
IV.   CLASS DEFINITIONS          11
V.    LEGAL STANDARD FOR CLASS CERTIFICATION          12
    1.   The Class is Ascertainable                                                     13
    2.   The Class is Manageable                                                        13
VI.   PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(a)          14
    1.   Numerosity                                                                     14
    2.   Commonality                                                                    14
        a.   Whether Plaintiff and Class Members Received Statutorily Required Rest Breaks   15
        b.   Whether Plaintiff and Class Members Were Provided a Meal Period Before the End of the Fifth Hour of Work                                                          16
        c.   Whether Plaintiff and the Class Members Were Paid for All Hours Worked     17
        d.   Whether Wage Statements Provided to Plaintiff and Class Members were Accurate and Whether Plaintiff and Class Members were Timely Paid All Wages Due at Termination   19
    3.   Typicality                                                                     20
    4.   Adequacy of Representation                                                     20
        a)   Plaintiff are Adequate Class Representatives                               20
        b)   Plaintiff's Attorneys are Adequate Class Counsel                           21
VII.  PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(b)(3)          22
    1.   Predominance                                                                   22
        a.   Predominance Exists for the Off–The–Clock Work Subclass                    22
        b.   Predominance Exists for the Meal Break and Rest Break Subclasses           23
        c.   Predominance Exists for the Wage Statement and Waiting Time Subclasses     23
    2.   Superiority                                                                    23
VIII. IN THE ALTERNATIVE, PLAINTIFF REQUESTS ADDITIONAL PRECERTIFICATION DISCOVERY 24
IX.   CONCLUSION          25

Memorandum of Points and Authorities
in Support of Plaintiff's Motion for Class Certification

1
2
3

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Adoma v. Univ. of Phoenix, Inc.*
  270 F.R.D. 543 (E.D. Cal. 2010)..........................................................................16

*Benton v. Telecom Network Specialists, Inc.*
  220 Cal.App.4th 701 (2013) ...................................................................................6

*Bradley v. Networkers Int'l, LLC*
  211 Cal.App.4th 1129 (2012) ...............................................................................19

*Brinker Restaurant Corp. v. Superior Court*
  53 Cal.4th 1004 (2012) ..........................................................................................11

*Gen. Tel. Co. of Southwest v. Falcon,*
  457 U.S. 147 (1982) ...............................................................................................21

*Gonzalez v. Millard Mall Servs., Inc.*
  281 F.R.D. 455 (2012) ...........................................................................................10

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ................................................... 12, 22, 23

*Hernandez v. Mendoza*
  199 Cal.App.3d 721 (1988) ...................................................................................20

*Hodges v. Akeena Solar, Inc.*
  274 F.R.D. 259 (N.D. Cal. 2011) .........................................................................22

*Ikonen v. Hartz Mountain Corp.*
  122 F.R.D. 258 (S.D. Cal. 1988) ..........................................................................12

*In re Countrywide Fin. Corp. Secs. Litig.*
  273 F.R.D. 586 (C.D. Cal. 2009).........................................................................10

*In re Juniper Networks Sec. Litig.*
  264 F.R.D. 584 (N.D. Cal. 2009) .........................................................................21

*In re TFT-LCD Antitrust Litig.*
  267 F.R.D. 291 (N.D. Cal. 2010) .........................................................................10

*Jimenez v. Allstate Ins. Co.*
  2012 WL 1366052, at *8 (C.D.Cal. Apr. 18, 2012).........................................12

*Jones v. Farmers Ins. Exch.*
  221 Cal. App. 4th 986 (2013), *as modified on denial of reh'g* (Nov. 26, 2013)..13

*Lao v. H&M Hennes & Mauritz, L.P.*
  2018 WL 3753708 at *2  (N.D. Cal. August 8, 2018) ................................. 14, 15

*Lerwill v. Inflight Motion Pictures, Inc.*
  582 F.2d 507 (9th Cir. 1978)...................................................................................9

KJT LAWGROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

17
18
19
20
21
22
23
24
25
26
27
28

Memorandum of Points and Authorities
in Support of Plaintiff's Motion for Class Certification

*Lindow v. United States*
   738 F.2d 1057 (9th Cir.1984) ..................................................................16

*Madison Assocs. v. Baldante*
   183 B.R. 206 (Bankr. C.D. Cal. 1995) ...................................................22

*Morillion v. Royal Packing Co.*
   22 Cal.4th 575 (Cal. 2000) ........................................................... 13, 16

*Negrete v. ConAgra Foods Inc.*
   2019 WL 1960276 at *15 (C.D. Cal. March 29, 2019)..........................15

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) ..................................................................21

*Stuart v. Radioshack Corp.*
   2009 WL 281941 (N.D. Cal. Feb. 5, 2009)..............................................22

*Tourgeman v. Collins Fin. Servs., Inc.*
   2011 WL 5025152 (S.D. Cal. Oct. 21, 2011)...........................................23

*Troester v. Starbucks Corp.*
   5 Cal.5th 829 (2018)...................................................... 10, 13, 14

*Valentino v. Carter-Wallace, Inc.*
   97 F.3d 1227 (9th Cir. 1996) ..................................................................24

*Wal-Mart Stores v. Dukes*
   131 S.Ct. 2541 (2011). ................................................................. 9, 12

*Weinberger v. Jackson*
   102 F.R.D. 839 (N.D. Cal. 1984) ............................................................23

*Williams v. Superior Court*
   221 Cal.App.4th 1353 (2013) ..................................................................13

**Rules**

Fed. R. Civ. Proc. 23(a) ...............................................................................9
Fed. R. Civ. Proc. 23(a)(1).........................................................................12
Fed. R. Civ. Proc. 23(a)(2).........................................................................13
Fed. R. Civ. Proc. 23(a)(3).........................................................................23
Fed. R. Civ. Proc. 23(a)(4).........................................................................24
Fed. R. Civ. Proc. 23(b) .............................................................................10

**Regulations**

Cal. Labor Code § 512 ...............................................................................20

Memorandum of Points and Authorities
in Support of Plaintiff's Motion for Class Certification

# I.   **INTRODUCTION**

Plaintiff Juan M. Guzman-Lopez ("Plaintiff") brought this action for failure to: pay regular, minimum, and overtime wages, wages due upon termination, provide accurate wage statements, and for meal and rest break violations against Defendants the American Bottling Company and Keurig-DR. Pepper, Inc. (collectively, "Defendants") on behalf of himself  and other current and former non-exempt employees who worked for Defendants in California between April 15, 2014 and the present.

