VACHE A. THOMASSIAN  (S.B. #289053)
vache@kjtlawgroup.com
CASPAR JIVALAGIAN (S.B. #282818)
caspar@kjtlawgroup.com
KJT LAW GROUP LLP
230 N. Maryland Ave., Suite 306
Glendale, CA 91206
Telephone:   818.507.8525

CHRISTOPHER A. ADAMS (S.B. #266440)
ca@AdamsEmploymentCounsel.com
ADAMS EMPLOYMENT COUNSEL
4740 Calle Carga
Camarillo, CA 93012
Telephone:   818.425.1437

Attorneys for Plaintiff Juan Guzman-Lopez,
on behalf of himself and all others similarly
situated

*Additional Attorneys listed on the next page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN M. GUZMAN-LOPEZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE AMERICAN BOTTLING COMPANY, a corporation; KEURIG-DR. PEPPER, INC., a corporation; and DOES 1-20, inclusive <br><br> Defendants. | Case No.: 2:19-cv-04358-R-GJS <br><br> **DECLARATION OF CHRISTOPHER A. ADAMS IN SUPPORT OF PLAINTIFF JUAN M. GUZMAN-LOPEZ'S MOTION FOR CLASS CERTIFICATION** <br><br> Date:   December 2, 2019 <br> Time:   10:00 AM <br> Place:   Courtroom 880, 8th Floor <br> Judge:   Hon. Manuel L. Real |

1  Brian R. Short (SBN 236140)
   Brian@ShortLegal.com
2  Dorota A. James (SBN 309933)
   Dorota@ShortLegal.com
3  ShortLegal, APC
   350 10th Ave., Suite 1000
4  San Diego, California 92101
   Telephone: 619.272.0720
5  Facsimile: 619.839.3129

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KJT LAWGROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

## **DECLARATION OF CHRISTOPHER A. ADAMS**

I, Christopher A. Adams, state and declare:

1.      I am an attorney duly licensed to practice law before all courts in the State of California.  I am an attorney with the law practice of Adams Employment Counsel and I, along with co-counsel,  represent Juan M. Guzman-Lopez ("Plaintiff") in this action against American Bottling Company and Keurig-DR. Pepper, Inc. (collectively, "Defendants").  I have personal knowledge of the facts set forth herein and, if called and sworn in as a witness, could and would testify competently thereto.

2.      I submit this Declaration in support of Plaintiff Juan M. Guzman-Lopez's Motion for Class Certification ("Plaintiff's Motion").

3.      Attached as Exhibit A is a true and correct copy of Dr Pepper Snapple Group California Wage and Hour Compliance Policies, bearing Bates nos. ABC000091 to ABC000096, that was produced by Defendants in response to discovery requests in this case.

4.      Attached as Exhibit B is a true and correct copy of Keurig DrPepper U.S. Timekeeping, Overtime, Meal Period & Rest Break Policy for Non-Exempt Employees, bearing Bates nos. ABC000284 to ABC000289, that was produced by Defendants in response to discovery requests in this case.

5.      Attached as Exhibit C is a true and correct copy of the Declaration of Plaintiff Juan M. Guzman-Lopez.

6.      Attached as Exhibit D is a true and correct copy of the Declaration of Laquitta Robinson.

7.      Attached as Exhibit E is a true and correct copy of the Declaration of Miguel Aguilar.

8.      Attached as Exhibit F is a true and correct copy of the Declaration of Blake Allen.

9.      Attached as Exhibit G are true and correct copies of selected pages from

1

Declaration of Christopher A. Adams In Support of Plaintiff Juan M. Guzman-Lopez's Motion for Class Certification – Case No. 2:19-cv-04358-R-GJS

the rough transcript of the October 25, 2019 deposition of Defendants' Person Most Knowledgeable, Maung Lin.

10.    Attached as Exhibit H, is a true and correct copy of the Declaration of Santiago Benavidez.

11.    Attached as Exhibit I, is a true and correct copy of the Declaration of Justin Betanzos.

12.    Defendant Keurig-Dr. Pepper, Inc., formerly Dr. Pepper-Snapple Group, Inc., is a nationwide conglomerate and makers of various assortments of soft drinks.

13.    Defendant The American Bottling Company is a subsidiary of Keurig-Dr. Pepper, Inc. offering bottling services and the distributor of Dr. Pepper affiliated soft drinks.

14.    On April 16, 2019, Plaintiff filed his Class Action Complaint (the "Complaint") for damages in the State of California Superior Court, Los Angeles County (Case No. 19STCV13050).

15.    The Complaint alleges nine causes of action: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (3) Failure to Pay Minimum and Overtime Wages; (5) Failure to Furnish Accurate Wage Statements; (6) Failure to Maintain Required Records; (7) Failure to Pay All Wages Due to Discharged and Quitting Employees; (8) Unfair Business Practices (California Business and Professions Code §§ 17200, *et seq*.); and (9) Failure to Reimburse for Business Expenditures and Losses.  Plaintiff brought this action as a putative Class action seeking to represent a Class of current and former persons employed by Defendants in California as non-exempt employees during the period commencing four years prior to the filing of the Complaint (April 16, 2015) through the final disposition of this action (the "Class").  On September 11, 2019, Plaintiff amended the Complaint to assert a representative claim under the California Private Attorneys General Act

Declaration of Christopher A. Adams In Support of Plaintiff Juan M. Guzman-Lopez's Motion for Class Certification – Case No. 2:19-cv-04358-R-GJS

("PAGA").

16.    In response, on May 15, 2019, Defendants filed their Answer to the Complaint, and shortly thereafter, on May 20, 2019, Defendants removed this action to this Court pursuant to the Class Action Fairness Act of 2005.

17.    Pursuant to the Court's June 5, 2019 Order (Dkt. #10) and Federal Rules of Civil Procedure, Rule 26(f), on June 19, 2019, the parties met-and-conferred to discuss this matter in general, including initial disclosures. As part of this meeting, the parties discussed the possibility of resolving this matter informally and expeditiously through private mediation, which would include a stay on formal discovery and conducting targeted, informal discovery.

18.    Unfortunately, that same month, on June 26, 2019, the Honorable Manuel L. Real passed away.

19.    Considering the parties' intention to conserve resources through private mediation and avoid costly classwide discovery, the parties contacted mediators to inquire as to the earliest available mediation date.  Unfortunately, the earliest available mediation date of the three agreed-upon, experienced wage-and-hour mediators was October 23, 2019 with Lisa Klerman.

20.    Since the inception of this case, Plaintiff has vigorously pursued classwide discovery both informally and formally.

21.    As mentioned earlier, in light of the parties' intention to attend mediation, the parties agreed to stay formal discovery preferring to conduct informal, targeted discovery.

22.    That said, the parties did exchange initial disclosures pursuant to Federal Rules of Civil Procedure, Rule 26(a)(1), on July 3, 2019.  Defendants' initial disclosures were inadequate.  Specifically, Defendants failed to disclose the names of any witnesses and failed to produce any documents, including their relevant wage-and-hour policies.

Declaration of Christopher A. Adams In Support of Plaintiff Juan M. Guzman-Lopez's Motion for Class Certification – Case No. 2:19-cv-04358-R-GJS

23.     At that time, Plaintiff did not object, because of the parties' agreement to stay formal discovery, and Defendants would produce such information and documents informally.  (*Id.* at ¶ 13.)

24.     That said, Plaintiff has since met-and-conferred with Defendants about obtaining this information, including putative Class members' contact information.

25.     As to the production of the Class members' contact information, the parties agreed to the process described in *Belaire-West Landscape v. Superior Court*, 149 Cal. App. 4th 554 (2007) and the use of a third-party administrator.  To that end, on October 16, 2019, Defendants provided the administrator with the names of 945 individuals.  The next day, October 17, 2019, the administrator sent the Belaire-West notices to those individuals.  Unfortunately, even providing for a truncated opt-out period of 10-days, Plaintiff only received the Class contact information on October 29, 2019 — one day before the class certification deadline.

26.     Furthermore, upon receiving notice of the Court's August 21, 2019 Order denying the parties' stipulation to extend the class certification deadline, that same day, on August 21, 2019, Plaintiff served written discovery on Defendants. More than a month later, on September 30, 2019, Defendants produced some documents.  That said, since then, Defendants have continuously been producing documents in tranches, the latest of which was on October 29, 2019.

27.     Similarly, on August 21, 2019, Plaintiff served deposition notices of Defendants' person most knowledgeable for September 5, 2019 and September 6, 2019.  On September 3, 2019, Defendants objected to these depositions stating, among other things, that Defendants are unavailable on those dates.  To that end, the depositions were rescheduled for October 18, 2019.  Unfortunately, due to a transportation incident outside of the control of Plaintiff on the morning of October 18, 2019, the deposition was rescheduled to October 25, 2019.  As a result of this delay and the unavailability of Defendants' person most knowledgeable, Plaintiff only

Declaration of Christopher A. Adams In Support of Plaintiff Juan M. Guzman-Lopez's Motion for Class Certification – Case No. 2:19-cv-04358-R-GJS

received the rough transcript of the deposition on October 29, 2019.

28.     Defendants' corporate records indicate there are 4,502 putative class members in California locations, and Defendants' removal papers indicated as much.

29.     Plaintiff's counsel are experienced in prosecuting class action lawsuits, including wage and hour class actions, and can competently represent the Class.

30.     Adams Employment Counsel and KJT Law Group LLP are qualified to handle this litigation because we are experienced in litigating wage-and-hour violations in both individual and class and representative action cases.   Adams Employment Counsel and KJT Law Group LLP and have handled and are currently handling numerous wage-and-hour class action lawsuits, including the following:

- *Culinart Wage and Hour Cases*, Case No. JCCP 4892 (San Diego Superior Court) (appointed class counsel);
- *Bordbar v. Enterprise Rent-A-Car Co of San Francisco, LLC*, Case No. 30-2017-00960085-CU-OE-CX (Orange County Superior Court) (appointed class counsel);
- *Brandon Boring v. BRS Roofing Inc.*, Case No. BC662106 (Los Angeles Superior Court) (appointed class counsel);
- *Marshon Toney v. Beacon CBHM, LLC*, Case No. 30-2016-00889964-CU-OE-CXC (Orange County Superior Court) (appointed class counsel);
- *Roberto Mojica v. Sunrise Dairy Inc. dba Sunrise Distribution*, Case No. BC664342 (Los Angeles Superior Court) (appointed class counsel);
- *Jennifer Adaimy v. Green Dot Corporation*, Case No. BC669410 (Los Angeles Superior Court) (currently litigating);
- *Mary Ryan v. iPic Gold Class Entertainment, LLC*, Case No. 6888633 (Los Angeles Superior Court) (appointed class counsel);
- *Eguizubal v. Community Restaurants, Inc.*, Case No. BC687917 (Los Angeles Superior Court) (currently litigating);
- *Jonathan Mamuyac v. FedEx Freight, Inc.*, Case No. 2:18-cv-04905-SVW-(SKx) (United States District Court, Central District of California) (resolved);
- *Erica Hernandez v. J.C. Penny Corporation, Inc.*, Case No. BC705668 (Los Angeles Superior Court) (currently litigating);
- *Mike Boyadzhyan v. Bridgestone Retail Operation*, Case No. BC621145 (Los Angeles Superior Court) (currently litigating);

Declaration of Christopher A. Adams In Support of Plaintiff Juan M. Guzman-Lopez's Motion for Class Certification – Case No. 2:19-cv-04358-R-GJS