Plaintiff now moves for class certification on the following basis:

**First**, both nationwide and California Defendants' policies and practices inhibited Plaintiff and class members from taking off-duty rest breaks.  Specifically, Defendants required their employees to remain on-site and on-call during their rest periods.  The "California Wage and Hour Compliance Policies" produced by Defendants reads as follows in the relevant parts: "[B]ecause rest periods are paid time, employees should remain on premises."  (Exh. A[1] at p.4.)  This prohibition on leaving the premises during the rest breaks is also included in Defendants' "U.S. Timekeeping, Overtime, Meal & Rest Break Policy for Non-Exempt Employees" which reads in the relevant parts as follows:  "Employees are not permitted to leave Company premises while on paid rest breaks."  (Exh. B at p.4.)

The policy language undoubtfully evidences Defendants' rest break policies and are universally and commonly applied to all of their employees throughout the state of California.  In *Augustus v. ABM Securities Inc.*, the California Supreme Court held that an employer could not exert any control over employees and/or require its employees to remain on-site or on-call during rest periods. *Augustus v. ABM Securities Inc.*, 2 Cal.5th 257, 272 (2016).  The Court further concluded: "During required rest periods, employers must relieve their employees of all duties and

---

[1] All Exhibits are attached to the Declaration of Christopher A. Adams ("Adams Decl."), filed concurrently with this motion.

1

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification
CASE NO. 2:19-CV-04358-R-GJS

relinquish any control over how employees spend their break time." *Id*. at *257*. Here, Plaintiff and all other non-exempt employees in California were required to remain on-site during their rest periods and, consequently, were not relieved of Defendants' control during this time. Therefore, Defendants failed to provide compliant off-duty rest periods to all of their California employees who were subject to this illegal statewide policy.

**Second**, Defendants' policy and practice of having employees clock–in after performing required pre–shift work fails to compensate them for all hours worked. Specifically, Defendants' policy states:

> "If you work at different locations (e.g., you visit various store locations during a workday), you generally will begin the shift when you arrive at the first location and will end the shift when you depart the last location." (*Exh. A* at p. 3.)

Plaintiff began his workday at home by logging on to Defendants' applications to download his schedule. After doing so, Plaintiff reviewed instructions for each merchandising job and mapped routes to store locations. After completing these administrative tasks at home, Plaintiff drove to his first retail store of the day where he officially started his shift. Contrary to California law, which requires employers to compensate their employees for all hours worked, Defendants failed to compensate Plaintiff and class member for all of this pre-shift work that they performed.

**Third**, Defendants had a company-wide policy of not paying Plaintiff and class members for the time they spent driving between home and first and last retail location. The relevant part of Defendants' California policy reads as follows:

> "Travel time to and from an employee's home is generally not considered hours worked, as it is normal commute time. If any employee is required to travel between worksites (for example, from

KJT LAW GROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

the Company to a customer location, or from one customer location to another) during the employee's workday, such travel time is "hours worked" and the employee will be compensated for the time." (Ex. A at p.4.)

Defendants' policy violates the "continuous workday" rule under which any travel time that occurs after the beginning of an employee's first principal activity and before the end of an employee's last principal activity on any workday must be included in hours worked. *Rutti v. LoJack, Corp., Inc.*, 596 F.3d 1046 (9th Cir. 2010). After completing their administrative tasks at their homes, Plaintiff and class members left directly from home for work assignments that were predetermined by their employer. They travelled directly to a customer's worksite and rarely reported to the Defendants' offices. There is no doubt the pre-shift administrative work and the predetermined travel schedule Defendants imposed on Plaintiff and class members made the time spent working at home and the drive time between the home and the first and last location "labor" within the meaning of the California Law which should have been compensated as required by the California Labor Code.

**Fourth**, Defendants practices inhibited Plaintiff and class members from taking their meal breaks. Defendants exerted constant pressure on Plaintiff and class members to complete the predetermined projects in the shortest amount of time. Due to the high volume of their work assignments, the intense pressure to complete their jobs within their timeframe imposed by Defendants, and the associated travel time between the job sites, Plaintiff and class members were regularly required to forgo their meal breaks in violation of California law.

**Fifth**, as a direct result of Defendants' policies and practices of not including (1) the time required for Plaintiff and class members to complete pre–shift activities and the time to drive between their homes and the first and last retail locations in their hours worked and (2) meal and rest premiums for the missed or on-duty rest and meal

breaks, Defendants knowingly issued inaccurate wage statements to Plaintiff and class members, in violation of California Labor Code section 226(a).   Further, Plaintiff and class members who left Defendants' employ, were not timely paid all wages due at termination, in violation of California Labor Code sections 201-203.

The class satisfies Rule 23's class certification requirements. Plaintiff seeks an order certifying the classes described below, and an order disseminating notice to the class members.

That said, to the extent that the Court is inclined to deny class certification, in the alternative, for the reasons outlined above, Plaintiff respectfully requests that this Court grant Plaintiff additional time to conduct pre-certification class discovery and renew this motion.  *See ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018) (finding the district court's strict application of its local rules with respect to the timeliness of plaintiff's motion for class action certification was inconsistent with the Federal Rules of Civil Procedure and thus an abuse of discretion).

## II.   <u>FACTUAL BACKGROUND</u>

Defendant Keurig-Dr. Pepper, Inc., formerly Dr. Pepper-Snapple Group, Inc., is a nationwide conglomerate and makers of various assortments of soft drinks. (Adams Decl. ¶ 12.)  Defendant The American Bottling Company is a subsidiary of Keurig-Dr. Pepper, Inc. offering bottling services and the distributor of Dr. Pepper affiliated soft drinks.  (*Id*. at  ¶ 13.)