- *Luis Pulido Sanchez v. South East Employee Leasing Services, Inc.*, Case No. BC690372 (Los Angeles Superior Court) (currently litigating);
- *Carlos Ramirez v. Deluxe Entertainment Services Group, Inc.*, Case No. BC705669) (Los Angeles Superior Court) (currently litigating);
- *Jose Martinez Rodriguez v. FHI, LLC*, Case No. RIC1809267 (Riverside Superior Court) (currently litigating);
- *Amilcar Ulloa v. L&R Auto Parks, Inc.*, Case No. BC706958 (Los Angeles Superior Court) (currently litigating);
- *Norayr Nazinyan v. BLS Limousine of Los Angeles, Inc.*, Case No. BC669411 (Los Angeles Superior Court) (currently litigating);
- *Mya Johnson v. Scottrade, Inc.*, Case No. 662105 (Los Angeles Superior Court) (resolved);
- *Rita Laferre v. Conrad's Restaurant, Inc.*, Case No. EC068541 (Los Angeles Superior Court) (resolved);
- *Modesto Amarillas v. Panna, LLC dba Pizzeria Delfina*, Case No. CGC-16-555274 (San Francisco Superior Court) (currently litigating);
- *Valerie Lozano v. FedEx Ground Package Systems, Inc.*, Case No. BC706958 (Los Angeles Superior Court) (currently litigating);
- *Sevada Yaghobimasihi v. Bryant Ranch Prepack*, Case No. BC621145 (Los Angeles Superior Court) (resolved); and
- *Andy de Jesus v. Clean Energy Fuels Corp.*, Case No. BC669412 (Los Angeles Superior Court) (currently litigating).
- *Sonia Sanchez v. Trattoria Amici Americana LLC*, Case No. BC711657 (Los Angeles Superior Court) (currently litigating);
- *Rosa Molina v. SZNW Hospitality, LLC.*, Case No. BC711658 (Los Angeles Superior Court) (currently litigating);
- *Nikki Larkins v. The Cheesecake Factory, Inc.*, Case No. 18GDCV00063 (Los Angeles Superior Court) (currently litigating);
- *Jihwan Kim v. DemandForce, Inc.*, Case No. CGC-18-570997 (San Francisco Superior Court) (currently litigating);
- *Destiny Velasquez v. ABC Phones of North Carolina, Inc.*, Case No. 18STCV00916 (Los Angeles Superior Court) (currently litigating);
- *Artemisa Guerra v. M.D. Surgical Solutions, LLC.*, Case No. BC722772 (Los Angeles Superior Court) (currently litigating);
- *Karina Abarca v. GHP Management Corp.*, Case No. 18STCV04856 (Los Angeles Superior Court) (currently litigating)
- *Lofreshia Anderson v. Hathaway-Sycamores Child & Family Services*, Case No. 19STCV01042 (Los Angeles Superior Court) (currently litigating);

6

KJT LAWGROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

- *Isaac Gutierrez v. HF Cox, Inc.*, Case No. 18STCV00279 (Los Angeles Superior
  Court) (currently litigating);
- *Jascha Dlugatch v. Ambulnz Health, LLC*, Case No. 18STCV00385 (Los Angeles
  Superior Court) (currently litigating);
- *Lico Alvarado v. Ferguson Enterprises, Inc.*, Case No. 8:19-CV-00379 (U.S. Central
  District Court) (currently litigating);
- *Gerardo Garcia v. Pep Boys of CA., Manny, Moe, & Jack*, Case No. 01-18-0004-
  7122 (American Arbitration Association) (currently arbitrating);
- *Edgar Rodriguez-Fonseca v. Herbert Malarkey Roofing, Co.*, Case No. 19STCV01237 (Los Angeles Superior Court) (currently litigating);
- *Tanya Arakelian v. Public Storage*, Case No. 19STCV01191 (Los Angeles Superior
  Court) (currently litigating);
- *Emma Bonilla v. Dazian, LLC*, Case No. 19STCV01195 (Los Angeles Superior
  Court) (currently litigating);
- *Bobby Graham v. Route 66 Transportation, Inc.*, Case No. CIVDS1904190 (San
  Bernardino Superior Court) (currently litigating);
- *Jamal Holcomb v. Weiser Security Services, Inc.*, Case No. 2:19-CV-2108 (U.S.
  Central District Court) (currently litigating);
- *Sulin Huisar v. Applied Behavioral Consultants, Inc.*, Case No. CIVDS1909249
  (San Bernardino Superior Court) (currently litigating);
- *Juan Guzman-Lopez v. American Bottling Co., et al.*, Case No. 19STCV13050 (Los
  Angeles Superior Court) (currently litigating);
- *Alberto Antonio v. California Banquet Corporation*, Case No. 19STCV14846 (Los
  Angeles Superior Court) (currently litigating); and
- *Guillermo Padilla v. Dewey Services, Inc.*, Case No. 19STCV15617 (Los Angeles
  Superior Court) (currently litigating).

31.    My firm, Adams Employment Counsel, is actively and continuously

KJT LAW GROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

practicing in employment litigation, in both individual and class actions, in Superior Courts and Federal District Courts throughout the State.  Likewise, KJT Law Group LLP is actively and continuously practicing in employment litigation in both individual and class actions in Superior Courts and Federal District Courts throughout the State.

32.     I received a B.A. in Philosophy and a minor in Spanish from University of California, Los Angeles in 2006.  I received a law degree from University of California, Hastings in 2009 where I graduated *cum laude*.  During law school, I was a legal extern to the Honorable Charles R. Breyer of the U.S. District Court, Northern District of California, and a summer associate at the law firm of O'Melveny & Myers LLP, a major international law firm.

33.     I was admitted to the California State Bar in the Fall of 2009.  I am admitted to practice in all state courts in California.

34.     Upon admission to the bar, I practiced employment law at the Los Angeles office of O'Melveny & Myers LLP.  As a member of the O'Melveny & Myers LLP's Labor and Employment Department, I specialized in a range of labor and employment disputes, including those involving wage-and-hour violations (individual and class action), employment discrimination, workplace harassment, wrongful termination, retaliation, workplace safety and health violations, unfair labor practices, and invasion of privacy.  I successfully resolved these disputes in state and federal courts (at both the trial and appellate levels), before various administrative agencies, and through alternative dispute resolutions.  Importantly, I was responsible for the day-to-day management of numerous wage-and-hour class and representative actions at a given time.  In this position, I engaged in all possible types of discovery, alternate dispute resolutions; and motion practice related to wage-and-hour class actions, including preparing motions for summary judgment and oppositions to class certifications; defending and taking depositions; propounding and responding to class

Declaration of Christopher A. Adams In Support of Plaintiff Juan M. Guzman-Lopez's Motion for Class Certification – Case No. 2:19-cv-04358-R-GJS

discovery; attending mediations; and preparing motions for preliminary and final approval of class action settlements.

35.     In addition, while at O'Melveny & Myers LLP, I prepared employment law presentations for employer clients and other employment attorneys covering a wide range of employment topics, and co-authored two employment law articles: "An Employer Guide to Navigating the Patient Protection and Affordable Care Act," Bloomberg Law Reports, Labor & Employment (May 24, 2010) and "Evolution and Application of the Faithless Servant Doctrine," Bloomberg Law Reports (March 15, 2010).

36.     In December 2014, my next employment was as an associate attorney with LightGabler LLP.   In this role, I continued representing private clients in employment matters, including wage-and-hour class and representative actions, and handling the day-to day litigation of those matters.

37.     In 2015, my next employment was as a counsel attorney with Nevers, Palazzo, Packard, Wildermuth & Wynner, PC.   As before, in this role, I continued representing private clients in employment matters, including wage-and-hour class and representative actions, and handling the day-to day litigation of those matters.

38.     I started my own law practice, Adams Employment Counsel, in 2016. Since then, I have represented numerous employees in disputes with their employers, including litigating over 40 wage-and-hour class and representative actions mentioned above.

39.     I continue to actively seek to develop my knowledge of California wage-and-hour law. I am an active member of the California Bar Employment Section, and regularly consult with other employment attorneys regarding cutting-edge developments in California wage-and-hour law.

40.     As to co-counsel, Vache Thomassian is one of the founding partners of KJT Law Group LLP.  He earned his Juris Doctor from Loyola Law School in Los

9

Declaration of Christopher A. Adams In Support of Plaintiff Juan M. Guzman-Lopez's Motion for Class Certification – Case No. 2:19-cv-04358-R-GJS

Angeles where he studied Civil Rights litigation as well as Genocide law.  Prior to law school, he earned a Bachelor of Arts degree in Legal Studies from the University of California, Berkeley.  He also has a Masters of International Affairs from Columbia University's School of International and Public Affairs (SIPA) where his area of concentration was Economic and Political Development with a specialization in International Conflict Resolution.  While at Columbia, he was a Luys Foundation Scholar working with an international network of Armenian students from top universities around the world.  He became a member of the State Bar of California in March 2013, and has been an active member in good standing continuously since then.

41.    Caspar Jivalagian is also a founding partner of KJT Law Group LLP. Prior to KJT Law Group LLP, Mr. Jivalagian worked with several prominent law firms throughout the Los Angeles area specializing in complex litigation.  Mr. Jivalagian acquired extensive judicial experience while clerking with a Superior Court Judge.  He earned his Juris Doctor from Southwestern University School of Law in Los Angeles.  He became a member of the State Bar of California in June 2012 and has been an active member in good standing continuously since then.

42.    My firm is fully committed to prosecuting this action against Defendant to achieve successful outcome for the Class and has resources to do so.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.

Executed this 30th day of October 2019, in Los Angeles, California.


       /s/ *Christopher A. Adams*
       Christopher A. Adams

Declaration of Christopher A. Adams In Support of Plaintiff Juan M. Guzman-Lopez's Motion for Class Certification – Case No. 2:19-cv-04358-R-GJS

# EXHIBIT A



## CALIFORNIA WAGE AND HOUR COMPLIANCE POLICIES

The following policies are intended to apply to all hourly employees of the Dr Pepper Snapple Group Inc.  These policies shall apply to all company locations in California, unless specific local law, collective bargaining agreements (CBA), and/or Department of Transportation (DOT) regulations provide otherwise, in which case the applicable local law, CBA, and/or DOT regulations shall control to the extent inconsistent with these policies.

It is important that you read and understand this document.  Please sign the attached acknowledgment form to acknowledge that you read and understood it in full.  Do not sign the acknowledgment if you do not understand any portion of this document.  Contact Human Resources for clarification and sign after your questions have been answered.

## GENERAL REQUIREMENTS AND PRINCIPLES

The Company's goal is to follow state and federal law and treat all employees fairly.  The following rules always apply, are always mandatory, and will help guide you in the application of our more specific wage and hour policies.  You are <u>required</u> to immediately report any violations of the policies described in this document to your manager, Human Resources, and/or the Company's Speaking-Up Hotline at (800) 349-4248:

1) It is a violation of company policy for anyone (including a manager or supervisor) to:  (a) ask, suggest, or pressure you or anyone else to violate any of the policies described in this document; (b) attempt to prohibit or interfere with you taking advantage of your rights as described in this document; or (c) commit or attempt to commit a violation of any of the policies described in this document.

2) The Company will never retaliate against you for reporting any good-faith concerns regarding these policies or violations of these policies, interference with your rights as described in these policies, or any concerns regarding perceived unlawful behavior.  If you do not feel comfortable reporting concerns to a manager or supervisor, or if you do not receive a satisfactory resolution to your concerns, you should report them to Human Resources or the Company's Speaking-Up Hotline.

3) Wage and hour laws may vary on a local basis.  This document cannot, and is not intended to, cover all topics and nuances of every local law or regulation in California. Consequently, you will receive local guidance regarding any local requirements/practices that may vary from or supplement Company policies.  If you have questions regarding local policy/practice, talk to your manager or supervisor or Human Resources.  You may also have postings in your workplace describing state or local laws.  You must read them and notify us if you have questions.  Those postings are intended to supplement this document.

4) Hourly and Daily Rate employees must report all time worked – all the time, every time. <u>There are no exceptions</u>.  If you make a mistake or have difficulty recording your time correctly, you must immediately contact your manager to correct the problem.

5) Become familiar with our meal and rest break policies.  We encourage you to take all your breaks consistent with the rules described below.  But if you voluntarily elect not to

CONFIDENTIAL

Exhibit Page 002

take your breaks, or take them in a manner inconsistent with our policies, you must record any time worked during breaks so that you are paid for all hours worked time.

6) If you believe you have been paid incorrectly, you must immediately contact your manager, Human Resources, or the Company's Speaking-Up Hotline.

7) Remember, we are relying on you to help ensure that we follow the law and pay you accurately.  If you do not accurately tell us all relevant information, it is impossible for us to resolve any problems that may arise.

## HOURS OF WORK

The term "hours worked" refers to time spent performing work, engaged in work-related activities, or any time under the direction or control of the Company.  It does not include hours away from work such as vacation, sickness, or holiday, even when this time away from work is compensated.

Regularity of attendance and punctuality is essential to the efficient and effective performance of the Company's work.  We expect our employees to be at work as scheduled.  Employees are responsible to arrange for their personal schedule to accommodate their scheduled work hours.

## PAYROLL

All employees are paid on a weekly or biweekly basis.

The Company encourages, but does not require, the use of electronic pay.  Employees may have their pay directly deposited into their bank accounts or participate in the company's pay card program if desired.