During the class period, Plaintiff was jointly employed by Defendants Dr. Pepper-Snapple Group, Inc. and The American Bottling Company at their facility in Vernon, California.  (Declaration of Juan Guzman-Lopez ("Guzman Decl."), Exh. C at ¶ 7.)   Defendants employed Plaintiff as a merchandiser from approximately November 2017 to September 2018.  (*Id*.)  As a merchandiser, Plaintiff would drive to various storefronts throughout Los Angeles County in order to set up promotional signs and stock-up on merchandise under the Keurig-Dr. Pepper banner.  (*Id*. at ¶

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification
CASE NO. 2:19-CV-04358-R-GJS

8.)   At all times during his employment with Defendants, Plaintiff was a nonexempt employee, paid in whole or in part on an hourly basis. (*Id*. at ¶ 7.)

### 1.  Non-Compliant Rest Break Policies

As mentioned above, Defendants uniform rest break policies required their employees to remain on-site and on-call during their rest periods.  The "California Wage and Hour Compliance Policies" produced by Defendants reads as follows in the relevant parts: "[B]ecause rest periods are paid time, employees should remain on premises." (Exh. A at p.4.)  This prohibition on leaving the premises during the rest breaks is also included in Defendants' "U.S. Timekeeping, Overtime, Meal & Rest Break Policy for Non-Exempt Employees" which reads in the relevant parts as follows:  "Employees are not permitted to leave Company premises while on paid rest breaks." (Exh. B at p.4.)

Not surprisingly, considering that these policies applied to all of Defendants' non-exempt employees in California, Plaintiff testifies that he was subject to this rest break policy in the employee handbook.  (Guzman Decl., Exh. C at ¶ 9.)  In fact, Plaintiff testifies that he was "unaware of any policies of Defendants, either written or otherwise, which would permit [him] to leave the premises during [his] rest periods." (*Id*.)  As a result, Plaintiff notes that because of this rest break policy, he always felt that he was "under the constant scrutiny of [Defendants]." (*Id*. at ¶ 10.)

### 2.  Off–the–Clock Work

As noted above, Defendants' uniform and systematic policy is only to compensate employees once they arrived at a store.  (Exh. A at p. 3.)   But Plaintiff began his workday at home. (Guzman Decl., Exh. C at ¶ 12.)  Plaintiff would receive his daily route list on his cell phone usually around midnight. (*Id*.)  Every morning before he left his home and visited his first store, he would review the route list to familiarize himself with it and get ready for his shift.  (*Id*.)  And because the

*5*

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification
CASE NO. 2:19-CV-04358-R-GJS

KJT LAW GROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

first store location of the day varied each day, this always included determining his first store of the day and mapping the route to that store. (*Id*.)  He would also check his phone for any display orders made by the store managers. (*Id*.)  He would also review the information regarding the quantity of products ordered by my assigned stores for the day. (*Id*.)  After completing these administrative tasks at home, Plaintiff drove to his first retail store of the day. (*Id*.)

Similarly, Plaintiff was regularly required by his supervisors and the merchandiser manager to pick up so-called "repack" boxes from Defendants' facility before he started his daily routes. (*Id*. at ¶ 13.)  Plaintiff had to take the boxes to his assigned stores to repack merchandise from cardboard boxes damaged by the customer or during delivery. (*Id*.)   But he was never paid for the time he traveled from his home to Defendants' facility to pick-up the repack boxes, and the time he traveled from Defendants' facility to his first store location. (*Id*.)

All the time spent completing pre-shift administrative work and the drive time between home and the first and last retail locations was unpaid work as Plaintiff was unable to clock–in and out until he arrived at the first location and left the last retail location during his shift.

### 3.  Inability to Take Meal and Rest Breaks

Due to intense pressure to complete their jobs and inherent problems with leaving a half-finished display in a store, Defendants required Plaintiff to work through his breaks until the project was completed. (Exh. C, Guzman Decl. at ¶ 9.) Specifically, Plaintiff testifies that Defendants prioritize high volume of projects per day and encourages the merchandisers to handle as many assignments as possible. (*Id*. at ¶ 11.)  Consistent with this, almost every day his supervisor or the merchandiser manager would contact him during his shift to add additional routes to his daily schedule. (*Id*.)  As a result, he was under a continuous pressure to complete his routes as fast as he could and move on to the next project. (*Id*.)

KJT LAWGROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

As a result, Plaintiff had trouble taking their meal breaks as a result of the travel time between the job sites which put Plaintiff under strict time constraints to finalize all assigned projects for the day. For example, Plaintiff notes that he had to eat his lunches while driving from one store location to another store, because there was no time otherwise to take a lunch break and he was under a lot of pressure to do my work as efficiently as possible. (*Id.* at ¶ 22.)  Similarly, Plaintiff's breaks were usually late because he would get a call from his direct supervisor requesting that he finish stocking-up the merchandise, complete a display, or clean-up the work area before he could take a break. (*Id.* at ¶ 24.)  And Plaintiff's manager would call him on the company-issued phone and/or his private cell phone during his breaks to discuss the progress of his daily routes. (*Id.* at ¶ 18.)  Having spoken with other merchandisers about these issues, Plaintiff states that it was a common practice of Defendants' supervisors and managers to contact their subordinates during rest and meal breaks to discuss work related issues. (*Id.*)

### 4.  Experience of Class Members Mirror the Experiences of Plaintiff

#### a.  *Class members were subject to Defendants' non-compliant rest break policies prohibiting them from leaving premises*

Like Plaintiff, Class members testify that they were subject to Defendants' policies prohibiting employees from leaving the premises during their rest breaks. (*See* Declarations of Laquitta Robinson, Exh. D at ¶ 4; Miguel Aguilar, Exh. E at ¶ 3; Blake Allen, Exh. F at ¶ 3; Santiago Benavidez, Exh. H at ¶ 3; Justin Betanzos, Exh. I at ¶ 3.)  For example, an Order Picker at Defendants' Vernon facility, testified that he was "given verbal warnings for not being on-call or visible during [his] breaks."  (Declaration of Blake Allen, Exh. F at ¶ 4.)  Similarly, a Forklift Driver at Defendants' Vernon facility testified that he "was given verbal warnings for not being on-call during [his] breaks and [he] was threatened by management to not leave the premise or [he] would be terminated." (Declaration of Miguel Aguilar, Exh. E at ¶ 4.)  Likewise, a Merchandiser testified that he was "given

7

verbal warnings for not being on-call during [his] breaks and [he] was threatened by management." (Declaration of Justin Betanzos, Exh. I at ¶ 4.)