## TIMEKEEPING

You are required to accurately report all working time, without exception.  The Company has no way to ensure you are paid properly other than relying on the accuracy of you reporting your time.  Further, federal and state laws require the Company to keep a record of time worked.  Consequently, you are required to verify the accuracy of time worked on a weekly or bi-weekly basis (whichever is applicable).

If you are unable to clock in/clock out accurately, immediately contact your supervisor or the Human Resources department.  Your repeated failure to properly punch in/out may result in disciplinary action, up to and including termination.  In addition, the altering, falsifying or tampering with time records, or recording time on another employee's time record, constitutes a violation of Company policy and may result in disciplinary action, up to and including termination.

### *Non-Exempt/Hourly employee timekeeping*:

The Company provides various means by which to record time worked each day.  Depending on the position held, you will be required to enter time by one of the following three methods: (a) time clocks; (b) handheld devices; or (c) computer and/or manual entry.

You are required to record correctly the time you begin and end work, as well as the beginning and ending time of each meal period.  You also must record the beginning and ending time of any split shift or departure from work for personal reasons.

California Policy
April 11, 2016

Page **2** of **6**

CONFIDENTIAL

If you work at different locations (e.g., you visit various store locations during a workday), you generally will begin the shift when you arrive at the first location and will end the shift when you depart the last location.

You must notify management of any sick leave, vacation, floating holiday hours, birthday, bereavement, jury duty, etc. taken, so that such time may be correctly reported.

<u>OVERTIME</u>

As necessary, you may be required to work overtime.  All overtime worked must be reported in compliance with the Company timekeeping policies described above.  Except in extraordinary circumstances, you should obtain authorization to work overtime from your manager or supervisor before performing any overtime work.

If you work unauthorized overtime, you must contact (either in-person, or by email, phone call, or voicemail) your immediate supervisor, prior to close of the business day, to inform them that you have worked overtime and the reason for the unauthorized overtime.   Employees who work unapproved overtime absent a compelling need may be subject to discipline up to and including termination, but will be paid for the overtime worked.

<u>OFF-THE-CLOCK WORK</u>

You may not, under any circumstances, perform any work "off the clock" (i.e., performing work without reporting that time for payment).  Prohibited off-the-clock work includes, but is not limited to, working before you clock in for the day, working after you clock out, working during meal periods, etc.  The performance of work "off the clock" constitutes a violation of Company policy and may result in disciplinary action, up to and including termination.

<u>MEALS/RESTS BREAKS</u>

<u>Meal Periods</u>

The Company provides each employee who works 5 or more hours in the workday with an unpaid 30-minute, duty free meal break that begins before the end of 5 hours of work.  If the employee works more than 10 hours in a day, the Company provides the employee with a second unpaid 30- minute, duty free meal break that begins before the end of 10 hours of work. "Duty free" means that employees are not performing any work duties for the full, uninterrupted 30-minute meal period, which includes the right to engage in personal activities, and to leave the premises if the employee so desires.

If the employee's total hours of work in a workday are 6 hours or less, the employee may, with the agreement of the Company, choose to voluntarily waive the meal period for that day.

If the employee's hours of work in any workday are more than 10 hours, but not more than 12 hours, and the employee has taken their first meal period as described above, the employee may, with the agreement of the Company, choose to voluntarily waive the second meal period. If the employee works more than 12 hours in any workday, the second meal period may not be waived.

Meal periods must, without exception, be accurately recorded using one of the Company's approved timekeeping methods.  Further, employees are required on a daily basis to honestly attest to whether they did/did not receive the opportunity to take a meal period consistent with the rules described above.  If an employee finds that, on any given day, he or she is not provided a realistic opportunity to take meal periods consistent with the rules described above, the employee must immediately notify their immediate supervisor of this fact.  If an employee

CONFIDENTIAL

performs any work whatsoever during a meal period, that time must be recorded as working time.

<u>Rest Periods</u>

The Company authorizes and permits each employee a number of paid ten (10) minute rest breaks based on the quantity of time he or she works in a given day.  Specifically, employees are authorized and permitted to take the following number of rest periods based on the total number of hours worked:

| If you work this number hours in a day . . . | You are permitted to take this number of 10-minute rest breaks . . . |
|---|---|
| Less than 3.5 hours | 0 |
| 3.5 hours up to 6 hours | 1 |
| 6 hours up to 10 hours | 2 |
| 10 hours up to 14 hours | 3 |
| 14 hours up to 18 hours | 4 |

For purposes of rest breaks "duty free" means that the employee is relieved of all duty for a full, uninterrupted (net) 10-minute rest period.  However, because rest periods are paid time, employees should remain on the premises.

Rest periods are not recorded in the Company's timekeeping system. However, employees are required on a daily basis to honestly attest to whether they did/did not receive the opportunity to take a rest period consistent with the rules described above.  If an employee finds that, on any given day, he or she is not provided a realistic opportunity to take rest periods consistent with the rules described above, you must immediately contact HR or your immediate supervisor of this fact.  If an employee performs any work whatsoever during a rest period, that time must be recorded as working time.

<u>Complaint Procedures for Meal and Rest Breaks</u>

If you believe that you have been directed, prevented, or discouraged from taking authorized meal or rest periods, or that you have not been paid for all time worked, you must immediately report the situation to Human Resources or the Company's Speaking-up hotline.

<u>PAYMENT OF WAGES UPON TERMINATION</u>

Applicable state law governs the payment of wages at the time of termination of employment. Consult with Human Resources for further information.

<u>TRAVEL TIME</u>

Travel time to and from an employee's home is generally not considered hours worked, as it is normal commute time.  If any employee is required to travel between worksites (for example, from the Company to a customer location, or from one customer location to another) during the employee's workday, such travel time is "hours worked" and the employee will be compensated for the time.  In addition, under certain circumstances, travel to a location other than the Company (for example, to a required conference in another city) may constitute hours worked if the Company requires such travel.

<u>TRAINING TIME</u>

The Company will pay you for your attendance at orientations, company-required continuing education, meetings, lectures, and training programs under the following conditions:

California Policy
April 11, 2016

Page **4** of **6**

CONFIDENTIAL

- Attendance is mandatory; or

- The meeting, course, or lecture is directly related to your job; or

- You are notified by your supervisor that you are required to attend such meetings, lectures, or training.

Participation in company-required continuing education, orientation programs, training programs and work-related meetings is considered working time, must be recorded, and will be paid for time.

## REPORTING TIME

Applicable state law and/or the governing collective bargaining agreements govern the payment of reporting time pay for hourly employees. If you are required to report to work, you must punch in at the time you arrive, irrespective of how much work is available or if you are sent home.

## PRE-SHIFT AND POST-SHIFT ACTIVITIES

If an employee is required by the Company to wear specific garments or equipment that the employee is required to put on after arriving to work, the employee must clock in **before** putting on the garments or equipment. If the employee must remove required garments or equipment at the end of the shift, he or she must not clock out until **after** having removed them.

**Speaking Up Hotline**
**800-349-4248**

CONFIDENTIAL

ABC000095



<u>Acknowledgment Form</u>

Please sign to acknowledge that you have received, read, understood, and agree to abide by the Dr Pepper Snapple Group *Wage and Hour Compliance Policies* ("Policy Document").  Do not sign until you have read and understood the Policy Document in full.  If you have questions, contact Human Resources for clarification and sign after your questions have been resolved.


Employee Signature:    _____

Print Name:    _____

Date:    _____

California Policy
April 11, 2016

Page **6** of **6**

CONFIDENTIAL

ABC000096

Exhibit Page 007

# EXHIBIT B



**U.S. Timekeeping, Overtime, Meal Period & Rest Break Policy for Non-Exempt Employees**

| **Effective Date:** January 1, 2019 | **Policy Contact**: Benefits |
|---|---|
| **Responsible Department:** Human Resources | |

## PURPOSE

Keurig Dr Pepper Inc. and its affiliates and subsidiaries ("**KDP**") is committed to ensuring that its non-exempt employees are paid for all hours worked and receive appropriate meal periods and rest breaks. This U.S. Timekeeping, Overtime, Meal Period and Rest Break Policy for Non-exempt Employees ("Policy") supports that commitment.

## SCOPE

All non-exempt, U.S. employees except:
- Where mandated by state law
- Employees governed by a Collective Bargaining Agreement ("CBA")
- Where Department of Transportation ("DOT") regulations indicate otherwise.

The applicable state law, CBA and/or DOT regulation shall control to the extent inconsistent with these policies.

## DEFINITIONS

**Non-exempt employees.**  Non-exempt employees are regular KDP employees who are paid wages on an hourly basis and receive premium pay for all hours worked in excess of 40 in a workweek as required by the Fair Labor Standards Act ("FLSA"), or as otherwise required by law.

**Exempt Employees.**  Exempt employees are regular KDP employees who are exempt from the overtime premium pay requirements of the FLSA and applicable state laws based on their salary and duties.  Such employees generally receive a fixed salary that is intended to compensate them for all hours worked in a workweek (regardless of the number of hours worked), including hours worked in excess of 40 in a workweek.

**Hours worked.**  Generally, all hours which an employee spends at work (e.g., in his or her designated KDP location), less an unpaid meal break, are considered "hours worked."  Hours Worked does <u>not</u> include an employee's normal commute time to/from work, or time spent traveling to/from and attending non-work related appointments during KDP'S regular work hours.  Also, special rules apply when non-exempt employees engage in business travel. Please see your local HR for the appropriate travel pay practice.

## POLICY STATEMENT

Wage and hour laws may vary from state-to-state or even on a local basis. This Policy cannot, and is not intended to, cover all topics and difference of every state and local law regulation. Consequently, you will receive local guidance regarding any state-specific or local requirements/practices that may vary from or supplement Company policies. Specific state laws may be posted within the workplace on the Employment Law posters for additional information. All questions or concerns should be raised with your manager and/or HR Business Partner.

Timekeeping is administered in accordance with the Fair Labor Standards Act ("FLSA") and other applicable federal and state laws.  The data collected by Kronos stands as KDP's official record of time and attendance information.

All non- exempt employees:

- Are not permitted to work "off the clock"; they must clock in before beginning work.  Employees who believe they have not been paid for all hours worked must immediately report their concern to their

Exhibit 1, page 19
CONFIDENTIAL

manager and/or HR Business Partner.
- Must clock out for unpaid meal periods and clock back in before returning to work.
- Must obtain prior supervisor or manager approval and must clock out if leaving the work location for personal reasons (other than for unpaid meal breaks), and must clock back in on their return to work.
- Must not clock out if leaving the work location to conduct Company business during scheduled work time.
- Must not work overtime without prior approval from the direct supervisor. Any non-exempt employee who works overtime without management approval must be paid the overtime pay, but may be subject to disciplinary action.
- May not clock in prior to their scheduled start times except as set forth below.
- Must not alter, falsify or tamper with time records or record time on another employee's time record. Doing so will result in disciplinary action, up to and including termination.

## TIMEKEEPING PROCESS

### Schedules

- Work schedules are entered and maintained in Kronos. Department Manager is responsible for notifying Payroll when schedules change so that changes can be made in Kronos.
- All non-worked hours eligible for pay must be recorded, (i.e. CTO/PTO, Vacation, Sick, CAFÉ Time, Bereavement, Jury Duty, etc.)
- The employee and their Manager are responsible for ensuring that employee timekeeping is being recorded appropriately and approved timely.

If an employee changes schedules, the Manager must notify payroll by the Thursday before the scheduled pay date to ensure the employee has the correct schedule assigned for payroll processing.

### Clocking In and Out

Exempt employees are not required to clock in and out on a regular basis as they are paid a salary, but exempt employees are required to request time off, such as requests and use of CTO/PTO, Vacation, Sick and CAFE Time, Bereavement, Jury Duty, etc.

If work is being performed at different Company locations in the same work day, you will generally begin the shift when you arrive at the first location and will end when you depart the last location.

***Legacy Keurig Green Mountain (Legacy KGM):***
Non-exempt employees must clock in and out at a designated Time Clock, via the Kronos Web Timestamp on an internet connected computer or, if approved, via the mobile Kronos app.  An ID Badge or Badge Number is required for purpose of clocking in and out.

***Legacy Dr Pepper Snapple Group (Legacy DPS):***
Non-exempt employees must clock in and out by one of the following three (3) methods: (a) time clocks; (b) handheld devices; or (c) computer and/or manual entry.