### b.   Class members were not relieved of all duty while on rest breaks

In addition to being prohibited from leaving the premises during their rest breaks, class members were further restricted by Defendants' uniform policy and practice of requiring employees to monitor cell phones, radios, and pagers while on their breaks. (*See* Declarations of Laquitta Robinson, Exh. D at ¶ 5; Miguel Aguilar, Exh. E at ¶ 5; Blake Allen, Exh. F at ¶ 5; Justin Betanzos, Exh. I at ¶ 5.)

### c.   Employees were forgoing their meal breaks due to the high volume of the work assignments.

Like Plaintiff, Class members were forced to forgo their meal breaks due to the intense pressure to finish all of their assignments. (*See* Declarations of Laquitta Robinson, Exh. D at ¶ 6; Blake Allen, Exh. F at ¶ 6.)

### III.   PROCEDURAL HISTORY

On April 16, 2019, Plaintiff filed his Class Action Complaint (the "Complaint") for damages in the State of California Superior Court, Los Angeles County (Case No. 19STCV13050). (Adams Decl. ¶ 14.) The Complaint alleges nine causes of action: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (3) Failure to Pay Minimum and Overtime Wages; (5) Failure to Furnish Accurate Wage Statements; (6) Failure to Maintain Required Records; (7) Failure to Pay All Wages Due to Discharged and Quitting Employees; (8) Unfair Business Practices (California Business and Professions Code §§ 17200, *et seq*.); and (9) Failure to Reimburse for Business Expenditures and Losses. (*Id*. at ¶ 15.) Plaintiff brought this action as a putative Class action seeking to represent a Class of current and former persons employed by Defendants in California as non-exempt employees during the period commencing four years prior to the filing of the Complaint (April

16, 2015) through the final disposition of this action (the "Class").  (*Id*.)  On September 11, 2019, Plaintiff amended the Complaint to assert a representative claim under the California Private Attorneys General Act ("PAGA").  (*Id*.)

In response, on May 15, 2019, Defendants filed their Answer to the Complaint, and shortly thereafter, on May 20, 2019, Defendants removed this action to this Court pursuant to the Class Action Fairness Act of 2005.  (*Id*. at ¶ 16.)   The next day, on May 21, 2019, this action was assigned to the Honorable Manuel L. Real.  (Dkt. #8.)

Pursuant to the Court's June 5, 2019 Order (Dkt. #10) and Federal Rules of Civil Procedure, Rule 26(f), on June 19, 2019, the parties met-and-conferred to discuss this matter in general, including initial disclosures.  (Adams Decl. ¶ 17.)  As part of this meeting, the parties discussed the possibility of resolving this matter informally and expeditiously through private mediation, which would include a stay on formal discovery and conducting targeted, informal discovery.  (*Id*.)  Indeed, the parties' Joint Rule 26(f) Report indicates as much.  (Dkt. #11 at p. 6 (June 28, 2019) ("The Parties . . . have began discussions regarding potential private mediation.").)  Unfortunately, that same month, on June 26, 2019, the Honorable Manuel L. Real passed away.  (Adams Decl. ¶ 18.)  Since then, this case has been handled by the Honorable R. Gary Klausner pending reassignment.  (Dkt. #16.)

Consistent with the parties' intention to pursue private mediation, on July 11, 2019, the parties submitted a Joint Stipulation to Extend the Time to Submit Motion for Class Certification.  (Dkt. #12.)  In response, this Court granted the parties' stipulation and extended the deadline for Plaintiff to file his class certification from August 19, 2019 to September 20, 2019.  (Dkt. #13 (July 18, 2019).)  Again, considering the parties' intention to conserve resources through private mediation and avoid costly classwide discovery, the parties contacted mediators to inquire as to the earliest available mediation date.  (Adams Decl. ¶ 19.)  Unfortunately, the

KJT LAW GROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

earliest available mediation date of the three agreed-upon, experienced wage-and-hour mediators was October 23, 2019 with Lisa Klerman.  (*Id*.)  To that end, on September 6, 2019, Plaintiff filed his *Ex Parte* Application for Extension of Time to File Plaintiff's Motion for Class Certification.  (Dkt. #21.)  On September 11, 2019, this Court granted in part the *ex parte* application extending Plaintiff's deadline to file the motion for class certification to October 30, 2019 — one week after the scheduled mediation.  (Dkt. #26.)

Since the inception of this case, Plaintiff has vigorously pursued classwide discovery both informally and formally.  (Adams Decl. ¶ 20.)  As mentioned earlier, in light of the parties' intention to attend mediation, the parties agreed to stay formal discovery preferring to conduct informal, targeted discovery.  (*Id*. at ¶ 21.)  That said, the parties did exchange initial disclosures pursuant to Federal Rules of Civil Procedure, Rule 26(a)(1), on July 3, 2019.  (*Id*. at ¶ 22.)  Defendants' initial disclosures were inadequate.  (*Id*.)  Specifically, Defendants failed to disclose the names of any witnesses and failed to produce any documents, including their relevant wage-and-hour policies.  (*Id*.)  At that time, Plaintiff did not object, because of the parties' agreement to stay formal discovery, and Defendants would produce such information and documents informally.  (*Id*. at ¶ 23.)