**No employee may clock in or out for another employee.**

**PRE-SHIFT AND POST-SHIFT ACTIVITIES**

If a non-exempt employee is required by the Company to wear specific garments or equipment prior to beginning work, the employee must clock in **before** putting on the garments or equipment. When removing the garments or equipment at the end of the shift, the employee must not clock out until **after** having removed the items.

Changing Employees' Clock-In and Clock-Out Times

- To ensure employees are appropriately compensated for their time worked, a Manager may not unilaterally change employee clock-ins or clock-outs.  Modifications to time reported by an employee shall be limited to the correction of administrative errors, and changes may not reduce any actual time worked.  Any such correction(s) shall be made after the Manager has discussed the error and proposed correction with the employee.

- All corrections to employee clock-in or clock-out time must have a reason entered on the corrected time noting why the correction was made.

- If an employee believes he or she has not been paid for all hours worked, or their time card has been changed without their knowledge, the employee should contact HR Shared Services (legacy KGM) or HR Solutions (legacy DPS), who will work with the employee and their Manager to resolve the situation.

**Timecard Approval**

- **Supervisors must review and approve the timecards of their Hourly direct reports on Monday of a pay week by 9:00 am EST (Legacy KGM) and 10:00 AM CST (Legacy DPS) or an alternative time communicated by Payroll.**

**UNPAID MEAL PERIODS**

**Non-exempt, employees** are required to take at least one (1) unpaid meal break each shift. The unpaid meal break should be no less than 30 minutes and no longer than one (1) hour.

During unpaid meal periods, non-exempt employees will be relieved of all duties and responsibilities.  Non-exempt employees must clock out at the beginning of their meal period and clock back in at the end of their meal period. Non-exempt employees who do not take their unpaid meal period may be subject to disciplinary action, up to and including termination. If non-exempt employees perform any work during their unpaid meal period, or if they are not permitted to take a full meal period, they must report this immediately to their supervisor or HR so that KDP can ensure that such employees are properly paid for all hours worked.

**Absent unusual circumstances and approved by their direct supervisor, all non-exempt employees are not permitted to work through their unpaid meal period in order to leave work earlier than scheduled.**

*California Only*
For non-exempt employees, working and residing in the state of California, who works five (5) or more hours in the workday will be provided with a thirty (30) minute unpaid meal period. If the employee works more than ten (10) hours in a day, a second thirty (30) minute paid meal period will be provided before the end of ten (10) hours of work.

If the employee's total hours worked in a workday are 6 hours or less, the employee may, with the agreement of the Company, choose to voluntarily waive the meal period for that day.

If the employee's hours of work in any workday are more than ten (10) hours, but not more than twelve (12) hours, and the employee has taken their first meal period as described above, the employee may, with the agreement of the Company, choose to voluntarily waive the second meal period. If the employee works more than 12 hours in any workday, the second meal period may not be waived.

## PAID REST BREAKS

KDP provides non-exempt employees at least two 15 minute paid rest breaks during a regular full-time shift, and complies with any laws that require additional paid rest breaks.  Employees are expected to follow any rest break schedule set by their supervisor.  Employees are not permitted to leave Company premises while on paid rest breaks. In extraordinary circumstances, and in a limited capacity, employees may request additional unpaid breaks for personal reasons – management has discretion to approve or deny such requests.

### California Only

KDP authorizes and permits non-exempt employees who work and reside in the state of California a number of paid ten (10) minute rest breaks based on the quantity of time the employee works in a given work day. Specifically, employees are authorized and permitted to take the following number of rest periods based on the total number of hours worked:

| If you work this number of hours in a day, | You are permitted to take this number of ten (10) minute, paid rest breaks: |
| --- | --- |
| Less than 3.5 hours | 0 |
| 3.5 hours up to 6 hours | 1 |
| 6 hours up to 10 hours | 2 |
| 10 hours up to 14 hours | 3 |
| 14 hours up to 18 hours | 4 |

## OVERTIME

KDP complies with all federal and state laws that require premium or overtime pay for certain hours worked.  If a non-exempt employee performs any work after clocking out for the day (for example, by responding to emails or phone calls during the evening), the employee must inform their supervisor or HR of the time spent working after clocking out so that the time can be adjusted to capture the additional hours worked.

Except in situations where non-exempt employees are scheduled to work more than 40 hours in a workweek, non-exempt employees may not work overtime (e.g., more than 40 hours in any work week) without the prior written approval of their supervisor.  Non-exempt employees with hours worked in excess of 40 hours during a workweek will be paid premium pay as required by law, but may be subject to disciplinary action if the overtime was not approved in advance.  To the extent that the laws of the state in which a non-exempt employee works require additional premium payment in certain circumstances (e.g., on a daily basis), KDP complies with such laws.  As a reminder, paid holidays (where no work is performed), Combined Time Off ("CTO"/Paid Time Off ("PTO"), and CAFE time are not considered "hours worked" for purposes of determining whether an employee is eligible for premium overtime pay in a particular workweek.

## TRAVEL TIME

Travel time to and from an employee's home is generally not considered hours worked, as it is normal commute time. If a non-exempt employee is required to travel between worksites during the employee's workday, such travel time is considered "hours worked" and the employee will be compensated for the time. In addition, under certain circumstances, travel to a location other than the Company (i.e. to a required training or conference in another city or state) may constitute hours worked if the Company requires such travel.

ABC000287                                                                          Exhibit C, Page 18   CONFIDENTIAL

## TRAINING TIME

KDP will compensate you for your attendance at orientations, company-required continuing education, meetings, lectures, and training programs under the following conditions:

- Attendance is mandatory; or
- Company required meeting, course or lecture is directly related to your job; or
- You are notified by your manager that you are required to attend such meetings, lectures or trainings.

Participation in company-required continuing education, orientation programs, training programs and work-related meetings is considered working time therefore, must be recorded and compensated.

## TIME OFF REQUESTS

Employees are expected to request time off in accordance with established absenteeism and tardiness policies or other like policies as well as the guidelines established by the employee's department.

Employees and their direct supervisors are responsible for approving the time off and ensuring that it is captured in the Kronos system. The employee is responsible to ensure the time has been deducted from their accrual balance.

**As a reminder, KDP takes seriously its obligation to pay all employees for all hours worked.  If an employee believes he or she has not been paid for all hours worked, or their time card has been changed without their knowledge and consent, the employee should immediately contact their HR Business Partner, who will work with the employee and their Manager to resolve the situation.  This includes any work that an employee performs after clocking out for the day.**

This policy may be modified or terminated in KDP's sole discretion.

## NON-COMPLIANCE

Any non-compliance of this policy may result in disciplinary action, up to and including termination of employment.  KDP reserves the right to notify the appropriate law enforcement authorities of any unlawful activity and to cooperate in any investigation of such activity.  KDP does not consider conduct in violation of this policy to be within an individual's scope, employment or obligations, or the direct consequence of the discharge of an individual's duties.  Accordingly, to the extent permitted by law, KDP reserves the right not to defend or pay any damages awarded against any individual that result from a violation of this policy.

Any individual requested to undertake an activity which that individual reasonably believes is in violation of this policy must provide a written or verbal complaint to the individual's manager, the Human Resources Department or as provided in the Code of Conduct.

## RELATED DOCUMENTS

Code of Conduct
Combined Time Off (CTO) Policy (Legacy KGM)
Wage and Hour Compliance Policy (Legacy DPS)
California Wage and Hour Compliance Policy (Legacy DPS)
*Attendance Policy
*Travel Pay Policy

ABC000288                                                          Exhibit C, Page 15   CONFIDENTIAL

*Please see the appropriate policy of your individual Legacy Company (i.e. Legacy DPS or Legacy KGM), as these policies have not been harmonized.

## POLICY HISTORY

| Version | Review History | Approved By |
|---------|----------------|-------------|
| 1 | December 31, 2018 | Chief Human Resources Officer |

ABC000289                                                          Exhibit Page 41   CONFIDENTIAL

# EXHIBIT C

VACHE A. THOMASSIAN  (S.B. #289053)
vache@kjtlawgroup.com
CASPAR JIVALAGIAN (S.B. #282818)
caspar@kjtlawgroup.com
KJT LAW GROUP LLP
230 N. Maryland Ave., Suite 306
Glendale, CA 91206
Telephone:   818.507.8525

CHRISTOPHER A. ADAMS (S.B. #266440)
ca@AdamsEmploymentCounsel.com
ADAMS EMPLOYMENT COUNSEL
4740 Calle Carga
Camarillo, CA 93012
Telephone:   818.425.1437

Attorneys for Plaintiff Juan Guzman-Lopez,
on behalf of himself and all others similarly
situated

*Additional Attorneys listed on the next page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN M. GUZMAN-LOPEZ, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>THE AMERICAN BOTTLING COMPANY, a corporation; KEURIG-DR. PEPPER, INC., a corporation; and DOES 1-20, inclusive<br><br>             Defendants. | Case No.:  2:19-cv-04358-R-GJS<br><br>**DECLARATION OF PLAINITFF JUAN M. GUZMAN-LOPEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

1   Brian R. Short (SBN 236140)
    *Brian@ShortLegal.com*
2   Dorota A. James (SBN 309933)
    *Dorota@ShortLegal.com*
3   ShortLegal, APC
    350 10th Ave., Suite 1000
4   San Diego, California 92101
    Telephone: 619.272.0720
5   Facsimile: 619.839.3129

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KJT LAW GROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

Declaration of Plaintiff Juan M. Guzman-Lopez in Support of
Motion for Class Certification

Exhibit Page 371

## DECLARATION OF JUAN M. GUZMAN-LOPEZ

I, Juan M. Guzman-Lopez, declare:

1.      I make this statement based on my personal knowledge, and if needed, I could competently testify to the matters set forth in this declaration, and that this Declaration may be used to support the claims in the lawsuit.

2.      I am the named plaintiff and class representative in *Guzman-Lopez v. The American Bottling Company, Inc., et al*., Case No. 2:19-cv-04358-R-GJS.  I understand that this case is a class and Private Attorneys General Act ("PAGA") representative action against The American Bottling Company ("TBAC") and Keurig-Dr. Pepper, Inc. ("Dr. Pepper") (collectively named "employer" or "KDP"). In this lawsuit, I allege on a class and collective basis that KDP failed (1) to pay minimum, regular, overtime and regular wages; (2) to authorize and permit rest breaks; (3) to provide compliant meal breaks; (4) to reimburse employees for employment related expenses; (5) to provide accurate itemized wage statements; and (6) to timely pay wages due upon separation of employment.

3.      I am a former employee of The American Bottling Company and Keurig-Dr. Pepper, Inc. and I currently reside in West Los Angeles, California.

4.      I am in no way related to anyone associated with, or working for, KJT Law Group LLP, Adams Employment Counsel, or ShortLegal, APC.

5.      To the best of my knowledge, I have no conflicts of interest with any other class members in this case.

6.      To the best of my ability, I have put the interests of the class members above my own. I have chosen to forgo my opportunity to potentially recover a greater amount if I were to pursue my claims individually in favor of presenting my case as a class action and PAGA representative action.  Indeed, in my role as a class representative, I have been deposed by KDP on two separate occasions and attended an all-day mediation.

KJT LAW GROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

7.      I worked at TBAC and Dr. Pepper as a merchandiser from December 4, 2017 to September 18, 2018 at their facility in Vernon, California. I was a full-time, non-exempt employee working about 40-50 hours per week. During my employment with KDP, my hourly rate was $13.85 per hour.

8.      As a merchandiser, my job responsibilities were to drive to various storefronts throughout Los Angeles County in order to set up promotional signs and stock-up on merchandise under the Keurig-Dr. Pepper banner. I was also responsible for maintaining the warehouse to ensure they were clear and clean from any products.

9.      During my employment with KDP, I was subject to, and required to follow the written policies in the "Dr Pepper Snapple Group Employee Handbook," including the California Addendum to The Employee Handbook.  This included KDP's policy on Rest Periods that stated "[B]ecause rest periods are paid time, employees should remain on the premises." This policy and the employee handbook applied to all non-exempt employees in California, like me. I am unaware of any policies of KDP, either written or otherwise, which would permit me to leave the premises during my rest periods. As a result, all of my rest periods were controlled by my employer and I often was forced to forgo an opportunity to leave the job site to get a snack or a drink or make phone calls to my friends and family in privacy when I chose to do so.