That said, Plaintiff has since met-and-conferred with Defendants about obtaining this information, including putative Class members' contact information.  (*Id*. at ¶ 24.)  As to the production of the Class members' contact information, the parties agreed to the process described in *Belaire-West Landscape v. Superior Court*, 149 Cal. App. 4th 554 (2007) and the use of a third-party administrator.  (*Id*. at ¶ 25.)  To that end, on October 16, 2019, Defendants provided the administrator with the names of 945 individuals.  (*Id*.)  The next day, October 17, 2019, the administrator sent the *Belaire-West* notices to those individuals.  (*Id*.)  Unfortunately, even providing for a truncated opt-out period of 10-days, Plaintiff

KJT LAWGROUP LLP

330 N. Maryland Ave. Suite 306
Glendale, CA 91206

10

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification
CASE NO. 2:19-CV-04358-R-GJS

only received the Class contact information on October 29, 2019 — one day before the class certification deadline.  (*Id.*)

Furthermore, upon receiving notice of the Court's August 21, 2019 Order denying the parties' stipulation to extend the class certification deadline, that same day, on August 21, 2019, Plaintiff served written discovery on Defendants.  (*Id.* at ¶ 26.)  More than a month later, on September 30, 2019, Defendants produced some documents.  (*Id.*)  That said, since then, Defendants have continuously been producing documents in tranches, the latest of which was on October 29, 2019.  (*Id.*)

Similarly, on August 21, 2019, Plaintiff served deposition notices of Defendants' person most knowledgeable for September 5, 2019 and September 6, 2019.  (*Id.* at ¶ 27.)  On September 3, 2019, Defendants objected to these depositions stating, among other things, that Defendants are unavailable on those dates.  (*Id.*)  To that end, the depositions were rescheduled for October 18, 2019.  (*Id.*)  Unfortunately, due to a transportation incident outside of the control of Plaintiff on the morning of October 18, 2019, the deposition was rescheduled to October 25, 2019.  (*Id.*)  As a result of this delay and the unavailability of Defendants' person most knowledgeable, Plaintiff only received the rough transcript of the deposition on October 29, 2019.  (*Id.*)

## IV.   CLASS DEFINITIONS

The class definition must identify "members [who can] be identified with particularity." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  The class is defined as follows:

> *All persons who have been employed by Keurig-Dr. Pepper, Inc. and The American Bottling Company in California as a non-exempt employee at any time during the period beginning four years prior to the filing of this Complaint and ending on the date as determined by the Court (the "Class Period"), who:*
>
> > a) Were not paid for all hours worked, in any pay period that is within the Class Period ("The Off–the–Clock Subclass"); and/or

b) Worked more than 5–hours and were not provided with uninterruptable meal periods of at least 30–minutes, and/or meal periods began after the end of the fifth hour of work; ("The Meal Break Subclass"); and/or

c) Were not provided uninterruptable rest breaks of at least 10–minutes for each 4–hours of work ("The Rest Break Subclass"); and/or

d) Were not provided with accurately itemized wage statements listing all hours worked ("The Wage Statement Subclass"); and/or

e) Were not paid all wages due and owing at the time of their separation ("The Waiting Time Subclass").

## V.   LEGAL STANDARD FOR CLASS CERTIFICATION

A plaintiff seeking class certification must affirmatively show the class meets the Rule 23 requirements.[2] *Wal-Mart Stores v. Dukes,* 131 S. Ct. 2541, 2551 (2011). Under Rule 23(a), a party must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Then, the court must determine whether the class action is maintainable under Rule 23(b). *Gonzalez v. Millard Mall Servs., Inc.,* 281 F.R.D. 455, 460 (S.D. Cal. 2012).

Rule 23(b)(3) authorizes certification when "questions of law or fact common to class members predominate over any questions affecting only individual class mem-bers," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs and the class seek relief under Rule 23(b)(3) for the company–wide practice of having class members perform routine, necessary tasks before being able to clock–in, which presents common questions regarding the compensation for this time, as required under *Starbucks, supra,* 5 Cal. 5th at 848.

A motion for class certification is procedural in nature and the court

---

[2] "Rule(s)" are the Federal Rules of Civil Procedure, unless indicated otherwise.

considers the merits of the case only to the extent they overlap with the requirements of Rule 23. *Ellis v. Costco Wholesale Corp.*, 657 F.3d. 970, 981 (9th Cir. 2011).

### 1. The Class is Ascertainable

A class is ascertainable "if its members can be ascertained by reference to objective criteria." *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010.) The class of over 4,502 members employed during the proposed class period is ascertainable based on Defendants' records, through job titles, and dates of employment.

### 2. The Class is Manageable

In cases with multiple causes of action, division of the class into smaller classes or subclasses contributes to the manageability of class litigation at trial. *In re Countrywide Fin. Corp. Secs. Litig.*, 273 F.R.D. 586, 624 (C.D. Cal. 2009). Here, to ensure the Class is manageable, Plaintiff identified six sub-classes: (1) "The Off-the-Clock" Subclass; (2) "The Meal Break" Subclass; (3) "The Rest Break" Subclass; (4) "The Wage Statement" Subclass; and (5) "The Waiting Time" Subclass.

In a wage-and-hour case such as this, there are many recognized methods to prove damages, including employer's business records and survey evidence. "Representative testimony, surveys and statistical analysis are all available as tools to render manageable determinations of the extent of liability." *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004, 1054. As testified by Defendants' Person Most Knowledgeable during his deposition, Defendants maintain four electronic timekeeping systems: Kronos, Xora, MyTime, and Apacheta, which non-exempt employees were required to use to record the start and end of their shifts, and start and end of their meal breaks. (Deposition of Maung Lin, Exh. G at 145:7-9; 158:3-11; 187:5-19; 186:11-17; 96:4-11; 96:24-97:12; 147:20-149:11.) Time punches from these systems can be compared with time punches in the payroll system.

KJT LAWGROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification
Case No. 2:19-cv-04358-R-GJS

### VI.    **PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(A)**

#### 1.  **Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Generally, "classes of 40 or more are numerous enough" to satisfy the numerosity requirement of the class certification.  *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988). Defendants' corporate records indicate there are 4,502 putative class members in California locations, and Defendants' removal papers indicated as much. (Adams Decl., ¶ 29.)  Numerosity is satisfied.