10.      The locations where I worked were often very crowded and there was no privacy.  As a result, I would have preferred to go somewhere private to make phone calls where I was discussing private matters.  However, due to KDPs policies that required me to stay at my job site where it was often crowded with people I did not know, I could not make these calls or engage in other activities in the presence of KDP's retail clients.  KDP asked that I maintain a professional appearance at all times and therefore whenever I was at the job site, including on rest breaks, I did not have the freedom to act or do as I pleased. However, if I was allowed to leave the

2

job site – even for just a few minutes during my long shifts – I would have been able to speak with my family and friends about private matters or relax.  I felt that because KDP required me to maintain a professional appearance at the job sites, I was constantly being watched and never had the freedom to relax.  In fact, due to KDP's on-site rest period policies, while I was out on my routes I felt that the only time that I had the full freedom to relax and rest was when I went to the restroom and it was empty. Otherwise, I felt like I was under the constant scrutiny of KDP.

11.     KDP did not maintain any fix cap or maximum on the number of projects, stores, or appointments per day that can be assigned to each merchandiser. In fact, it was the opposite.  KDP's system prioritizes high volume of projects per day and encourages the merchandisers to handle as many assignments as possible. Consistent with this, almost every day my supervisor or the merchandiser manager, Herman Perez, would contact me during my shift to add additional routes to my daily schedule.  As a result, I was under a continuous pressure to complete my routes as fast as I could and move on to the next project.

12.     I would receive my daily route list on my company issued or my private cell phone usually around midnight. Every morning before I left my home and visited my first store, I would review the route list to familiarize myself with it and get ready for my shift.  And because the first store location of the day varied each day, this always included determining my first store of the day and mapping the route to that store.  I would also check my phone for any display orders made by the store managers. The orders describe the type of display the store managers wanted me to create in theirs stores. I would also review the information regarding the quantity of products ordered by my assigned stores for the day. I was never compensated for the time I spent reviewing my daily routes or the store orders. To my knowledge, other KDP's employees who held the position as a "merchandiser" would receive their schedules in the same manner and at the same time.  They would

KJT LAW GROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

DocuSign Envelope ID: 2D2AFDCF-371D-415B-A489-E05E347E5ADD

also need to spend time to review their varying daily routes and orders but were not paid for that time by KDP.

13.     Additionally, I was regularly required by my supervisors and the merchandiser manager at KDP to pick up so called "repack" boxes from KDP's local branch before I started my daily routes. I had to take the boxes to my assigned stores to repack merchandise from cardboard boxes damaged by the customer or during delivery. I was never paid for the time I traveled from my home to the KDP branch to pick-up the repack boxes and the time I traveled from the KDP branch to my first store location. I believe other employees were subject to the same practice. I was also never reimbursed for the mileage expenses between KDP and the retail location when I did these repacks.

14.     On multiple occasions, upon my arrival at a store, I had to wait for the truck delivering the merchandise before I could start stocking it and/or making displays. These delivery delays would put even more time pressure on me to complete all the routes assigned to me for the day.  I would frequently work shifts that were longer than twelve hours, but I was not compensated for the hours worked in excess of twelve hours because the merchandiser manager, Herman Perez, refused to authorize that overtime. KDP expected their employees to work off-the-clock in order to complete their job duties. To my knowledge, other merchandisers were subject to the same practice.

15.     Ever so often, I would be assigned ten to twelve stores a day which would force me to forgo any meal and rest breaks during my shifts. I knew that if I failed to finish my scheduled assignments, I would be reprimanded or terminated by KDP management.  The KDP management knew that I was unable to take my meal and rest breaks, but they were only concerned about whether my Attestation form indicated that a meal break was recorded – not whether I actually took a meal break.

16.     After a period of time where I used my own cell phone, KDP issued to me a company phone that I was required to have it on me at all times, including my

KJT LAW GROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

DocuSign Envelope ID: 2D2AFDCF-371D-415B-A489-E05E347E5ADD

rest and meal breaks, to ensure I was reachable by my supervisors, managers, KDP sales representatives, and clients every time when they wanted to contact me. To my knowledge, all other merchandisers were required to carry cell phones all the time during their shifts while on and/or off the premises of their prescribed job locations.

17.    Often, the company-issued cellphone would not work, therefore, I carried my personal cell phone to be able to communicate with my supervisor, retailers, and clients at all times.  In fact, as explained below, Herman Perez would contact me on my personal phone to provide with additional assignments.

18.    During my employment with KDP, my merchandiser manager, Herman Perez, always kept pressuring me about work. He would frequently call me on the company-issued phone or/and my private cell phone during my breaks to discuss the progress of my daily routes. On rare occasions, when I decided not to answer the phone while on break, Mr. Perez would get upset and asked why I did not answer my phone. While exchanging my complaints about inability to take meal and rest breaks with other merchandisers, I learned it was a common practice of KDP's supervisors and managers to contact their subordinates during rest and meal breaks to discuss work related issues.

19.    In addition to managers and supervisors, I would receive phone calls from sellers and retailers who would contact me regarding the status, quantity, etc. of client's orders. I would get calls from sellers and retailers at any time during the day, including my meal and rest breaks and I was expected by KDP to immediately answer these calls.

20.    Because of the KDP's policy requiring its employees to remain on premises during the rest breaks and, also, due to an inherent problem with leaving a half-finished stocking and/or display in a store, I almost always stayed on the premises during my rest breaks to comply with KDP's policy and attend the merchandise to ensure the safety of the customers. I also never was informed by anyone at KDP or anywhere else that I could ever leave the job site to take my rest

Declaration of Plaintiff Juan M. Guzman-Lopez in Support of
Motion for Class Certification

KJT LAWGROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

breaks. KDP's policy was that because I was being paid, I was expected to be there and ready to assist if anything came up. To my best knowledge, other employees were subject to the same policies.

21. In addition, I believed KDP had the ability to use the GPS system on the cell phone to track its employees' movement and position at all times. I was fearful that if I left the premises I may be subject to discipline for leaving the premises on a rest break.

22. Typically, I was eating my lunches while driving from one store location to another store, because there was no time otherwise to take a lunch break and I was under a lot of pressure to do my work as efficiently as possible.

23. I would clock in and out for lunches because I had to follow the instruction of the timekeeping app on my cell phone, but I rarely took my 30-minute uninterrupted compliant lunch breaks. My time recording app would not allow me to enter all my daily hours worked and the completed routes, unless I punched out and in for my breaks.

24. On multiple occasions, I would be required to take a rest and/or meal break later than allowed by the law. The breaks were usually late because I would get a call from my direct supervisor requesting I finish stocking-up the merchandise or cleaning up the work area before I could take a break. Also, sometimes the store manager of the store where I am working, would request that I finish stocking-up the merchandise or cleaning up the work area before I leave for my lunch break. In those instances, KDP management instructed me to finish the assignment before taking my lunch break. Oftentimes, this resulted in me taking my lunch break after the fifth hour of my shift.

25. The paystubs I received from KDP during my employment with the company were confusing and inaccurate. They did not list all the miles I drove during the pay period and did not include the rate used to calculate my mileage reimbursement. On multiple occasions, I would bring these issues to my manager's

KJT LAWGROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

attention, but I never got any clarification to my inquiries. To my knowledge, all other merchandisers did not understand how their mileage reimbursement was calculated based on reviewing their paystubs.  In fact, to my knowledge, no merchandiser, including myself, received any documentation demonstrating the amount of miles driven during the pay period and how those miles were reimbursed.

26.     In addition, I was always concerned whether I was paid the proper hourly rate for my work. For an unknown reason, The Notice to Employee that KDP provided me when I started working did not contain my rate of pay as required by law.  This was especially confusing, because the hourly rate listed on my paystubs was much lower than the hourly rate for merchandisers supposedly-guaranteed under the Labor Union Agreement between KDP and my union.  I learned from other employees they did not understand the difference between the Labor Union wage scale, which we believed applied to the union members, including myself, and the actual hourly rate we were paid.

27.     During my employment with KDP, I attempted to bring all these wage-related irregularities to the KDP H.R. Department, but it never addressed these issues.  Similarly, I brought these issues to my merchandiser manager, but I felt that my inquiries or comments were never well received and that I was being reprimanded for doing so.  As a result, I felt pressure from my merchandiser manager not to discuss these wage issues.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.

Executed this __10/30/2019__ day of October 2019, in West Los Angeles, California.



Juan M. Guzman-Lopez

Declaration of Plaintiff Juan M. Guzman-Lopez in Support of Motion for Class Certification

Exhibit Page 024

# EXHIBIT D

**KJT LAW GROUP LLP**
Vache A. Thomassian  (SBN 289053)
vache@kjtlawgroup.com
Caspar Jivalagian (SBN 282818)
caspar@kjtlawgroup.com
230 N. Maryland Ave., Suite 306
Glendale, CA 91206
Tel: 818-507-8525

**ADAMS EMPLOYMENT COUNSEL**
Christopher A. Adams (SBN 266440)
ca@AdamsEmploymentCounsel.com
4740 Calle Carga
Camarillo, CA 93012
Telephone:   818-425-1437

Attorneys for Plaintiff, Juan M. Guzman-Lopez

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Juan M. Guzman-Lopez, individually and on behalf of all others similarly situated, | Case No.:  2:19-cv-04358-R-GJS |
| Plaintiffs, | |
| v. | **DECLARATION OF LAQUITTA ROBINSON** |
| The American Bottling Company; a Corporation; Keurig-Dr. Pepper, Inc., and DOES 1-20, inclusive, | |
| Defendants. | |

## DECLARATION OF LAQUITTA ROBINSON

I, LaQuitta Robinson, declare and state as follows:

1. I am over 18 years of age and a resident of the State of California. I have personal knowledge of the facts and statements set forth in this declaration. And if called upon to testify, I could and would testify competently thereto.

2. I am a former employee of The American Bottling Company and Keurig-Dr. Pepper, Inc. ("KDP"), located in Vernon, CA. My employment with KDP was from approximately May 7, 2018 to approximately September 23, 2019. I was a full-time employee working about 40-50 hours per week, and I was a non-exempt, hourly employee. My pay rate was approximately $23.17 an hour. During my employment, I held the position of Lead Machine Operator

3. As a Lead Machine Operator at KDP, my duties included running the machines, driving the forklift, labeling products, making the beverages, filling, ordering, packing, training, and more. I was responsible for operation and monitoring various manual and automated equipment and production process. I was in charge of replenishing materials and maintaining cleanliness of equipment and production areas. I inspected the production run and repaired equipment as needed.

4. During my employment with KDP, I was subject to the "Dr Pepper Snapple Group Employee Handbook" and the policies contained in that handbook. This included KDP's policy on Rest Periods that stated "[B]ecause rest periods are paid time, employees should remain on the premises". Also, beginning on January 1, 2019, I was subject to the KDP's "U.S Timekeeping, Overtime, Meal Periods & Rest Break Policy for Non-Exempt Employees" policy. Like the employee handbook this policy also stated "Employees are not permitted to leave Company premises while on paid rest breaks." This policy and the employee handbook applied to all non-exempt employees in California, like me.

5. During my Rest Break I was not relieved of all duties and not free from control under my employers. KDP required all employees to remain on call by

KJT LAW GROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

KJT LAWGROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

1 ordering employees to keep their radio phones and pagers on even during rest

2 periods. Under such circumstances, I was not compensated for my missed rest break

3 with the California Rest Break Premium.

4       6.     Throughout my employment with KDP, I was not always consistently

5 provided always me with a "duty free" complete thirty minute meal period before

6 the 5th hour. In addition, I was not given a second Meal Break when I worked more

7 than ten hours. Due to high pressure and understaffing I was asked to clock out and

8 continue working during my Meal Break. Under such circumstances, I was not

9 compensated of my missed meal break with the California Meal Break Premium.

10       7.     Throughout my employment with KDP, my employers failed to pay me

11 my proper premium overtime pay for all hours worked and/or holidays. I was

12 expected to work more than 40 hours per week in order to finish my assigned tasks

13 and I believe my wage statements do not accurately reflect my hours worked.

14       8.     Throughout my employment with KDP, the only way for me to clock-

15 in to record my hours worked was using the Kronos time clock that was located in

16 the break room. To do this, each day, I needed to wait in a line of about 10 people

17 before I could clock-in, which would take approximately 5-7 minutes.  As there was

18 no other way for other employees and I to clock-in, we had no choice but to wait in

19 line.  As a result, it was necessary for me to arrive at least 10 minutes early, before

20 the start of my scheduled shift and clocking back in after my Meal Break.  KDP

21 expected their employees to work off the clock In order to complete tasks. I was not

22 paid for my work off-the-clock.