#### 2.  **Commonality**

Rule 23(a)(2) requires "questions of law or fact common to the class." This requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The U.S. Supreme Court stated, "We quite agree that for purposes of Rule 23(a)(2) 'even a single common question will do.'" *Dukes,* 131 S. Ct. at 2556 (reference omitted). In the employment context, "[c]laims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage-and-hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker*, 53 Cal.4th at 1033. Merely having a facially valid policy is not enough, because "this showing does not end the inquiry." *Jimenez v. Allstate Ins. Co.,* 2012 WL 1366052, at *8 (C.D. Cal. Apr. 18, 2012).) The question at that point becomes "whether [Defendant] has a practice of not paying [employees] for off–the–clock time." *Williams v. Super. Ct.,* 221 Cal.App.4th 1353, 1365 (2013). This is because "[a] companywide practice can sustain a common question of fact or law that supports commonality for class certification." *Id*. at 1369.; *see also Brinker*, 53 Cal.4th at 1051–52 (authorizing certification of an off–the–clock class where employer had a common policy or practice resulting in improper payments to the class).  Last year, the California Supreme Court clarified that compensation for all time worked includes minutes routinely worked off–the–clock. *Starbucks,* 5 Cal. 5th

at 848.

Here, several common questions apply to all class members, and "generate common answers apt to drive the resolution of [this] litigation." *Dukes*, 131 S.Ct. at 2551. Those questions are:

    a. <u>Whether Plaintiff and Class Members Received Statutorily Required Rest Breaks</u>

Compelling employees to remain on the Company's premises during their rest breaks is inconsistent with being relieved of all work duties as required for rest breaks. *Augustus,* 2 Cal. 5th at 269-70. In *Augustus v. ABM Securities Inc.*, the California Supreme Court held that an employer could not exert any control over employees and/or require its employees to remain on-site or on-call during rest periods. *See Augustus v. ABM Securities Inc.,* 2 Cal.5th 257, 272 (2016). The Court further concluded: "During required rest periods, employers must relieve their employees of all duties and relinquish any control over how employees spend their break time." *Id.* at 257. Similarly, the California Supreme Court held in *Brinker* that an employer cannot "not impede or discourage" employees from taking a break. *Brinker*, 53 Cal.4th at 1041.

Defendants' rest break policies, applicable to all their California non-exempt employees, required their employees to remain on-site and on-duty during their rest breaks. (*See* Exhs. A and B.) In doing so, Defendants discouraged its non-exempt employees from taking their rest breaks by requiring them to remain on the premises. Defendants also failed to relinquish control over how Plaintiff and Class members spent their rest breaks. This is especially the case here where Defendants required Plaintiff and Class members to monitor cell phones or radios during their break. This is exactly the sort of control that the Court in *Augustus* found violated California rest break law:

"Employees forced to remain on call during a 10-minute rest period must

fulfill certain duties: carrying a device or otherwise making arrangements so the employer can reach the employee during a break, responding when the employer seeks contact with the employee, and performing other work if the employer so requests. These obligations are irreconcilable with employees' retention of freedom to use rest periods for their own purposes."

*Augustus*, 2 Cal. 5th at 270.

### b. Whether Plaintiff and Class Members Were Provided a Meal Period Before the End of the Fifth Hour of Work

Under California law, "an employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes…" Cal. Labor Code § 512.  If an employer does not provide an employee with a required, 30–minute meal period before the end of the fifth hour, it must pay the employee one hour of pay at the employee's regular rate of compensation. *Bradley v. Networkers Int'l, LLC*, 211 Cal.App.4th 1129, 1149 (2012).

As explained above, Plaintiff and class members were under a constant pressure to complete their assignment within the timeframe imposed by Defendants to meet their clients' expectations. (Guzman Decl., Exh. C ¶¶ 11, 18; Declarations of Laquitta Robinson, Exh. D at ¶ 6; Blake Allen, Exh. F at ¶ 6.) Furthermore, the pressure to satisfy the clients' needs, the high volume of the work assignments to be completed, and the associated travel time between the retail locations forced Plaintiff and class members to regularly forgo their lunches. (*Id*.) Moreover, because of the inherent problem with leaving a half-finished stocking and/or display in a store, Plaintiff and other class members were required to remain on the premises and in attendance of their display to ensure the safety of the customers.  (Guzman Decl., Exh. C ¶ 24.) In other words, where the official policy is facially valid, meal break class can still be certified, if specific facts show the employer has informal policies

16

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification
CASE NO. 2:19-CV-04358-R-GJS

discouraging the taking of meal breaks. *See Pina v. Con-Way Freight, Inc.*, 2012 WL 1278301, at *7 (N.D. Cal. Apr. 12, 2012).

Therefore, regardless of Defendants' facially lawful meal break policy, Plaintiff and class members were unable to take complaint meal break and should have been paid meal break premiums for their on-duty and missed meal breaks as required under the California law.  Here, the Plaintiff and class members were denied the opportunity to take law compliant meal breaks, and typically could not take them.  Meal breaks were dependent on the workload.  ((Guzman Decl., Exh. C ¶ 11.) Class evidence shows call Plaintiff and class members were expected to skip and/or work through their meal breaks without compensation. (Guzman Decl., Exh. C ¶¶ 11, 18; Declarations of Laquitta Robinson, Exh. D at ¶ 6; Blake Allen, Exh. F at ¶ 6.)

    c.  <u>Whether Plaintiff and the Class Members Were Paid for All Hours Worked</u>

In California employers must pay an employee for all "hours worked," which is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Morillion v. Royal Packing Co*., 22 Cal.4th 575, 578 (Cal. 2000) ("*Royal Packing*") (quotation omitted).  Under this rule, an employer is deemed to have "suffered or permitted [an employee] to work" if it knew or should have known that its employees were working off-the-clock.  *Id*. at 585. "Thus, a plaintiff may establish liability for an off-the-clock claim by proving that (1) he performed work for which he did not receive compensation; (2) that Defendants knew or should have known that plaintiff did so; but that (3) the Defendants stood 'idly by.'"  *Adoma v. Univ. of Phoenix, Inc*., 270 F.R.D. 543, 548 (E.D. Cal. 2010)(citing *Lindow v. United States*, 738 F.2d 1057, 1060–62 (9th Cir.1984)).