23      I declare under penalty of perjury under the laws of the State of California

24 that the foregoing is true and correct.

25

26 **EXECUTED**  this _____ day of October __, 2019 at _____,

10/30/2019

Compton

27 California.

28

DocuSign Envelope ID: 1C7BDF72-2B98-4CC5-9AD5-28F45CEC49E3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DocuSigned by:

2978C48D31AA4CF...

**LaQuitta Robinson**

KJT LAWGROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

4

DECLARATION OF LAQUITTA ROBINSON

**EXHIBIT E**

1  **KJT LAW GROUP LLP**
2  Vache A. Thomassian  (SBN 289053)
3  vache@kjtlawgroup.com
   Caspar Jivalagian (SBN 282818)
4  caspar@kjtlawgroup.com
5  230 N. Maryland Ave., Suite 306
   Glendale, CA 91206
6  Tel: 818-507-8525

7  **ADAMS EMPLOYMENT COUNSEL**
8  Christopher A. Adams (SBN 266440)
9  ca@AdamsEmploymentCounsel.com
   4740 Calle Carga
10 Camarillo, CA 93012
11 Telephone:   818-425-1437

12 Attorneys for Plaintiff, Juan M. Guzman-
13 Lopez

14              **UNITED STATES DISTRICT COURT**
15             **CENTRAL DISTRICT OF CALIFORNIA**
16

17 | Juan M. Guzman-Lopez, individually and on behalf of all others similarly situated, | Case No.:  2:19-cv-04358-R-GJS |
18 | | |
19 | Plaintiffs, | |
20 | v. | **DECLARATION OF MIGUEL AGUILAR** |
21 | The American Bottling Company; a Corporation; Keurig-Dr. Pepper, Inc., and DOES 1-20, inclusive, | |
22 | | |
23 | | |
24 | Defendants. | |
25

26
27
28

## DECLARATION OF MIGUEL AGUILAR

I, Miguel Aguilar, declare and state as follows:

1.      I am over 18 years of age and a resident of the State of California. I have personal knowledge of the facts and statements set forth in this declaration. And if called upon to testify, I could and would testify competently thereto.

2.      I am a former employee of The American Bottling Company and Keurig-Dr. Pepper, Inc. ("KDP"), located in Vernon, CA. My employment with KDP was from approximately 2017 to the present. I am a full-time employee and a non-exempt, hourly employee. I held the position of a Forklift Driver.

3.      During my employment with KDP, I was subject to the "Dr Pepper Snapple Group Employee Handbook" and the policies contained in that handbook. This included KDP's policy on Rest Periods that stated "[B]ecause rest periods are paid time, employees should remain on the premises". Also, beginning on January 1, 2019 I was subject to the KDP's "U.S Timekeeping, Overtime, Meal Periods & Rest Break Policy for Non-Exempt Employees" policy. Like the employee handbook this policy also stated "Employees are not permitted to leave Company premises while on paid rest breaks." This policy and the employee handbook applied to all non-exempt employees in California, like me.

4.      During my Employment with KDP the policies in the employee handbook applied to me. These policies of not being able to leave the premises during rest breaks were enforced by KDP management. In fact, I was given verbal warnings for not being on-call during my breaks and I was threatened by management to not leave the premise or I would be terminated.

5.      During my Rest Break I was not relieved of all duties and not free from control under my employers. KDP required all employees to remain on call by ordering employees to keep their radio phones and pagers on even during rest periods. Under such circumstances, I was never paid an additional one hour of pay for my missed rest break.

KJT LAWGROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

Exhibit Page 032

DocuSign Envelope ID: EE9CDA10-11E4-4B0B-9D8F-449E42595411

1    I declare under penalty of perjury under the laws of the State of California

2  that the foregoing is true and correct.

3

4  **EXECUTED** this _10/29/2019_ day of October __, 2019 at ____Vernon_____,

5  California.

6

7  _____

8                    **MIGUEL AGUILAR**

9

DocuSign by:

543040ACA086407...

KJT LAW GROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

3

DECLARATION OF MIGUEL AGUILAR

**EXHIBIT F**

**KJT LAW GROUP LLP**
Vache A. Thomassian (SBN 289053)
vache@kjtlawgroup.com
Caspar Jivalagian (SBN 282818)
caspar@kjtlawgroup.com
230 N. Maryland Ave., Suite 306
Glendale, CA 91206
Tel: 818-507-8525

**ADAMS EMPLOYMENT COUNSEL**
Christopher A. Adams (SBN 266440)
ca@AdamsEmploymentCounsel.com
4740 Calle Carga
Camarillo, CA 93012
Telephone: 818-425-1437

Attorneys for Plaintiff, Juan M. Guzman-Lopez

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Juan M. Guzman-Lopez, individually and on behalf of all others similarly situated, | Case No.: 2:19-cv-04358-R-GJS |
| Plaintiffs, | |
| v. | **DECLARATION OF BLAKE ALLEN** |
| The American Bottling Company; a Corporation; Keurig-Dr. Pepper, Inc., and DOES 1-20, inclusive, | |
| Defendants. | |

## DECLARATION OF BLAKE ALLEN

I, Blake Allen, declare and state as follows:

1.      I am over 18 years of age and a resident of the State of California.  I have personal knowledge of the facts and statements set forth in this declaration. And if called upon to testify, I could and would testify competently thereto.

2.      I am a former employee of The American Bottling Company and Keurig-Dr. Pepper, Inc. ("KDP"), located in Vernon, CA.  My employment with KDP was from approximately January 2019 to approximately October 2019.  I was a full-time, non-exempt, hourly employee, and I held the position of Order Picker.

3.      During my employment with KDP, I was subject to the "Dr Pepper Snapple Group Employee Handbook" and the policies contained in that handbook. This included KDP's policy on Rest Periods that stated "[B]ecause rest periods are paid time, employees should remain on the premises". Also, beginning on January 1, 2019 I was subject to the KDP's "U.S Timekeeping, Overtime, Meal Periods & Rest Break Policy for Non-Exempt Employees" policy. Like the employee handbook this policy also stated "Employees are not permitted to leave Company premises while on paid rest breaks." This policy and the employee handbook applied to all non-exempt employees in California, like me.

4.      During my Employment with KDP the policies in the employee handbook applied to me. These policies of not being able to leave the premises during rest breaks were enforced by KDP management. In fact, I was given verbal warnings for not being on-call or visible during my breaks.

5.      During my Rest Break I was not relieved of all duties and not free from control under my employers. KDP required all employees to remain on call by ordering employees to keep their radio phones and pagers on even during rest periods. Under such circumstances, I was never paid an additional one hour of pay for my missed rest break.

DocuSign Envelope ID: E818D9E1-DA39-45EB-B2DB-966AFFE5D0D7

6.      Throughout my employment with KDP, I was not always consistently provided always me with a "duty free" complete thirty minute meal period before the 5th hour. In addition, I was not given a second Meal Break when I worked more than ten hours. Due to high pressure and understaffing I was asked to clock out and continue working during my Meal Break. Under such circumstances, I was not compensated of my missed meal break with the California Meal Break Premium.

7.      Throughout my employment with KDP, my employers failed to pay me my proper premium overtime pay for all hours worked and/or holidays. I believe my wage statements do not accurately reflect my hours worked.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

EXECUTED  this  ____ day of October __, 2019 at _____, California.

10/30/2019

Blake Allen

_____

**BLAKE ALLEN**

KJTLAWGROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

DECLARATION OF BLAKE ALLEN

Exhibit Page 037

# EXHIBIT G

******** ROUGH DRAFT TRANSCRIPT ******* ROUGH DRAFT TRANSCRIPT********ROUGH DRAFT TRANSCRIPT****

```
 1        LOS ANGELES, CALIFORNIA, FRIDAY, OCTOBER 25, 2019

 2                    10:00 A.M.

 3                     -OOO-

 4

 5                    MAUNG LIN,

 6        THE WITNESS HEREIN, AFTER HAVING BEEN FIRST DULY

 7        SWORN, WAS DEPOSED AND TESTIFIED AS FOLLOWS:

 8

 9                   EXAMINATION

10   BY MR. SHORT:

11        Q   GOOD MORNING.

12        A   GOOD MORNING.

13        Q   MY NAME IS BRIAN SHORT.  I REPRESENT THE

14   PLAINTIFF IN THIS ACTION, MR. JUAN GUZMAN LOPEZ IN A

15   LAWSUIT THAT'S BEEN BROUGHT AGAINST TWO DIFFERENT

16   ENTITIES, AMERICAN BOTTLE COMPANY, INC. AND

17   KEURIG/DR. PEPPER.

18            ARE YOU FAMILIAR WITH THE LITIGATION?

19        A   YES.

20        Q   HAVE YOU SEEN THE COMPLAINT THAT'S BEEN FILED IN

21   THIS MATTER?
```

13      A   CAN YOU RESTATE THE QUESTION?

14      Q   SURE.

15          SO YOU SAID THAT THIS APPLICATION, MILEAGE

16   APPLICATION, CALCULATES THE MILEAGE THAT AN INDIVIDUAL IS

17   GOING TO BE REIMBURSED, CORRECT?

18      A   YES.

19      Q   WHEN A PERSON IS TRYING TO DETERMINE WHEN THEY

20   ARE TO GO TO THEIR FIRST LOCATION AND THEY WANT TO KNOW

21   HOW TO GET THERE, ARE THEY SUPPOSED TO PUT THAT LOCATION

22   INTO THIS MILEAGE APP IN ORDER TO DETERMINE HOW TO GET

23   THERE?

24      A   THE LOCATION OF THEIR DESTINATION, YES, THAT'S

25   MY UNDERSTANDING.

96

***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****

1       Q   AND ARE THEY SUPPOSED TO DO THAT FOR EACH

2    LOCATION THEY'RE GOING TO THROW OUT THE DAY?

3       A   MY UNDERSTANDING IS, YES.

4       Q   AND IS THIS THE SAME APPLICATION THAT IS USED TO

5    KEEP TRACK OF TRACK OF TIME FOR MERCHANDISERS IN

6    CALIFORNIA?

7       A   THERE IS A DIFFERENT APP, MY TIME APP FOR

8    CLOCKING IN AND OUT.

9       Q   SO THIS IS A -- MY RECOLLECTION THIS IS THE

10   THIRD APPLICATION WE'RE TALKING ABOUT, CORRECT?

11      A   YES.

12      Q   SO THERE IS A MY DAY APP, THERE IS SOME MILEAGE

13  APP, WHICH YOU DON'T REMEMBER THE NAME OF IT AND THERE IS

14  ALSO A MY TIME APPLICATION?

15      A   YES.

16      Q   WHAT WERE THE PURPOSES OF MY TIME APPLICATION?

17      A   FOR THE PURPOSES IS FOR EMPLOYEES TO ACCURATELY

18  TRACK AND REPORT THEIR TIME WORKED SO THAT WE CAN

19  ACCURATELY AND APPROPRIATELY COMPENSATE ALL OF OUR

20  EMPLOYEES FOR THE HOURS THAT THEY WORK.

21      Q   OKAY.  AND WAS THIS FOR ALL EMPLOYEES THROUGHOUT

22  CALIFORNIA OF DR. PEPPER?

23      A   WE'RE TALKING ABOUT MERCHANDISERS, YES.

24      Q   WELL, THAT'S WHAT WE WERE TALKING ABOUT.  I'M

25  ASKING YOU IF THIS MY TIME APP IS USED FOR ALL EMPLOYEES
                                                    97
     ***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****