17

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification
CASE NO. 2:19-CV-04358-R-GJS

*Brinker* authorized certification of an off-the-clock class where the defendant's common policy or practice resulted in employees' time not being correctly recorded. *Brinker,* at 1051-52. This is true even when the off–the–clock time is just minutes, because California's "relevant statutes and wage order do not allow employers to require employees to routinely work for minutes off the clock without compensation." *Starbucks,* 5 Cal. 5th at 848. And a theory of recovery based on uniformly denying compensation of pre–shift work presents a common issue of fact and law. *Jones v. Farmers Ins. Exch.*, 221 Cal. App. 4th 986, 997, (2013), *as modified on denial of reh'g* (Nov. 26, 2013). The fact that there are some variations in the pre- and post-shift off the clock practices between individual employees is not sufficient to defeat the commonality. *Negrete v. ConAgra Foods Inc.*, No. CV 16-0631 FMO (AJWx), 2019 WL 1960276 at *5 (C.D. Cal. March 29, 2019).

As explained above, Plaintiff began his workday at home. (Guzman Decl., Exh. C at ¶ 12.) Plaintiff would receive his daily route list on his cell phone usually around midnight. (*Id.*) Every morning before he left his home and visited his first store, he would review the route list to familiarize himself with it and get ready for his shift. (*Id.*) And because the first store location of the day varied each day, this always included determining his first store of the day and mapping the route to that store. (*Id.*) He would also check his phone for any display orders made by the store managers. (*Id.*) He would also review the information regarding the quantity of products ordered by my assigned stores for the day. (*Id.*) After completing these administrative tasks at home, Plaintiff drove to his first retail store of the day. (*Id.*) But only upon arrival at the first store, Plaintiff and class members officially started their shifts. (Ex. A at p. 3.) Plaintiff and class members were also required to routinely perform off–the–clock work related activities without compensation.

In addition, under Defendants' uniform policy, Plaintiff and class member

18

were not pay for the time they commute from home and between the first and last location. Under the "continuous workday" rule any travel that occurs after the beginning and of an employee's first principal activity and before the end of an employee's last principal activity on any workday must be included in hours worked. *See* 29 C.F.R § 790.6(a). The administrative tasks performed by Plaintiff and the class members at home constitute a principal activity as it was necessary to complete their assignments at the customers location, and subsequently the drive time should be compensable.

> d. <u>Whether Wage Statements Provided to Plaintiff and Class Members were Accurate and Whether Plaintiff and Class Members were Timely Paid All Wages Due at Termination</u>

California Labor Code § 226 requires an employer to furnish its employees with an accurate itemized statement in writing showing, among other things: all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual; total hours worked by each respective individual; as well as gross wages earned.  California Labor Code §§ 201-203 requires former employees be paid all wages due to them within certain time after termination.

Defendants required Plaintiff and class members to perform work–related tasks before they would clock–in/out for their shifts. Defendants' practice resulted in the Defendants knowingly issuing wage statements that did not show all hours worked by Plaintiff and class members. Defendants' off–the–clock practice also resulted in the wage statements listing inaccurate amounts of gross wages earned. For the same reasons, Plaintiff and Class members who left Defendants' employ, were not timely paid all wages due to them at termination of employment. Thus, there is a common question as to whether the wage statements issued to Plaintiff and Class members were accurate, and whether former employees were paid all wages owed to them at termination.

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification
CASE NO. 2:19-CV-04358-R-GJS

### 3.  Typicality

Like commonality, the typicality requirement of Rule 23(a)(3) is also a "permissive standard." *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009). The representative plaintiffs must be members of the class they seek to represent. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). "Typicality does not mean that the claims of the class representatives must be identical or substantially identical to those of the absent class members." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). They only need to be "reasonably co–extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff is a member of the class he seeks to represent. Plaintiff worked as a merchandiser at Defendants' location in Vernon, California. Also, Plaintiff held the same or substantially similar job position, title, and duties as those he seeks to represent. Further, Plaintiff and class members all used the same time keeping system to record their hours worked. And he was also subject to the same policy and/or practice requiring him to remain on premises during his rest break. Like other employees of Defendants, Plaintiff was not compensated for his travel time between home and the first and last store location and the administrative work he performed at the beginning and/or the end of the day. Thus, typicality is met.

### 4.  Adequacy of Representation

Rule 23(a)(4) requires that the Class Representative "fairly and adequately represent the interests of the class." This involves two questions: (1) whether the Class Representative has an interest that conflict with the proposed Class; and (2) the qualifications and competency of proposed Class Counsel.

#### a)  Plaintiff are Adequate Class Representatives

A class representative's adequacy is presumed, absent evidence to the contrary. *Madison Assocs. v. Baldante*, 183 B.R. 206, 217 (Bankr. C.D. Cal. 1995). Also, a "plaintiff may adequately represent the class if he or she has the basic understanding about the nature of the suit." *Stuart v. Radioshack Corp.*, 2009 WL

20

KJT LAWGROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

281941, at \*11 (N.D. Cal. Feb. 5, 2009); *see also, Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011) (class representative deemed inadequate only if "startlingly unfamiliar" with the case.).

Here, Plaintiff has an understanding of his suit. Plaintiff brought this action on behalf of himself and other similarly situated non-exempt employees to recover compensation for injury suffered due to Defendants' California Labor Code violations. Plaintiff's interests are aligned with those of the class. Plaintiff, just like the proposed class members, was not paid for the administrative time he spent preparing for his shifts and also post-shift time he worked to submit required reports to his employer. In addition, he was not compensated for the drive time between home and first and last retail locations, as denied uninterrupted meal and rest periods, and as a result did not receive all wages due to them, timely, and at the correct rate or accurate wage statements. The representative Plaintiff has no conflicts with the class. (Guzman Decl., Exh. C ¶¶ 2-6.)

b) <u>Plaintiff's Attorneys are Adequate Class Counsel</u>

In determining the adequacy of representation, the focus is on the qualifications of counsel. *Weinberger v. Jackson*, 102 F.R.D. 839, 845 (N.D. Cal. 1984). There is presumption of adequate representation of counsel, and absent contrary evidence, potential objections to class counsel's adequacy should be taken with a "grain of salt." *Tourgeman v. Collins Fin. Servs., Inc.*, 2011 WL 5025152, at \*13 (S.D. Cal. Oct. 21, 2011).