↖

1  IN CALIFORNIA?

2      A   WE -- DRIVERS WOULD HAVE THEIR WAY OF REPORTING

3  THEIR TIME ON THEIR PHONE.  AND ACCOUNT MANAGERS WOULD

4  HAVE THE SAME WAY OF REPORTING TIME ON THEIR IPADS.  SO I

5  THINK THAT MY TIME IS FOR ALL DIFFERENT NON-EXEMPT

6  EMPLOYEES TRACKING THAT WORK IN THE FIELD, BUT NOT EVERY

7  NON-EXEMPT EMPLOYEE WOULD USE THIS APP.

8      Q   OKAY.  SO YOUR UNDERSTANDING IS THAT EMPLOYEES

9   THAT WORK IN THE FIELD, THE DRIVERS, THE ACCOUNT

10  MANAGERS, THE MERCHANDISERS UTILIZED THIS MY TIME APP

11  EITHER THROUGH AN IPHONE OR THROUGH AN IPAD, CORRECT?

12      A   YES.

13      Q   AND GOING BACK TO THE IPHONE, WE HAD DISCUSSED

14  THAT SOME OF THE MERCHANDISERS UTILIZED AN IPHONE OR WERE

15  ISSUED AN IPHONE AT THE OUTSET OF THEIR EMPLOYMENT.

16          WERE THE ACCOUNT MANAGERS ISSUED AN IPAD FOR THE

17  SAME PURPOSES?

18      A   YES.

19      Q   AND WERE BOTH THE ACCOUNT MANAGERS AND THE

20  DRIVERS AND MERCHANDISERS EXPECTED TO HAVE ALL OF --

21  UTILIZE ALL OF THESE APPLICATIONS ON THEIR IPHONE OR IPAD

22  DURING THEIR ENTIRE EMPLOYMENT?

23      A   YES.  MY UNDERSTANDING, YES.

24      Q   FOR THE PURPOSES OF KEEPING TRACK OF TIME, CLOCK

25  IN AND CLOCK OUT TIMES, WAS THERE ANY OTHER METHODOLOGY
                                                      98
      ***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****


1   USED IN ADDITION TO THESE APPLICATIONS?

2       A   FOR WHICH GROUP OF EMPLOYEES?

3       Q   FOR THE GROUP THAT WE'RE TALKING ABOUT NOW, THE

4   DRIVERS, ACCOUNT MANAGERS ALL OF INDIVIDUALS THAT WORKED

5   OFF-SITE?

6       A   NO, NOT TO MY KNOWLEDGE.

15  SOMEWHERE, HOWEVER, WE WERE VERY CLEAR, I WAS PART OF THE

16  CALIFORNIA WAGE AND HOUR POLICY TRAINING, ATTESTATION

17  TRAINING, WE WERE VERY, VERY CLEAR WITH OUR EMPLOYEES AND

18  SUPERVISORS THAT THAT IS NOT TO HAPPEN.  THAT IS JUST NOT

19  TOLERATED.

20      Q   SO IS IT YOUR UNDERSTANDING THAT ABC'S POLICIES

21  IS THAT SUPERVISORS MAY NOT ALTER TIMECARDS WITHOUT THE

22  EXPRESSED CONSENT OF THE EMPLOYEE?

23      A   YES.

24      Q   ALL RIGHT.  AND IS THERE AN AUDIT TRAIL THAT'S

25  KEPT ANYWHERE IN SOFTWARE OR OTHERWISE THAT WOULD

                                              145
   ***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****

1  INDICATE WHEN -- WHAT CHANGE IS MADE TO A PUNCH?

2          MR. WHANG:  OBJECTION.  VAGUE AND AMBIGUOUS.

3          THE WITNESS:  I WOULD SUPPOSE THAT

4  ELECTRONICALLY, YES, THERE IS.  I WOULD HAVE TO SPEAK TO

5  THE KRONOS FOLKS.  THEY ARE THE THIRD PARTY COMPANY THAT

6  MANAGES THIS.

7      Q   BY MR. SHORT:  SO IS KRONOS UTILIZED BY ALL

8  CALIFORNIA FACILITIES BY ABC?

9      A   TO MY UNDERSTANDING, YES.

10      Q   TO MY UNDERSTANDING, I'M FAIRLY FAMILIAR WITH

11  THE KRONOS SOFTWARE.  I KNOW THERE IS AUDIT TRAIL

12  CAPABILITY.  AND AS SIT HERE TODAY, IT DOESN'T SOUND LIKE

11    PARTICULAR LEVEL IN THE HIERARCHY OF SUPERVISORS THAT

12    HAVE PERMISSION TO CHANGE A SUBORDINATE'S PUNCHES?  FOR

13    INSTANCE, IS IT A REGIONAL MANAGER OR A DISTRICT MANAGER,

14    OR HIGHER?

15            MR. WHANG:  WELL, ASSUMES FACTS NOT IN EVIDENCE.

16    MISSTATES WITNESS'S TESTIMONY.

17            THE WITNESS:  COULD YOU RESTATE YOUR QUESTION?

18    Q    BY MR. SHORT:  SURE?

19    A    WHO WAS PERMISSION?  GO AHEAD PLEASE.

20    Q    SO ASSUMING SOMEBODY NEEDS TO HAVE SOMETHING

21    CHANGED ON THEIR TIMECARD BY A SUPERVISOR, CAN AN

22    EMPLOYEE DO IT THEMSELVES?

23    A    DEPENDS ON HOW FAR BACK THEY NEED TO GO, I

24    THINK.  LET'S SAY IT'S A SAME DAY PUNCH THAT THEY NEED TO

25    CHANGE, I THINK THEY CAN CHANGE IT ON THEIR OWN OR THEY

                                            147
     ***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****

1    CAN CLOCK OUT AGAIN.

2            LET'S SAY, YOU CAN'T REMEMBER IF YOU CLOCKED OUT

3    FOR THE DAY, I GUESS YOU CAN CLOCK OUT AGAIN, IF THAT'S

4    WHAT YOU CALL CHANGING, AN EMPLOYEE CAN DO THAT.

5    Q    THAT'S INTERESTING.

6            IS THERE A WAY TO TELL FROM YOUR APPLICATION

7    WHETHER YOU ALREADY CLOCKED OUT OR NOT?  DOES IT SAY?

8    A    YOU HAVE A CHANCE TO ATTEST AT THE END OF THE

9    DAY IF THESE ARE YOUR ACCURATE PUNCHES, THEN YOU WOULD

10   KNOW.

11        Q   YOU MENTIONED THAT SOMEBODY CAN CLOCK OUT AGAIN.

12   WOULD THERE NOT BE AN INSTANCE WHERE A PERSON WOULD KNOW

13   IF THEY HAD CLOCKED OUT IF THEY LOOKED AT THE APP?

14        A   THEY MAY, THEY MAY NOT.  I'M NOT SURE.  I'VE NOT

15   USED THE MY TIME APP MYSELF.  HOWEVER SOMEBODY IN MY

16   EXPERIENCE, DOESN'T KNOW IF THEY HAVE CLOCKED OUT ON THE

17   TIME CLOCK, THEY SHOULD BE ABLE TO CLOCK OUT AGAIN.  AND

18   THEN THEY CAN ATTEST TO THE ACCURACY OF THEIR PUNCHES,

19   THE SAME DAY OR AT ANOTHER TIME DURING THE WEEK.

20        Q   DOES ABC DO THEIR OWN PAYROLL OR THAT IS DONE BY

21   ADP OR SOME OTHER OUTSIDE AGENCY?

22        A   KRONOS IS OUR VENDOR.  SO WHAT DO YOU MEAN DO WE

23   OWN?

24        Q   WHO ISSUES YOUR PAYROLL CHECKS?

25        A   KEURIG, DR. PEPPER, ABC.

                                        148
     ***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****

1         Q   SO TO YOUR KNOWLEDGE, THERE IS NOT AN OUTSIDE

2    COMPANY LIKE ADP?

3         A   WE DON'T USE ADP.

4         Q   PAYCHEX?

5         A   WE DON'T USE PAYCHEX EITHER, I WOULD KNOW.

6         Q   IS THE WAGE STATEMENT FOR -- IS THERE A WAGE

```
7    STATEMENT PROVIDED WITH EACH PAYCHECK FOR EMPLOYEES IN

8    CALIFORNIA?

9         A   TO MY UNDERSTANDING, YES.

10        Q   IS THAT ELECTRONIC OR IS IT A HARD COPY

11   DOCUMENT?

12        A   IT DEPENDS ON WHAT THE EMPLOYEE CHOOSES TO DO.

13        Q   SO THE EMPLOYEE WILL MAKE AN ELECTION AS TO

14   WHETHER TO RECEIVE HARD COPY OR ELECTRONIC AT SOME POINT

15   DURING THEIR EMPLOYMENT?

16        A   YES.

17        Q   AND IF THEY ELECTED TO GET A HARD COPY, HOW IS

18   THAT WAGE STATEMENT PROVIDED?

19        A   A HARD COPY.

20        Q   IS THAT EVEN IN THE INSTANCE WHERE THEY HAVE

21   AUTOMATIC DEPOSIT OR DIRECT DEPOSIT TO THEIR BANK?

22        A   I BELIEVE THEY GET A HARD COPY AS WELL,

23   ACTUALLY.  IF THEY GO PAPERLESS, THEY DON'T GET PAPER

24   COPY.  HOWEVER DIRECT DEPOSIT THEY GET BOTH THE HARD COPY

25   AND DIRECT DEPOSIT FORM.
                                              149
     ***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****
```

↖

```
1         Q   AND IF THE PERSON ELECTS TO HAVE ELECTRONIC WAGE

2    STATEMENT PROVIDED, DO INDIVIDUAL EMPLOYEES RECEIVE AN

3    EMAIL THAT THEIR WAGE STATEMENT IS AVAILABLE?

4         A   COULD YOU ASK THAT QUESTION AGAIN.
```

5      Q    SURE.

6           IF A PERSON ELECTS TO RECEIVE ELECTRONIC WAGE

7    STATEMENTS, HOW DO THEY RECEIVE THAT?

8      A    SO THEY CAN LOG INTO A WEBSITE CALLED EPAY PLUS,

9    AND THEY CAN SETUP AN ACCOUNT.  THEY CAN GO IN THERE,

10   LOOK AT THEIR WAGE STATEMENTS, THEIR PAYCHECKS.  THEY CAN

11   EVEN ORDER W2S ON THEIR WEBSITES FROM WHAT I UNDERSTAND.

12     Q    DO YOU KNOW HOW LONG THAT INFORMATION STAYS

13   AVAILABLE TO THEM?  IS IT THROUGHOUT THE ENTIRE OF THEIR

14   EMPLOYMENT?

15     A    THAT'S A GOOD QUESTION.  I DON'T KNOW HOW LONG

16   THAT'S AVAILABLE.

17     Q    ARE INDIVIDUALS PROVIDED AN OPPORTUNITY TO

18   REVIEW THEIR WAGE STATEMENT PRIOR TO THE PAYCHECK BEING

19   ISSUED?

20     A    NOT TO MY KNOWLEDGE.  HOW WOULD THEY VIEW THEIR

21   WAGE STATEMENT?

22     Q    WELL, FOR INSTANCE, I'LL GIVE YOU MY OWN

23   CIRCUMSTANCES.  BACK BEFORE I STARTED MY OWN PRACTICE MY

24   EMPLOYER WOULD SEND ME A WAGE STATEMENT AND SAY IF YOU

25   HAVE ANY ISSUES WITH LET ME KNOW BY THURSDAY AT TWO P.M.
                                                      150
      ***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****