Here, Plaintiff retained counsel with significant experience prosecuting wage and hour class actions, misclassification, and employment litigation generally. (*See* Adams Decl. and Declaration of Brian Short.) Plaintiff's counsel were approved as class counsel in numerous wage and hour cases. (*Id*.)  Plaintiff's counsel demonstrated their ability to diligently pursue claims on behalf of Plaintiff and the proposed Class, and have the resources necessary to do so successfully. Plaintiff

---

21

KJT LAWGROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

request the Court appoint ShortLegal, APC, KJT Law Group, LLP, and Adams Employment Counsel as Class Counsel.

## VII.   PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(B)(3)

Rule 23(b)(3) certification is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. This calls for two separate inquiries: whether issues common to the class "predominate" over issues unique to individual class members, and whether the proposed class action is superior to other methods available for adjudicating the controversy. (Rule 23(b)(3).) "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." (*Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996).)

### 1. Predominance

a. <u>Predominance Exists for the Off–The–Clock Work Subclass</u>

It is undisputed Defendants had a company-wide policy of not paying Plaintiff and class members for the drive time between home and first and last retail locations. This demonstrates Plaintiff and class members were not paid for all time worked. Establishing Plaintiff and class members were not paid for all time worked is superior, because repeatedly proving a corporate practice on an individual basis is costly, time consuming, and wastes court resources. Differences in the time spent on pre- and post-shift work and driving from and to house to the first and last store location go to the issue of damages, and do not prevent certification. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975), cert. denied, 429 U.S. 6 (1976); *see also Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1301, (2010), "The fact that individual [class members] may have different *damages* does not require denial of the class certification motion." emphasis in original. Whether the amount of off–the–clock work time and drive time alleged results in an entitlement to minimum,

22

regular and/or overtime wages is a predominant question across the class.

b. <u>Predominance Exists for the Meal Break and Rest Break Subclasses</u>

Predominance exists where Defendants has a company-wide policy and practice of not allowing employees to leave the premises during their rest breaks and Plaintiff and class members forgo or delay their meal breaks to either complete their work assignments without any causing any disruption to the store operation or to travel to another store location to meet their deadlines. All these practices and policies result in meal and rest break violations. Establishing Plaintiff and class members were unable to take meal breaks before the end of the fifth hour of work or after the tenth hour of work, and/or rest breaks due to work demands, is superior because repeatedly proving a corporate practice on an individual basis is costly, time consuming, and wastes court resources.

c. <u>Predominance Exists for the Wage Statement and Waiting Time Subclasses</u>

Predominance exists where Defendants' practice of requiring off–the–clock work resulted in knowingly under–reporting hours worked on Plaintiff's and class members' wage statements, as well and inaccurately listing gross wages earned. This also resulted in Defendants' failure to pay former employees all wages due to them at termination. Establishing Plaintiff and class members were not provided accurate wage statements, and were not timely paid wages at termination, is superior, because repeatedly proving a corporate practice on an individual basis is costly, time consuming, and wastes court resources.

**2. Superiority**

This action is superior under Rule 23(b)(3), because separate actions are not economical or feasible for over 4,500 employees, and there will not be difficulties managing this class action. The class members' individual interests are relatively small, which means they have little interest in controlling the prosecution of separate actions. Plaintiff's claims arise from their employment in California, and

KJT LAW GROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

23

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification
CASE NO. 2:19-CV-04358-R-GJS

are founded on California labor laws.

## VIII.   IN THE ALTERNATIVE, PLAINTIFF REQUESTS ADDITIONAL PRECERTIFICATION DISCOVERY

To the extent that the Court is inclined to deny class certification, in the alternative, Plaintiff respectfully requests that this Court grant Plaintiff additional time to conduct pre-certification, class discovery and refile this motion at a later date.  The Ninth Circuit recognized that Central District of California Local Rule 23-3's "bright line rule is in direct contrast to the flexibility of the Federal Rule" and that "class action determination can only be decided after the district court undertakes a 'rigorous analysis' of the prerequisites for certification."  *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018); *see also Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) ("[T]hat the schedule contemplated by Central District of California Local Rule 23–3, when considered alongside federal rules regarding status conferences and the timing of discovery, is quite unrealistic in light of recent case law regarding the need to establish a sufficient factual record at the class certification stage.").  The Ninth Circuit has also held that "failing to allow precertification discovery where it is necessary to determine the existence of a class is an abuse of discretion." *Perez,* 553 Fed. Appx. at 669 (citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir.1975)).

Here, since the outset of this action, Plaintiff has diligently pursued this case on behalf of the putative class.  As mentioned above, in light of the parties' intention to attend mediation, the parties agreed to a voluntary stay on classwide discovery and to exchange informal discovery in preparation of mediation.  At the same time, this matter has been delayed pending reassignment to a judge.  That said, as soon as Plaintiff discovered that the earliest mediation date with an experienced wage-and-hour mediator was October 23, 2019, Plaintiffs lifted the stay to pursue formal

KJT LAW GROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

discovery, including noticing depositions.

Unfortunately, Defendants objected to Plaintiff's person most knowledgable deposition notices, and these depositions could not take place until October 25, 2019. In addition, Defendants objected to Plaintiff's written discovery and continue to produce documents that are necessary for this Motion — the latest of which was yesterday, October 29, 2019. Moreover, Plaintiff only received the Class contact information yesterday. For these reasons, in the alternative, Plaintiff requests that this Court grant Plaintiff additional time to conduct pre-certification discovery and renew this Motion.

## IX.   CONCLUSION

Plaintiff respectfully request the Court certify this action as a class action, appoint Plaintiff Juan M. Guzman-Lopez as Class Representatives, and ShortLegal, APC, KJT Law Group, LLP, and Adams Employment Counsel as Class Counsel.


Dated: October 30, 2019                    SHORTLEGAL, APC

                                    By:  /s/ Brian R. Short
                                        _____
                                        BRIAN R. SHORT
                                        DOROTA A. JAMES
                                        *Attorneys for Plaintiff*
                                        *Juan M. Guzman-Lopez*


Dated: October 30, 2019              ADAMS EMPLOYMENT COUNSEL


                                        /s/ Christopher A. Adams

                                    By:  _____
                                        CHRISTOPHER A. ADAMS
                                        *Attorneys for Plaintiff*
                                        *Juan M. Guzman-Lopez*

25