1    IN ORDER TO CORRECT IT.  DO YOU KNOW WHETHER THAT HAPPENS

2    AT ABC?

14      A   IT WOULD BE RECORDED THE SAME WAY ATTESTATION IS

15  RECORDED.

16      Q   IS THERE A SIMILAR AUDIT TRAIL AS WE TALKED

17  ABOUT WITH KRONOS THAT THE CHANGE MADE ON X DATE?

18      A   I SUPPOSE IF SOMEBODY WANTS TO AUDIT THE

19  PUNCHES, SOMEBODY CAN.  IT'S HARD FOR ME TO SAY IS THERE

20  AN AUDIT TRAIL.  IT'S PRETTY WIDE OPEN.

21      Q   SO YOU'RE NOT AWARE OF WHETHER THE CHANGE OF THE

22  ATTESTATION IS KEPT SOMEWHERE IN A DATABASE OR SOMETHING?

23      A   AS I SAID EARLIER, I THINK KRONOS HAS THE

24  TECHNICAL CREDIBILITY.  WE USE KRONOS FOR OUR TIMEKEEPING

25  PURPOSES SO I WOULD ASSUME KRONOS CAN HELP COMPANIES

                                        158
    ***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****

1  AUDIT THESE PUNCHES.  THEREFORE THERE WILL BE AUDIT

2  TRAILS TO YOUR QUESTION.

3      Q   BUT THE ATTESTATIONS IS SOMETHING DIFFERENT THAN

4  KRONOS, CORRECT?

5      A   ATTESTATION IS FOR THE EMPLOYEES TO ATTEST TO

6  THEIR PUNCHES AND THEN THAT IS SUBMITTED, THAT IS

7  COMMUNICATED TO KRONOS, AND THEN THE PUNCHES ARE IN

8  KRONOS, RIGHT.

9          SO YOU WILL KNOW WHEN THE SUPERVISORS ARE -- I

10  GUESS I'M CONFUSING HERE, IN THAT THE PUNCHES THAT PEOPLE

11  ARE MAKING WILL BE IN KRONOS.

6      Q   SO THERE IS SEVERAL REFERENCES.  I'LL ASK YOU ON

7  THE FIRST PAGE OR SECOND PAGE HERE, IT SAYS KRONOS CLOCK.

8          IS THIS A REPRESENTATION OF THE KRONOS

9  APPLICATION SYSTEM FOR TIMEKEEPING?

10     A   THAT'S WHAT IT LOOKS LIKE, YES.

11     Q   AND IF YOU LOOK AT THE NEXT PAGE, IT SAYS XORA,

12  I BELIEVE IS HOW YOU PRONOUNCE IT?

13     A   YEAH, I THINK SO.

14     Q   IS THIS A DIFFERENT SYSTEM THAT'S UTILIZED BY

15  ABC?

16     A   I THINK IT WAS AT ONE POINT FOR DRIVERS MAYBE.

17     Q   IS THAT ALL OF THE PEOPLE THAT YOU UNDERSTAND TO

18  USE XORA?

19     A   YEAH.  THEY MAY OR MAY NOT STILL USE IT.  I ALSO

20  REALIZE THAT WE USED TO HAVE PAPER ATTESTATION BEFORE THE

21  ATTESTATION SYSTEM SO.

22     Q   DO YOU KNOW WHAT TIMEFRAME THAT WAS?

23     A   I THINK IT WAS BEFORE THE ELECTRONIC ATTESTATION

24  TOOL WAS IMPLEMENTED.

25     Q   DO YOU KNOW, APPROXIMATELY, WHAT DATE THAT

                                            187
   ***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****

1  ELECTRONIC SYSTEM WENT INTO EFFECT?

2      A   I DON'T REMEMBER EXACTLY.  I CAN'T REMEMBER.  IT

3  WAS AFTER I STARTED WITH THE COMPANY.  SO SOMETIME AFTER

4    2016.

5         Q    OKAY.  ALL RIGHT.  AND THEN THE NEXT PAGE IF YOU

6    LOOK AT 147.  IT SAYS APACHETA.  DO YOU KNOW WHAT THAT

7    SYSTEM IS?

8         A    I THINK IT'S ALSO DRIVERS RELATED.  I THINK.

9         Q    AT THE BOTTOM OF THIS DOCUMENT HERE, IT SAYS ALL

10   APACHETA USERS MUST BE BIOMETRICALLY ENROLLED TO USE THE

11   KRONOS CLOCK.  DO YOU SEE THAT?

12        A    YES.

13        Q    WHAT DOES MY BIOMETRICALLY ENROLLED MEAN?

14        A    I BELIEVE IT MEANS USING YOUR FINGERPRINT TO

15   CLOCK IN AND OUT.

16        Q    DO YOU KNOW WHICH EMPLOYEES USED THAT DURING THE

17   RELEVANT TIME PERIODS, 2015?

18        A    MIGHT HAVE BEEN DRIVERS AND OTHER KRONOS CLOCK

19   USERS PERHAPS.

20        Q    OKAY.  SO THE GRAPHICAL REPRESENTATION THAT ARE

21   ON THIS DOCUMENT HERE, DOES THIS ACCURATE REFLECT IN YOUR

22   CASE THAT EMPLOYEES WERE USING DURING THE VARIOUS

23   SYSTEMS.

24        A    AS FAR AS I UNDERSTAND, YES.

25        Q    I'M NOT FAMILIAR WHETHER IT HELPS ME TO TAKE A

                                              188
       ***** ROUGH DRAFT TRANSCRIPT ***** ROUGH DRAFT TRANSCRIPT *****

1    LOOK AT IT SO I JUST WANTED TO KNOW.

# EXHIBIT H

1   **KJT LAW GROUP LLP**
2   Vache A. Thomassian  (SBN 289053)
    vache@kjtlawgroup.com
3   Caspar Jivalagian (SBN 282818)
4   caspar@kjtlawgroup.com
    230 N. Maryland Ave., Suite 306
5   Glendale, CA 91206
6   Tel: 818-507-8525

7   **ADAMS EMPLOYMENT COUNSEL**
8   Christopher A. Adams (SBN 266440)
    ca@AdamsEmploymentCounsel.com
9   4740 Calle Carga
10  Camarillo, CA 93012
    Telephone:   818-425-1437
11

12  *Attorneys Continued on Following Page*

13
                **UNITED STATES DISTRICT COURT**
14
                **CENTRAL DISTRICT OF CALIFORNIA**
15

16
17  Juan M. Guzman-Lopez, individually and     |   Case No.:  2:19-cv-04358-R-GJS
    on behalf of all others similarly situated,
18
19              Plaintiffs,
                                                    **DECLARATION OF SANTIAGO**
20      v.                                          **BENAVIDEZ**

21  The American Bottling Company; a
    Corporation; Keurig-Dr. Pepper, Inc., and
22  DOES 1-20, inclusive,

23
24              Defendants.
25
26
27
28

DocuSign Envelope ID: 18A6B8F6-7247-4758-A87A-15FFE4785368

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brian Short, Esq. (S.B. # 236140)
Dorota A. James (S.B. # 309933)
**ShortLegal, APC**
350 10th Ave.
Suite 1000
San Diego, CA 92101
Tel: (619) 272-0720
Fax: (619) 839-3129

Attorneys for Plaintiff Juan M. Guzman-Lopez
on behalf of himself and all others similarly situated

KJT LAW GROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

2

Exhibit Page 053

DocuSign Envelope ID: 18A6B8F6-7247-4758-A87A-15FFE4785368

## **DECLARATION OF SANTIAGO BENAVIDES**

I, Santiago Benavides, declare and state as follows:

1.      I am over 18 years of age and a resident of the State of California.  I have personal knowledge of the facts and statements set forth in this declaration. And if called upon to testify, I could and would testify competently thereto.

2.      I am an employee of The American Bottling Company and Keurig-Dr. Pepper, Inc. (collectively, "KDP"), located in Vernon, CA.  My employment with KDP has been from approximately February 2018 to the present. I am a full-time, non-exempt, hourly employee and I hold the position of warehouse forklift driver.

3.      As an employee with KDP, I am subject to the "Dr Pepper Snapple Group Employee Handbook" and the policies contained in that handbook.  This included KDP's policy on Rest Periods that stated "[B]ecause rest periods are paid time, employees should remain on the premises."  Also, beginning on January 1, 2019, I was subject to the KDP's "U.S Timekeeping, Overtime, Meal Periods & Rest Break Policy for Non-Exempt Employees" policy. Like the employee handbook this policy also stated "Employees are not permitted to leave Company premises while on paid rest breaks." This policy and the employee handbook apply to all non-exempt employees in California, like me.

4.      As an employee of KDP, the policies in the employee handbook apply to me, including the rest break policies described above.  Importantly, these policies of not being able to leave the premises during rest breaks are enforced by KDP management.  Specifically, my manger told me that I cannot leave the premises of the Vernon facility during my rest breaks.

5.      Under such circumstances, I am never paid an additional one hour of pay for my missed rest break.

6.      Throughout my employment with KDP, my employers fail to pay me my proper premium overtime pay for all hours worked and/or holidays. I am

DECLARATION OF SANTIAGO BENAVIDEZ

Exhibit Page 054

KJT LAWGROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206

1   expected to work on holidays in order to finish my assigned tasks and I believe my

2   wage statements do not accurately reflect my hours worked.

3        I declare under penalty of perjury under the laws of the State of California

4   that the foregoing is true and correct.

5

6   **EXECUTED** this _____ day of October __, 2019 at _____,    10/30/2019                     5:05

7   California.

8

9   _____

10  **SANTIAGO BENAVIDES**

**EXHIBIT I**

1  **KJT LAW GROUP LLP**
2  Vache A. Thomassian  (SBN 289053)
3  vache@kjtlawgroup.com
   Caspar Jivalagian (SBN 282818)
4  caspar@kjtlawgroup.com
5  230 N. Maryland Ave., Suite 306
   Glendale, CA 91206
6  Tel: 818-507-8525

7  **ADAMS EMPLOYMENT COUNSEL**
8  Christopher A. Adams (SBN 266440)
9  ca@AdamsEmploymentCounsel.com
   4740 Calle Carga
10 Camarillo, CA 93012
   Telephone:   818-425-1437
11

12 *Attorneys Continued on Following Page*

13

14           **UNITED STATES DISTRICT COURT**

15           **CENTRAL DISTRICT OF CALIFORNIA**

16

17 Juan M. Guzman-Lopez, individually and | Case No.:  2:19-cv-04358-R-GJS
   on behalf of all others similarly situated,
18
19                    Plaintiffs,
20           v.                              | **DECLARATION OF JUSTIN BETANZOS**
21 The American Bottling Company; a
   Corporation; Keurig-Dr. Pepper, Inc., and
22 DOES 1-20, inclusive,
23
24                    Defendants.
25
26
27
28

*KJT LAWGROUP LLP*
*230 N. Maryland Ave. Suite 306*
*Glendale, CA 91206*

Exhibit Page 057

Brian Short, Esq. (S.B. # 236140)
Dorota A. James (S.B. # 309933)
**ShortLegal, APC**
350 10th Ave.
Suite 1000
San Diego, CA 92101
Tel: (619) 272-0720
Fax: (619) 839-3129

Attorneys for Plaintiff Juan M. Guzman-Lopez
on behalf of himself and all others similarly situated

2

DECLARATION OF JUSTIN BETANZOS

## DECLARATION OF JUSTIN BETANZOS

I, JUSTIN BETANZOS, declare and state as follows:

1.      I am over 18 years of age and a resident of the State of California.  I have personal knowledge of the facts and statements set forth in this declaration. And if called upon to testify, I could and would testify competently thereto.

2.      I am a former employee of The American Bottling Company and Keurig-Dr. Pepper, Inc. ("KDP") of their facility located in Vernon, California.  My employment with KDP was from approximately August 2018 to approximately January 2019. I was a full-time employee working about 60 hours per week, and I was a non-exempt, hourly employee. During my employment, I held the position of Merchandiser.

3.      During my employment with KDP, I was subject to the "Dr Pepper Snapple Group Employee Handbook" and the policies contained in that handbook. This included KDP's policy on Rest Periods that stated "[B]ecause rest periods are paid time, employees should remain on the premises." Also, beginning on January 1, 2019 I was subject to the KDP's "U.S Timekeeping, Overtime, Meal Periods & Rest Break Policy for Non-Exempt Employees" policy. Like the employee handbook this policy also stated "Employees are not permitted to leave Company premises while on paid rest breaks." This policy and the employee handbook applied to all non-exempt employees in California, like me.

4.      During my employment with KDP the policies discussed above in the employee handbook applied to me. These policies of not being able to leave the premises during rest breaks were enforced by KDP management. In fact, I was given verbal warnings for not being on-call during my breaks and I was threatened by management.

5.      During my rest break I was not relieved of all duties. Mainly, KDP provided their employees – including me – with radio phones and they required all to keep their radio phones and pagers on even during rest periods.  In doing so, KDP

Exhibit Page 059

KJT LAW GROUP LLP
230 N. Maryland Ave. Suite 306
Glendale, CA 91206

1  required their employees and me to monitor the radio phones.  Under such

2  circumstances, I was never paid an additional one hour of pay for my missed rest

3  breaks.

4        6.      Throughout my employment with KDP, I was not always provided with

5  a "duty free" complete thirty-minute meal period before the 5th hour of work.  In

6  addition, I was not given a second meal break when I worked more than ten hours.

7  Due to high pressure and understaffing I was asked to clock out and continue

8  working during my meal breaks. Under such circumstances, I was never paid an

9  additional hour of pay for my missed meal breaks.

10       I declare under penalty of perjury under the laws of the State of California

11  that the foregoing is true and correct.

12

13  **EXECUTED**  this _____ day of October __, 2019 at _____,
         10/30/2019                        5:35pm

14  California.

15

16

17  _____

       **JUSTIN BETANZOS**

18

19

20

21

22

23

24

25

26

27

28

KJT LAW GROUP LLP
330 N. Maryland Ave. Suite 306
Glendale, CA 91206