SEYFARTH SHAW LLP
Daniel Whang (SBN 223451)
dwhang@seyfarth.com
David Rosenberg (SBN 292094)
drosenberg@seyfarth.com
Olivia J. Wada (SBN 317153)
owada@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendants
THE AMERICAN BOTTLING COMPANY and
KEURIG DR. PEPPER INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN M. GUZMAN-LOPEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE AMERICAN BOTTLING COMPANY, a corporation; KEURIG-DR. PEPPER, INC., a corporation; and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 2:19-cv-04358-R-GJS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:       December 2, 2019<br>Time:       10:00 a.m.<br>Place:      Courtroom 850, 8th Floor<br>Judge:      Hon. R. Gary Klausner<br><br>Complaint Filed:       April 16, 2019<br>Trial Date:               June 9, 2020 |

60003604v.8

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................1

II. FACTUAL BACKGROUND.................................................................2

    A. Plaintiff Only Worked As A Merchandiser For ABC...................2

    B. The Potential Class Members Either Work In The Field Or At 22 Different Facilities Throughout California Under 79 Different Job Titles ............................................................................................3

    C. A Significant Majority Of Putative Class Members Are Union Members ......................................................................................3

III. A PRIOR CLASS ACTION SETTLEMENT SIGNIFICANTLY LIMITS THE CLASS PERIOD PLEAD BY PLAINTIFF .........................4

IV. PLAINTIFF'S BURDEN TO OBTAIN CLASS CERTIFICATION......................4

V. PLAINTIFF'S PROPOSED CLASSES ARE NOT ASCERTAINABLE...............4

VI. PLAINTIFF'S CLAIM FOR REST PERIOD VIOLATIONS IS NOT APPROPRIATE FOR CLASS CERTIFICATION..................................5

    A. Plaintiff Does Not Plead His Theory Of Liability In His Operative FAC ............................................................................................5

    B. ABC Has Lawful Rest Period Policies That Relieve Employees Of All Work Related Duties And Do Not Prohibit Them Leaving The Premises......................................................................................6

        1. ABC's 2016 Rest Period Policy Does Not Prohibit Employees From Leaving The Premises During Rest Periods ..................6

        2. ABC's 2019 Rest Period Policy Is Silent On Remaining On The Premises For Rest Periods ....................................................6

    C. Plaintiff Does Not Establish Any Common Unlawful Policy .......................7

        1. Plaintiff's On Premises Theory Of Liability Is Based On An Erroneous Legal Assumption..............................................7

        2. Plaintiff Does Not Identify Any Policy Requiring Employees To Remain On-Call During Rest Periods ..............................8

        3. It Is Not Unlawful For An Employee To Be Unable To Leave The Premises If Doing So Would Be Impractical .................9

    D. Plaintiff's Claims Are Not Typical Of The Class ..........................9

i

1. The On Premises Language In ABC's Rest Period Policy Did Not Apply To Plaintiff Since He Did Not Work On Company Premises ........................................................................... 10

2. The On Premises Language In ABC's Rest Period Policy Does Not Apply To Plaintiff Because He Was Represented By A Union ............................................................................................ 10

3. Plaintiff Admits That ABC Has Legally Compliant Rest Period Policies And That His Rest Periods Were Not Interrupted ............... 10

E. Individualized Issues Predominate Plaintiff's Rest Period Claim ............... 11

1. ABC Requires Class Members To Complete Daily Rest Period Attestations, And ABC Automatically Pays A Premium If A Rest Period Was Not Authorized or Permitted.................................... 11

2. The Overwhelming Evidence Shows Widespread Compliance With ABC's Lawful Rest Period Policies........................................... 12

3. There Is No Common Evidence That Class Members Were Required To Remain On ABC's Premises During Rest Periods........ 13

4. There Is No Common Evidence That Class Members Were Required To Monitor Cellphones Or Radios, Or Otherwise Remain On-Call During Rest Periods.................................................. 15

VII. PLAINTIFF'S CLAIM FOR MEAL PERIOD VIOLATIONS IS NOT APPROPRIATE FOR CLASS CERTIFICATION.................................... 15

A. ABC Has Lawful Meal Period Policies That Relieve Employees Of All Work Related Duties ................................................................... 15

B. Plaintiff Admits That ABC Has Lawful Meal Period Policies .................... 16

C. Individualized Issues Predominate Plaintiff's Meal Period Claim .............. 16

1. ABC Requires Class Members To Complete Daily Meal Period Attestations, And ABC Automatically Pays A Meal Period Premium If A Meal Period Was Not Provided.................................... 16

2. The Overwhelming Evidence Shows Widespread Compliance With ABC's Lawful Meal Period Policies ......................................... 17

3. Plaintiff's "Time Pressure" Theory Cannot Support Certification ............................................................................................ 18

VIII. PLAINTIFF'S CLAIMS FOR FAILURE TO PAY MINIMUM AND OVERTIME WAGES BASED ON WORK PERFORMED "OFF-THE-CLOCK" ARE NOT APPROPRIATE FOR CLASS CERTIFICATION .............. 19

A. Defendants Have Always Maintained Lawful Written Timekeeping Policies That Prohibit "Off-The-Clock" Work ............................................ 19

ii

B.  Plaintiff Admits That ABC's Timekeeping Policies Required Him To Report All Hours Worked And Prohibited Him From Performing Work Off-The-Clock ...................................................................20

C.  Individualized Issues Predominate Plaintiff's Off-The-Clock Claims .........21

    1.  ABC Requires Class Members To Complete Weekly Timecard Attestations To Confirm The Accuracy Of Their Time Records .......21

    2.  There Is No Common Evidence Of Off-The-Clock Work .................22

D.  Class Action Is Not A Superior Method For Adjudicating The Overtime Claim Because Labor Code Section 514 Preempts The Overtime Claim ...................................................................................23

IX.  PLAINTIFF'S DERIVATIVE CLAIMS FOR INACCURATE WAGE STATEMENTS AND WAITING TIME PENALTIES ARE NOT APPROPRIATE FOR CLASS CERTIFICATION...................................................23

X.  PLAINTIFF IS AN INADEQUATE CLASS REPRESENTATIVE......................23

XI.  THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR ADDITIONAL DISCOVERY .............................................................25

XII.  CONCLUSION............................................................................................25

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

60003604v.8

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alvarez v. Office Depot, Inc.*,
  2019 WL 2710750 (C.D. Cal. June 27, 2019)..............................................5

*Bell v. Home Depot U.S.A., Inc.*,
  2017 WL 1353779 (E.D. Cal. Apr. 11, 2017) ..............................................8

*Campbell v. Vitran Express*,
  2016 WL 873009 (C.D. Cal. Nov. 12, 2015) (Klausner, J.)........................13

*Carrasco v. C.H. Robinson Worldwide*,
  2013 WL 6198944 (E.D. Cal. Nov. 27, 2013) ............................................18

*Chavez v. AmeriGas Propane, Inc.*,
  2015 WL 12859721 (C.D. Cal. Feb. 11, 2015) ..........................................23

*Cleveland v. Groceryworks.com, LLC*,
  200 F. Supp. 3d 924 (N.D. Cal. 2016)........................................................18

*Curtis v. Irwin Indus., Inc.*,
  913 F.3d 1146 (9th Cir. 2019) ...................................................................22

*Davidson v. O'Reilly Auto Enters.*,
  2017 WL 8292782 (C.D. Cal. Dec. 15, 2017) (Klausner, J.) .....................13

*Dawson v. Hertz Transporting, Inc.*,
  2018 WL 6112623 (C.D. Cal. Nov. 5, 2018) .............................................23

*Dilts v. Penske Logistics, LLC*,
  315 F.R.D. 591 (S.D. Cal. 2016) ..................................................................4

*English v. Apple Inc.*,
  2016 WL 1188200 (N.D. Cal. Jan. 5, 2016)...............................................24

*Garcia v. Sun Pac. Farming Co-op, Inc.*,
  359 F. App'x 724 (9th Cir. 2009) .........................................................13, 18

*Hadjavi v. CVS Pharmacy, Inc.*,
  2011 WL 3240763 (C.D. Cal. July 25, 2011)....................................13, 18, 19

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ......................................................................24

*Harris v. Vector Mktg. Corp.*,
  753 F. Supp. 2d 996 (N.D. Cal. 2010).......................................................23

*Hernandez v. Cnty. of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015)...............................................................23

iv

*Howard v. CVS Caremark Corp.*,
   2014 WL 7877404 (C.D. Cal. Dec. 9, 2014) ................................................ 19

*Hubbs v. Big Lot Stores, Inc.*,
   2018 WL 5264141 (C.D. Cal. Mar. 16, 2018) ................................................ 8

*Junod v. NWP Servs. Co.*,
   2016 WL 6306030 (C.D. Cal. July 18, 2016) ................................................ 5

*Lanzarone v. Guardsmark Holdings, Inc.*,
   2006 WL 4393465 (C.D. Cal. Sept. 7, 2006) ................................................ 11

*Litty v. Merrill Lynch & Co.*,
   2014 WL 5904907 (C.D. Cal. Aug. 4, 2014) ................................................ 25

*Manigo v. Time Warner Cable, Inc.*,
   2017 WL 5149225 (C.D. Cal. Apr. 4, 2017) ................................................ 5

*Ordonez v. Radio Shack, Inc.*,
   2013 WL 210223 (C.D. Cal. Jan. 17, 2013) ................................................ 19, 22

*Panacci v. A1 Solar Power, Inc.*,
   2015 WL 3750112 (N.D. Cal. June 15, 2015) ................................................ 4

*Pena v. Taylor Farms Pac., Inc.*,
   305 F.R.D. 197 (E.D. Cal. 2015) ................................................ 22

*Rai v. CVS Caremark Corp.*,
   2013 WL 10178675 (C.D. Cal. Oct. 11, 2013) ................................................ 22

*Ritenour v. Carrington Mortg. Servs., LLC*,
   2018 WL 5858658 (C.D. Cal. Sept. 12, 2018) ................................................ 7, 8, 14

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
   2013 WL 5775129 (C.D. Cal. Oct. 25, 2019) ................................................ 4, 5

**State Cases**

*Augustus v. ABM Security Services, Inc.*,
   2 Cal. 5th 257, 264 (2016) ................................................ 8, 9

*Brinker Restaurant Corp. v. Super. Ct.*,
   53 Cal. 4th 1004 (2012) ................................................ 15, 19, 21

*Dailey v. Sears, Roebuck and Co.*,
   214 Cal. App. 4th 974 (2013) ................................................ 16

*J. C. Peacock, Inc. v. Hasko*,
   196 Cal. App. 2d 353 (1961) ................................................ 24

*Jaimez v. Daiohs USA, Inc.*
   181 Cal. App. 4th 1286 (2010) ................................................ 24

*Murphy v. Kenneth Cole Prods, Inc.*,
   40 Cal. 4th 1094 (2007) ................................................ 15

v

**State Statutes**

Cal. Code Regs., Title 8, § 11070(12)(A) ................................................................. 6

Cal. Lab. Code § 514 ........................................................................................... 22, 23

**Rules**

Rule 23(a) .................................................................................................................... 4

Rule 23(a)(3) .............................................................................................................. 24

Rule 23(b) .................................................................................................................... 4

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

60003604v.8

# I.   INTRODUCTION

Plaintiff Juan Guzman is seeking to certify a class of 4,557 current and former employees of The American Bottling Company ("ABC") who held 79 different positions, worked at 22 different facilities in California, and worked under 382 different managers.[1] Plaintiff's only hope for certifying such a diverse proposed class is to present not only an unlawful class-wide policy but also evidence of its uniform application. Plaintiff's Motion for Class Certification falls far short of meeting this burden.

For his rest period claim, Plaintiff relies on a policy that is not only lawful, but one that did not even apply to him. Plaintiff's theory of liability is that class members were prohibited from leaving the premises during rest periods. However, ABC's policies never prohibited any employees from leaving the premises during rest periods. ABC's policy that was in effect only during a portion of the proposed class period simply said that employees "should" remain on the premises. Such a policy is not unlawful.

Moreover, Plaintiff was a Merchandiser who worked off the premises. His job entailed visiting retail stores offsite. Thus, the language stating that employees "should" remain on the premises did not even apply to him. The same is true as to numerous other employees who did not work on company premises. But even as to employees who did work on the premises, there is no evidence of a uniform practice prohibiting them from leaving the premises during rest periods. ABC has submitted numerous declarations from class members and supervisors evidencing that no such practice existed.

For his meal period claim, Plaintiff relies on no policy at all. Instead, he claims feeling pressured to complete his work in a specified period of time, which supposedly precluded him from taking meal periods. Not only is this based on subjective criteria, but this is based, at most, on his own unique experience with his individual supervisor. This is rife with individualized issues.

For his overtime and the remaining derivative claims, Plaintiff relies on his own

---

[1]   While named as a defendant in this case, Keurig Dr Pepper Inc., never employed Plaintiff nor any non-exempt employee in California. (Lin Decl., ¶ 4.)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

purported practice of checking the route of stores he needed to visit, while off the clock. Plaintiff has presented no policy requiring class members to check their route prior to coming to work or any policy requiring off-the-clock work.  Nor would such a policy make sense since employees who work at one of ABC's facilities do not have routes. Even for Merchandisers and other employees who did not work at a facility, ABC has submitted declarations evidencing that they did not check their route off the clock.

In addition to failing to present sufficient evidence to support any unlawful class-wide policies and practices, Plaintiff is inadequate to represent the putative class. Plaintiff admitted to falsifying his timecards by clocking out on his company-issued phone when he returned home from work, rather than when he finished working for the day, and was terminated for doing so.  The credibility issues do not concern an ancillary issue.  Rather, Plaintiff falsified time records, which are material in a wage and hour case.

Plaintiff's falsified timecards also present defenses unique to Plaintiff that will detract from the interest of the putative class members at trial.  As ABC would be entitled to an offset for any overpayment of wages it paid to Plaintiff, ABC would need to present testimony about, among other things, the accuracy of the GPS records generated from Plaintiff's company-issued phone and the traffic patterns on the days Plaintiff clocked out inappropriately to estimate how much ABC overpaid Plaintiff.

As Plaintiff has failed to present any evidence of class-wide unlawful conduct by ABC, Plaintiff's Motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff Only Worked As A Merchandiser For ABC

ABC employed Plaintiff as a Merchandiser from December 4, 2017 to September 17, 2018, when he was terminated for timecard falsification.  (Lin Decl., ¶ 12.)  As a Merchandiser, Plaintiff did not work at any of ABC's facilities in California. (Ex. A at 50:24-51:5.)  Rather, Plaintiff's job involved visiting retail establishments to set up promotional displays and ensure that products were properly stocked on customers' shelves.  (Ex. A at 49:24-50:3; FAC, ¶ 7.)

2

**B.    The Potential Class Members Either Work In The Field Or At 22 Different Facilities Throughout California Under 79 Different Job Titles**

Plaintiff seeks to certify a class of all "current and former non-exempt employees who worked for Defendants in California between April 15, 2014 to the present." (Mot., at 1:6-8.) Unavoidably, the proposed class has countless individualized issues where countless mini-trials will be necessary to determine liability.

Under the proposed class definition, there are approximately 4,557 potential class members who were employed by ABC and its affiliate. (Lin Decl., ¶ 3.) The potential class members worked either in the field (delivering product to customer locations, taking product orders at customer locations, or stocking product at customer locations) or at one of ABC's **22 facilities** throughout California. (Lin Decl., ¶ 7.) The specific practices in each department and at each facility vary widely based on the department's or facility's operations, which could include: receiving departments (where raw materials for manufacturing are received), manufacturing facilities (where beverage products are made), warehouse and distribution facilities (where beverage products are stored), dispatch departments (where the transportation of beverage products is coordinated), and the corporate facility (where Human Resources and other corporate functions occur). (Lin Decl., ¶ 8.)

In addition to variations based on work location, the potential class members have worked in 79 different job positions, served in different roles and performed different functions in five different departments, worked under 382 different managers and supervisors, and had different work schedules. (Lin Decl., ¶¶ 6, 8.)

**C.    A Significant Majority Of Putative Class Members Are Union Members**

During the proposed class period, a significant majority of class members have belonged to one of 12 different unions, each with a different CBA. (Lin Decl., ¶ 9.) Among the approximately 4,557 putative class members, 3,303 are union members (including Plaintiff himself). (Lin Decl., ¶ 11; Ex. A at 45:5-7.) During the proposed class period, there were six different CBAs, each with its own overtime, meal period, and

3

rest period requirements.  (*See, e.g.*, Lin Decl., ¶ 9, Ex. C, at pp. 6-9.)

## III.   A PRIOR CLASS ACTION SETTLEMENT SIGNIFICANTLY LIMITS THE CLASS PERIOD PLEAD BY PLAINTIFF

As a result of a settlement in a prior wage and hour class action entitled *Villaneda v. The American Bottling Company, et al.*, ABC received a release of claims for failure to provide meal and rest periods, failure to pay minimum and overtime wages, inaccurate wage statements, and waiting time penalties for "all current and former nonexempt employees of Defendants who worked for Defendants in California, at any time from May 5, 2010 through the date of preliminary approval," which was April 15, 2016. (Busch Decl., ¶¶ 3-5, Ex. F at p. 4.)  All of the claims asserted in Plaintiff's operative FAC, therefore, have been released through April 15, 2016.  (Ex. G.)

## IV.   PLAINTIFF'S BURDEN TO OBTAIN CLASS CERTIFICATION

To certify a class, Plaintiff must satisfy all elements of Rule 23(a) and at least one element of Rule 23(b).  The court "must engage in 'a rigorous analysis' as to whether the prerequisites of Rule 23(a) have been satisfied," and it is "often inevitable . . . that such an analysis 'will entail some overlap with the merits of the plaintiff's underlying claim'" including "the type of evidence necessary to support a class-wide finding on those claims." *Dilts v. Penske Logistics, LLC*, 315 F.R.D. 591, 592-93 (S.D. Cal. 2016).

## V.   PLAINTIFF'S PROPOSED CLASSES ARE NOT ASCERTAINABLE

Plaintiff's proposed classes constitute impermissible "failsafe" classes.  A failsafe class is one that requires the court "to reach a legal conclusion on the validity of a person's claim in order to determine whether the person is in the class," meaning the class is unascertainable prior to a liability determination.  *Panacci v. A1 Solar Power, Inc.*, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015).  "[C]lass treatment is not appropriate if the court must determine the merits of an individual claim to determine who is a member of the class."  *Roth v. CHA Hollywood Med. Ctr., L.P.*, 2013 WL 5775129, at *4-5 (C.D. Cal. Oct. 25, 2019).

Here, each of Plaintiff's proposed subclasses constitutes an impermissible failsafe

class because each is defined by the merits of Plaintiff's claims (e.g., all persons who: "were not paid for all hours worked"; "worked more than 5-hours and were not provided with uninterruptable meal periods"). (Mot., at 11:22-12:7.)  As a result, the proposed subclasses are not ascertainable prior to a liability determination.  Plaintiff's Motion should be denied on this basis alone.  *See Roth*, 2013 WL 5775129, at \*4-5 (denying class certification because proposed failsafe classes were not ascertainable).

## VI.   PLAINTIFF'S CLAIM FOR REST PERIOD VIOLATIONS IS NOT APPROPRIATE FOR CLASS CERTIFICATION

In his Motion, Plaintiff argues that ABC's "policies and practices inhibited Plaintiff and class members from taking off-duty rest breaks" because ABC required its "employees to remain on-site and on-call during their rest periods."  (Mot., at 1:11-13.)

### A.   Plaintiff Does Not Plead His Theory Of Liability In His Operative FAC

It is well established that "[c]lass certification is not a time for asserting new legal theories that were not pleaded in the complaint."[2]  This is because the "operative complaint must provide adequate notice of the claims that underly [sic] the motion to certify [the proposed class]."  *Junod*, 2016 WL 6306030, at \*5.

Plaintiff's FAC alleges that Plaintiff and class members were not authorized or permitted to take rest periods because ABC "provided [them] with policies that did not permit first and second rest breaks for shifts between six and eight hours or third rest breaks for shifts over ten hours."  (FAC, ¶ 62, 18.)  Plaintiff does not assert this theory in his Motion.  Instead, Plaintiff's Motion is based on a purported policy requiring employees "to remain on-site and on-duty during their rest breaks."  (Mot., at 7:18-19.)  As Plaintiff's theory of liability is not plead in the FAC, and is now being asserted for the first time, class certification should be denied.  *See Alvarez*, 2019 WL 2710750, at \*5-6

---

[2]      *Alvarez v. Office Depot, Inc.*, 2019 WL 2710750, at \*5 (C.D. Cal. June 27, 2019) (quoting *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011)); *see also Manigo v. Time Warner Cable, Inc.*, 2017 WL 5149225, at \*3 (C.D. Cal. Apr. 4, 2017) ("The Court declines to certify theories of liability that Plaintiffs failed to set forth in their Complaint."); *Junod v. NWP Servs. Co.*, 2016 WL 6306030, at \*5 (C.D. Cal. July 18, 2016) ("Because the proposed class seeks . . . recovery on the basis of a theory not found in the operative complaint, class certification would be improper.").

5

(denying certification of rest period claim based on theory that defendant required employees to remain on premises during rest periods because "there are no factual allegations about this policy in the FAC").

**B.  ABC Has Lawful Rest Period Policies That Relieve Employees Of All Work Related Duties And Do Not Prohibit Them Leaving The Premises**

An employer is required to "authorize and permit" rest breaks "based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."  Cal. Code Regs., tit. 8, § 11070(12)(A).  ABC's written policies and the applicable CBAs authorize and permit compliant rest periods.

**1.  ABC's 2016 Rest Period Policy Does Not Prohibit Employees From Leaving The Premises During Rest Periods**

ABC's 2016 rest period policy, which was in effect from April 11, 2016 to December 31, 2018, provides that:

> The Company authorizes and permits each employee a number of paid ten (10) minute rest breaks based on the quantity of time he or she works in a given day.  Specifically, employees are authorized and permitted to take the following number of rest periods based on the total number of hours worked:

| If you work this number hours in a day . . . | You are permitted to take this number of 10-minute rest breaks . . . |
|---|---|
| Less than 3.5 Hours | 0 |
| 3.5 hours up to 6 hours | 1 |
| 6 hours up to 10 hours | 2 |
| 10 hours up to 14 hours | 3 |
| 14 hours up to 18 hours | 4 |

> For purposes of rest breaks "duty free" means that the employee is relieved of all duty for a full, uninterrupted (net) 10-minute rest period.  However, because rest periods are paid time, employees should remain on the premises.

(Ex. D)

**2.  ABC's 2019 Rest Period Policy Is Silent On Remaining On The Premises For Rest Periods**

Plaintiff's Motion deliberately ignores the actual rest period policy applicable to California employees.  In 2018, ABC implemented a national policy governing timekeeping, overtime, meal periods, and rest periods, which went into effect on January 1, 2019. (Lin Decl., ¶ 14.)  The national policy informs employees that "[w]age and hour

6

laws may vary from state-to-state or even on a local basis." (Ex. E at p. 1)  Given the unique rest break obligations under California law, ABC set forth two rest period

**PAID REST BREAKS**

KDP provides non-exempt employees at least two 15 minute paid rest breaks during a regular full-time shift, and complies with any laws that require additional paid rest breaks.  Employees are expected to follow any rest break schedule set by their supervisor.  Employees are not permitted to leave Company premises while on paid rest breaks.  In extraordinary circumstances, and in a limited capacity, employees may request additional unpaid breaks for personal reasons – management has discretion to approve or deny such requests.

*California Only*
KDP authorizes and permits non-exempt employees who work and reside in the state of California a number of paid ten (10) minute rest breaks based on the quantity of time the employee works in a given work day. Specifically, employees are authorized and permitted to take the following number of rest periods based on the total number of hours worked:

| If you work this number of hours in a day, | You are permitted to take this number of ten (10) minute, paid rest breaks: |
| --- | --- |
| Less than 3.5 hours | 0 |
| 3.5 hours up to 6 hours | 1 |
| 6 hours up to 10 hours | 2 |
| 10 hours up to 14 hours | 3 |
| 14 hours up to 18 hours | 4 |

policies:  one that applies to California employee and one that applies to everyone else: (Lin Decl. ¶ 14; Ex. E at p. 4.)  The California portion of the rest period policy is outlined in red.  The non-California rest period language does not apply to California employees. (Lin Decl. ¶ 15.)  This only makes sense since both policies cannot apply to the same employee as the provisions in the policies are fundamentally different (*e.g.*, the number and duration of rest periods differ for non-California employees and California employees).  This separateness also applies to the different restrictions place on rest periods.  The policy for non-California employees prohibit employees from leaving company premises while on rest periods, but the California rest period policy makes no mention of any such restriction.

### C.   Plaintiff Does Not Establish Any Common Unlawful Policy

#### 1.   Plaintiff's On Premises Theory Of Liability Is Based On An Erroneous Legal Assumption

To the extent Plaintiff's theory of liability for his rest period claim is based only on a purported policy that required employees "to remain on-site during their rest periods," (Mot., at 2:1-4, 15:7-9,) this theory of liability fails on the merits and is not certifiable.

In *Augustus*, the "California Supreme Court never stated that an employer cannot

7

require an employee to remain on the premises during a rest period." *Ritenour v. Carrington Mortg. Servs., LLC*, 2018 WL 5858658, at \*7 (C.D. Cal. Sept. 12, 2018) (holding that "CMS' . . . rest period policy requiring employees to remain on site during the rest period is not facially invalid"). Instead, "the court held that employers are required by state law to provide off-duty rest periods"—that is, "time during which an employee is relieved from all work-related duties and free from employer control." *Id.* (citing *Augustus*, 2 Cal. 5th at 264). And as recognized by the California Supreme Court, given the short duration of a rest break, the expectation "that employees will ordinarily have to remain onsite or nearby," a constraint "which is of course common to all rest periods, **is not sufficient to establish employer control**." *Id*. at 270 (emphasis added).

Other district courts have similarly held that *Augustus* never stated that an employer cannot require its employees to remain on the premises during rest periods.[3]

### 2.   Plaintiff Does Not Identify Any Policy Requiring Employees To Remain On-Call During Rest Periods

In his Motion, Plaintiff does not identify any evidence of a *de facto* policy that ABC requires employees to remain on-call during rest breaks. Rather, Plaintiff argues, in conclusory fashion, that ABC's "rest break policies . . . required employees to remain . . . on-duty during their rest breaks" because ABC required them "to monitor cell phones and radios during their break." (Mot., at 15:18-16:7.) Plaintiff, however, does not cite to any evidence, aside from ABC's 2016 and 2019 rest period policies, in support of his position. (*Id*.) These policies though specifically provide for "duty free" rest periods.

---

[3]   *See Hubbs v. Big Lot Stores, Inc.*, 2018 WL 5264141, at \*4-5 (C.D. Cal. Mar. 16, 2018) (granting motion to dismiss PAGA claim for rest period violations based on theory that employer required employees to remain in retail stores during rest periods; "[I]n stating that an employer may not require employees to remain 'on call' during a ten-minute rest period, *Augustus* . . . recognized that an employer may require an employee to remain 'on premises' during such rest periods."); *Bell v. Home Depot U.S.A., Inc.*, 2017 WL 1353779, at \*2 (E.D. Cal. Apr. 11, 2017) ("In June of last year, the Court granted summary judgment to Defendant, concluding that a policy requiring employees to remain on the premises during their rest breaks does not violate the applicable California wage order and statute."; "The Court declines to alter its ruling in light of *Augustus*.").

8

### 3.   It Is Not Unlawful For An Employee To Be Unable To Leave The Premises If Doing So Would Be Impractical

In *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016), the California Supreme Court recognized that "[b]ecause rest periods are 10 minutes in length, they impose practical limitations on an employee's movement." 2 Cal. 5th at 270.  There is nothing unlawful with limitations on an employee's movement.  As the California Supreme Court recognized, "during a rest period an employee generally can travel at most five minutes from a work post before returning to make it back on time." *Id.*  Given this reality, "one would expect that employees will ordinarily have to remain onsite or nearby." *Id.*  Employees who work on company premises felt that it is impractical to leave the company premises during a rest break because there is not enough time.[4]

In addition to the experience of individual employees, the inability to leave company premises within five minutes was confirmed by a time and motion study expert. *See* Expert Report of Chester Hanvey, Ph.D.  Based on data collection from 16 workstations at the Vernon facility, Dr. Hanvey concluded that "it is likely not possible for employees at the Vernon, CA facility to leave their workstation, exit the premises and return to their workstation during a 10-minute rest break."[5]  (Hanvey Report at p. 3.)

Both anecdotal and scientific analysis confirm that employees working on the Vernon premises would be unable to leave the facility and return within a 10-minute rest break.  The inability of employees to leave the Vernon premises given its size "is not sufficient to establish employer control." *Augustus*, 2 Cal. 5th at 270.

### D.   Plaintiff's Claims Are Not Typical Of The Class

Plaintiff argues that his claims are typical of the class because he was "subject to the same policy and/or practice requiring him to remain on [ABC's] premises during his rest break[s]." (Mot., at 20:14-15.)  Plaintiff's argument is meritless.

---

[4]      *See* Bell ¶ 12; Boklage ¶ 10; Von Sloten ¶ 15.

[5]      In reaching his conclusion, Dr. Hanvey conservatively assumed that employees would take the most direct route from their workstation to the premise exit without engaging in any other activities such as stopping to use the restroom, accessing their locker, checking their phone, or talking to coworkers.  These activities would increase the amount of time an employee would need to leave the premises.  (*Id.* at ¶ 19.)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### 1. The On Premises Language In ABC's Rest Period Policy Did Not Apply To Plaintiff Since He Did Not Work On Company Premises

As stated above, a significant portion of the putative class, including Plaintiff, worked in the field delivering product to customer locations, taking product orders at customer locations, or stocking product at customer locations. As a result, neither Plaintiff nor any other class member who worked in the field can claim they were subject to the on premises policy. Indeed, Plaintiff and other class members testified that, while working in the field, they are free to take their rest periods wherever they choose.[6]

### 2. The On Premises Language In ABC's Rest Period Policy Does Not Apply To Plaintiff Because He Was Represented By A Union

Even if the 2016 and 2019 versions of ABC's policies prohibit California employees from leaving the premises, those policies would not apply to Plaintiff or any other union employees. Both the 2016 and 2019 version of ABC's policies expressly provide that the applicable CBA "shall control to the extent inconsistent with these policies." (Ex. D, at p. 1; Ex. E, at p. 1.)

The CBA applicable to Plaintiff provides that "[a]ll employees will be authorized and permitted to take an uninterrupted rest period of ten (10) minutes for every four hours worked or major fraction thereof." (Ex. C at p. 8.) This CBA, as well as the others in effect during the class period, do not mention that represented employees may be required to remain on the premises. Therefore, to the extent the 2016 or 2019 rest period policies could be interpreted to prohibit employees from leaving the premises, such a provision would be inconsistent with the CBAs, and under ABC's own policies, the CBA would supersede the general company policies.

### 3. Plaintiff Admits That ABC Has Legally Compliant Rest Period Policies And That His Rest Periods Were Not Interrupted

During his deposition, Plaintiff admitted that he was entitled to 10-minute rest periods in compliance with California law. (Ex. B at 191:11-20.) Plaintiff also admitted

---

[6]   *See* Pl.'s Dep., 141:2-5; 151:18-152:2; Benitez ¶ 12; Cabrera ¶ 11; Escobar ¶¶ 13-14; Guerra ¶ 19; Rodriguez ¶ 14; M. Sanchez ¶ 16; S. Sanchez ¶ 12; Sauceda ¶ 17; Trumbach ¶ 14; Vaca ¶ 11; Zepeda ¶ 15.

60003604v.8

that ABC informed him that he was free to take his rest periods, even if he was in the middle of a job at a store:[7]

> Q. But at least what the company had informed you is that even if you're in the middle of a job at a store, you are free to take your lunch or your rest break; is that correct?
>
> A. Yes.

(Ex. B at 150:10-17.)  Furthermore, Plaintiff admitted that his supervisor would not ask him to work while he was on his rest breaks:[8]

> Q. Did Herman ever ask you to work while you were on a rest break?
>
> A. Well, not during the short breaks because they rarely noticed when it was that you were out to -- on break.

(Ex. B at 153:17-21.)  Because Plaintiff admits that ABC has a lawful rest period policy and that his rest periods were not interrupted, his claims cannot be typical of any class member who purportedly suffered any rest period violations.

## E.  Individualized Issues Predominate Plaintiff's Rest Period Claim

### 1.  ABC Requires Class Members To Complete Daily Rest Period Attestations, And ABC Automatically Pays A Premium If A Rest Period Was Not Authorized or Permitted

In addition to having lawful written rest period policies, ABC requires its employees to complete daily rest period attestations.  At the end of each day, when an employee clocks out at the end of his or her shift, the timekeeping system asks whether the employee took all uninterrupted rest periods provided by company policy.  (Lin Decl., ¶ 17; Ex. B at 161:15-162:1, Ex. 16.)  The employee must then indicate either (a) the employee took all rest periods or (b) the employee did not take all rest periods.  (Lin Decl., ¶ 17; Ex. B at 163:22-164:9.)  If the latter, the employee must then attest whether

---

[7]    In his declaration, Plaintiff claims that "due to an inherent problem with leaving a half-finished stocking and/or display in a store," he was unable to take duty-free rest periods."  (Guzman Decl., ¶ 20.)  Plaintiff's declaration, however, is directly contradicted by his sworn deposition testimony.  As a result, Plaintiff's declaration must be disregarded.  *See Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465, *6 (C.D. Cal. Sept. 7, 2006) ("To the extent Plaintiff's declaration can be read to contradict his clear deposition testimony . . . the Court disregards the declaration and further finds that the declaration is contradictory and a sham and cannot be credited.").

[8]    In his declaration, Plaintiff claims that his supervisor would "frequently call [him] . . . during [his] breaks to discuss the progress of [his] daily routes.  (Guzman Decl., ¶ 18.)  This declaration testimony is also directly contradicted by prior deposition testimony and, therefore, must be disregarded.  *See Lanzarone*, 2006 WL 4393465, *6.

11

the employee voluntarily chose not to take all rest periods or whether work prevented the employee from taking all rest periods.  (Lin Decl., ¶ 17; Ex. B at 164:10-14.)  If work prevented the employee from taking a rest period, ABC automatically pays an hour of premium pay.  (Lin Decl., ¶ 17; Ex. B at 164:15-20.)

During his deposition, Plaintiff admitted that, at the end of each day, he would respond to the rest period prompts.  (Ex. B at 164:21-23.)  In addition, multiple class members have testified about the rest period attestation process and the provision of rest period premiums when work demands prevent them from taking compliant rest periods.[9]

To the extent Plaintiff or any class member now claims that their attestations were inaccurate or they were discouraged from responding truthfully, identifying these alleged instances would require an individual analysis that cannot be subject to common proof.

### 2.   The Overwhelming Evidence Shows Widespread Compliance With ABC's Lawful Rest Period Policies

Plaintiff has not provided any common evidence of the denial of rest periods in violation of ABC's lawful policies.  In fact, the overwhelming evidence is to the contrary.

ABC has submitted 38 declarations from class members who held 17 different positions from 4 different facilities demonstrating that they are authorized and permitted to take compliant, uninterrupted 10-minute rest periods, and that they routinely take their 10-minute rest periods.[10]  Plaintiff, on the other hand, has submitted five declarations from class members who held four different positions at just one location that state they

---

[9]   *See* Angulo ¶ 14; Arechiga ¶ 18; Bell ¶ 14; Benitez ¶ 14; Boklage ¶ 13; Cabrera ¶ 14; Casas ¶ 17; Fregozo ¶ 14; Gamez ¶ 16; Garrison ¶ 13; Guerra ¶ 21; E. Guzman ¶ 17; Hare ¶ 18; Hinojos ¶ 15; Hoffman ¶ 17; Llapapasca ¶ 14; Lozoya ¶ 21; Metcalf ¶ 14; Morua ¶ 14; Naredo ¶ 21; Quinonez ¶ 15; Reyes ¶ 14; Rincon ¶ 19; Rodriguez ¶ 16; M. Sanchez ¶ 18; S. Sanchez ¶ 14; Sauceda ¶ 19; Shaw ¶ 19; Sloten ¶ 17; Soberanis ¶ 14; Trumbach ¶ 16; Vaca ¶ 14; Siu ¶ 22; Williams ¶ 21; Zepeda ¶ 17.

[10]   *See* Angulo ¶¶ 10, 12; Arechiga ¶¶ 16-17; Bell ¶¶ 11, 13; Benitez ¶¶ 11, 13; Boklage ¶¶ 9, 11; Cabrera ¶¶ 10, 12; Casas ¶¶ 14-16; Escobar ¶¶ 13-15; Fregozo ¶¶ 10, 12; Gamez ¶¶ 11-12, 14; Garcia ¶¶ 12-13; Garrison ¶¶ 5, 11-12; Guerra ¶¶ 17-18, 20; E. Guzman ¶¶ 14-16; Hare ¶¶ 4, 10-12, 16; Hinojos ¶¶ 11, 13; Hoffman ¶¶ 13-14, 16; Llapapasca ¶¶ 10, 13; Lozoya ¶¶ 6, 17-18, 20; Metcalf ¶¶ 10-12; Morua ¶¶ 11, 13; Naredo ¶¶ 19-20; Quinonez ¶¶ 12, 14; Reyes ¶¶ 10, 12; Rincon ¶¶ 15-16, 18; Rodriguez ¶¶ 13, 15; M. Sanchez ¶¶ 16-17; S. Sanchez ¶¶ 11, 13; Sauceda ¶¶ 15, 17-18; Shaw ¶¶ 15, 18; Siu ¶¶ 18-21; Sloten ¶¶ 13, 16; Soberanis ¶¶ 10, 12; Solis ¶¶ 11-13; Trumbach ¶¶ 13-15; Vaca ¶¶ 11-13; Valdez ¶¶ 14-15; Williams ¶¶ 17-20; Zepeda ¶¶ 14-16.

12

were not authorized and permitted to take rest breaks, that their rest periods were regularly interrupted by their managers or work demands, or that they were unable to leave the premises.  This conflicting evidence cannot sustain class certification.[11]

### 3. There Is No Common Evidence That Class Members Were Required To Remain On ABC's Premises During Rest Periods

Even if ABC's policies could be construed as requiring employees to remain on the premises, Plaintiff must establish that Defendant uniformly implemented this policy.  *See Davidson v. O'Reilly Auto Enters.*, 2017 WL 8292782, at *4-5 (C.D. Cal. Dec. 15, 2017) (Klausner, J.) ("federal courts have found liability only if the defendant implemented unlawful practices pursuant to the facially defective policy"; "the Court finds that [plaintiff] failed to meet her burden of showing that [defendant] not only maintained a facially defective policy, but also implemented unlawful practices pursuant to the policy. Thus, common issues do not predominate [and] certification is improper."); *Campbell v. Vitran Express*, 2016 WL 873009, at *3 (C.D. Cal. Nov. 12, 2015) (Klausner, J.) ("a court cannot simply view an allegedly deficient policy in isolation when other evidence in the record presents a genuine dispute as to how employees actually spent their time").

However, the overwhelming evidence indicates that ABC's purported on premises requirement was not uniform.  Indeed, even if the term "premises" could be construed to extend beyond company premises to include ABC's customer store locations, even Plaintiff admitted that it was his choice where he wanted to take his rest periods and that he would sometimes leave his scheduled stores to take his rest periods:

---

[11]     *See, e.g.*, *Garcia v. Sun Pac. Farming Co-op, Inc.*, 359 F. App'x 724, 726 (9th Cir. 2009) (class certification denied; "the record evidence—in particular, the conflicting employee declarations submitted by each party—does not establish common wage and hour practices, . . . but rather the '[in]consistent application of the wage and hour laws between and among the various [work] Crews.' . . .  It was well within the district court's discretion to deny class certification on this basis."); *Hadjavi v. CVS Pharmacy, Inc.*, 2011 WL 3240763, at *4-5 (C.D. Cal. July 25, 2011) ("Plaintiffs have failed to demonstrate that Defendants had a uniform or common policy in place that 'prevented' employees from taking meal and rest breaks . . . throughout all California locations. Defendants proffered declarations from pharmacists employed at various locations that contradict Plaintiffs' claim that a system wide policy or practice was in place that prevented pharmacists from taking rest or meal breaks.").

13

Q. And for your rest breaks . . . you were free to leave the store and then come back, correct?

A. Yes.

. . .

Q. Where would you typically take your rest breaks?

A. Sometimes in the back of the store or in the warehouse.

Q. Would you take your rest breaks in your car as well?

A. Yeah, sometimes.

Q. It was your choice where you wanted to take your break; is that correct?

A. Yes.

(Ex. B at 141:2-5; 151:18-152:2.)

In addition to Plaintiff's testimony, ABC has submitted 38 declarations from class members who held 17 different positions from 4 different facilities demonstrating that employees did leave the premises when they wanted to and without reprimand from ABC, or that they were not subject to the purported policy because they worked off-site and were free to take their break wherever they wanted.[12]  This overwhelming evidence, including Plaintiff's own testimony, demonstrates that ABC has no policy that requires class members to remain on any premises (company or otherwise) during rest periods.  In these circumstances, where there is no evidence that an on premises policy was uniformly applied and ample evidence that employees did leave the premises when they wanted to and without reprimand from ABC, class certification is improper.[13]

---

[12]    *See* Angulo ¶ 11; Arechiga ¶ 16; Bell ¶ 12; Benitez ¶ 12; Boklage ¶ 10; Cabrera ¶ 11; Escobar ¶¶ 13-14; Fregozo ¶ 11; Gamez ¶ 13; Garcia ¶ 12; Garrison ¶ 12; Guerra ¶ 19; E. Guzman ¶ 15; Hare ¶ 14; Hinojos ¶ 12; Hoffman ¶ 15; Lozoya ¶ 19; Metcalf ¶ 11; Morua ¶ 12; Naredo ¶ 19; Quinonez ¶ 13; Reyes ¶ 11; Rincon ¶ 17; Rodriguez ¶ 14; M. Sanchez ¶ 16; S. Sanchez ¶ 12; Sauceda ¶ 17; Shaw ¶ 17; Siu ¶ 20; Sloten ¶ 15; Soberanis ¶ 11; Solis ¶ 12; Trumbach ¶ 14; Vaca ¶ 11; Valdez ¶ 14; Zepeda ¶ 15.

[13]    *See Ritenour*, 2018 WL 5858658, at *7-8 (denying class certification of rest period claim based on theory employees were required to remain on the employer's premises during rest periods; "Setting aside the rest period policy as written, the record indicates that the policy was not uniformly implemented. . . . [T]he record indicates that CMS employees did leave the premises when they wanted to and without reprimand from CMS."; "Even if there were rest period violations as a result of this policy, identifying those violations would again require an individual analysis.").

14

### 4. There Is No Common Evidence That Class Members Were Required To Monitor Cellphones Or Radios, Or Otherwise Remain On-Call During Rest Periods

Plaintiff argues that putative class members were not relieved of all work duties during rest periods because ABC had a uniform policy of "requiring employees to monitor cell phones, radios, and pagers while on their breaks." (Mot., at 8:4-8.) All that Plaintiff offers to support the alleged companywide policy is the anecdotal experience of just four putative class members. (*Id.*)

Plaintiff has not identified any common policy or practice applicable to all employees. Indeed, multiple declarants have testified that they are not expected to monitor their cellphones, radios, or pagers, or otherwise remain on-call during their rest periods.[14] In addition, multiple managers and supervisors have testified that their employees are not on-call during their breaks and that there is no expectation they should be able to reach employees while they are on break.[15]

## VII. PLAINTIFF'S CLAIM FOR MEAL PERIOD VIOLATIONS IS NOT APPROPRIATE FOR CLASS CERTIFICATION

Plaintiff argues that the putative class was subject "to intense pressure to finish all of their assignments." (Mot., at 8:11-13.) As a result, Plaintiff argues that the putative class "was unable to take compliant meal break[s] and should have been paid meal break premiums for their on-duty and missed meal breaks." (*Id.*, at 17:3-6.)

### A. ABC Has Lawful Meal Period Policies That Relieve Employees Of All Work Related Duties

"[A]n employer's duty with respect to meal breaks . . . is an obligation to **provide** a meal break to its employees." *Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1041 (2012) (emphasis added). There is no obligation "to **police** meal breaks and ensure no work thereafter is performed." *Id.*, at 1040 (emphasis added). To have a viable claim, Plaintiff must show that employees were "forced to forego" their meal periods; merely

---

[14] *See* Angulo ¶ 12; Arechiga ¶ 17; Bell ¶ 13; Benitez ¶ 13; Boklage ¶ 11; Casas ¶ 16; Fregozo ¶ 12; Gamez ¶ 14; E. Guzman ¶ 16; Hare ¶ 16; Hinojos ¶ 13; Hoffman ¶ 16; Llapapasca ¶ 13; Morua ¶ 13; Quinonez ¶ 14; Reyes ¶ 12; Rincon ¶ 18; Rodriguez ¶ 15; Shaw ¶ 18; Siu ¶ 21; Sloten ¶ 16; Soberanis ¶ 12; Solis ¶ 13; Valdez ¶ 15.
[15] *See* Eusebio ¶ 14; Fernandez ¶ 14; Hernandez ¶ 16; Leiva ¶ 11.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

"missing" meal periods is not enough.  *See Murphy v. Kenneth Cole Prods, Inc.*, 40 Cal. 4th 1094, 1104 (2007) (meal break violations require showing employer "force[d] employees to forego his or her meal period").  Absent a class-wide policy or practice that actually prohibits meal periods, individualized inquiries would be necessary to determine the reason why any particular putative class member did not take a compliant meal period on any particular day.[16]

In this case, Plaintiff cannot identify any unlawful written policies to support his allegations of class-wide meal period violations because, as Plaintiff even admits, ABC has always maintained lawful written meal period policies.  (Exs. D and E at pp. 3-4.)

### B.  Plaintiff Admits That ABC Has Lawful Meal Period Policies

During his deposition, Plaintiff admitted that he was entitled to 30-minute meal periods in compliance with California law.  (Ex. A at 69:11-70:1.)  Plaintiff also admitted that ABC informed him that he was free to take his meal periods and spend the time however he wanted, even if he was in the middle of a job at a store:

> Q. But at least what the company had informed you is that even if you're in the middle of a job at a store, you are free to take your lunch or your rest break; is that correct?
>
> A. Yes.
>
> Q. And that you were free to use that time however you wanted; is that correct?
>
> A. Yes.

(Ex. B at 150:10-17.)

### C.  Individualized Issues Predominate Plaintiff's Meal Period Claim

#### 1.  ABC Requires Class Members To Complete Daily Meal Period Attestations, And ABC Automatically Pays A Meal Period Premium If A Meal Period Was Not Provided

As with rest periods, ABC required class members to complete daily meal period attestations.  At the end of each day, when an employee clocks out at the end of his or her shift, the timekeeping system asks whether the employee took all uninterrupted meal

---

[16]  *See Dailey v. Sears, Roebuck and Co.*, 214 Cal. App. 4th 974, 1001 (2013) (affirming denial of class certification for meal period claim when there was "no evidence of a policy or widespread practice of Sears to deprive nonexempt employees of uninterrupted meal periods and rest breaks").

16

periods provided by company policy.  (Lin Decl., ¶ 17; Ex. B at 161:15-162:1, Ex. 16.)
The employee must then indicate either (a) the employee took all meal periods or (b) the
employee did not take all meal periods.  (Lin Decl., ¶ 17; Ex. B at 162:11-163:8.)  If the
latter, the employee must then attest whether the employee voluntarily chose not to take
all meal periods or whether work prevented the employees from taking all meal periods.
(Lin Decl., ¶ 17; Ex. B at 162:24-163:8.)  If work prevented the employee from taking a
meal period, ABC automatically pays an hour of premium pay.  (Lin Decl., ¶ 17; Ex. B at
163:17-21.)

During his deposition, Plaintiff admitted that he would respond to the meal period
prompts, but that he could not recall whether he ever indicated that he was not able to
take a meal period due to work related tasks.  (Ex. B at 162:18-23.)  Multiple class
members have also testified about the meal period attestations and the provision of
premiums when work demands prevented them from taking compliant rest periods.[17]

To the extent Plaintiff or any class member now claims that their attestations were
inaccurate or they were discouraged from responding truthfully, identifying these alleged
instances would require an individual analysis and cannot be subject to common proof.

## 2. The Overwhelming Evidence Shows Widespread Compliance With ABC's Lawful Meal Period Policies

Plaintiff has not provided any common evidence of the denial of meal periods in
violation of ABC's lawful policies.  In fact, the overwhelming evidence is to the contrary.

ABC has submitted 38 declarations from class members who held 17 different
positions from 4 different facilities demonstrating that they are provided compliant,
uninterrupted 30-minute meal periods, that they routinely take their 30-minute meal
periods, that they do not perform work during their meal periods, and that no one has ever

---

[17]  *See* Angulo ¶ 14; Arechiga ¶ 18; Bell ¶ 14; Benitez ¶ 14; Boklage ¶ 13; Cabrera ¶
14; Casas ¶ 17; Fregozo ¶ 14; Gamez ¶ 16; Garrison ¶ 13; Guerra ¶ 21; E. Guzman ¶ 17;
Hare ¶ 18; Hinojos ¶ 15; Hoffman ¶ 17; Llapapasca ¶ 14; Lozoya ¶ 21; Metcalf ¶ 14;
Morua ¶ 14; Naredo ¶ 21; Quinonez ¶ 15; Reyes ¶ 14; Rincon ¶ 19; Rodriguez ¶ 16; M.
Sanchez ¶ 18; S. Sanchez ¶ 14; Sauceda ¶ 19; Shaw ¶ 19; Siu ¶ 22; Sloten ¶ 17; Soberanis
¶ 14; Trumbach ¶ 16; Vaca ¶ 13; Williams ¶ 21; Zepeda ¶ 14.

interrupted their meal periods.[18]  The three conflicting declarations Plaintiff submitted from putative class members declaring that their meal periods were regularly interrupted by their managers or work demands cannot sustain class certification.[19]  *See, e.g., Garcia v.*, 359 F. App'x at 726.

### 3.   Plaintiff's "Time Pressure" Theory Cannot Support Certification

In search of a uniform policy, Plaintiff argues that all of ABC's employees are denied breaks "due to the intense pressure to finish all of their assignments." (Mot., at 8:11-13.)  Courts, however, uniformly find that "time pressure" theories do not establish a policy to violate wage and hour laws.[20]  Individual questions generally predominate "time pressure" theories since the impact of quotas and goals vary by individual.[21]

Here, Plaintiff's "time pressure" theory relies on the anecdotal experiences, individual motivations, and subjective perceptions of three class members, not any company-wide policy or practice.  In addition, ABC employees have uniformly stated that they regularly take their meal periods, that they do not perform work during their meal periods, and have not had any of the meal breaks interrupted by any ABC

---

[18]   *See* Angulo ¶¶ 4, 9, 12; Arechiga ¶¶ 5, 12-14, 17; Bell ¶¶ 4, 9-10, 13; Benitez ¶¶ 4, 10, 13; Boklage ¶¶ 4, 8, 11; Cabrera ¶¶ 4, 9, 12; Casas ¶¶ 4, 12-13, 16; Escobar ¶¶ 4, 9, 12, 15; Fregozo ¶¶ 4, 9 ,12; Gamez ¶¶ 4, 10, 12, 14; Garcia ¶¶ 5, 11, 13; Garrison ¶¶ 5, 10-11; Guerra ¶¶ 6, 16, 20; E. Guzman ¶¶ 4, 11-13, 16; Hare ¶¶ 4, 10-11, 13; Hinojos ¶¶ 4, 10, 13; Hoffman ¶¶ 4, 12, 16; Llapapasca ¶¶ 10, 13; Lozoya ¶¶ 6, 16, 20; Metcalf ¶¶ 4, 9, 12; Morua ¶¶ 4, 8-10, 12-13; Naredo ¶¶ 15-17, 20; Quinonez ¶¶ 9-11, 14; Reyes ¶¶ 4, 9, 12; Rincon ¶¶ 4, 14, 18; Rodriguez ¶¶ 12, 15; M. Sanchez ¶¶ 5, 14-15, 17; S. Sanchez ¶¶ 10, 13; Sauceda ¶¶ 5, 14, 18; Shaw ¶¶ 14, 18; Siu ¶¶ 14, 16-17, 21; Sloten ¶¶ 5, 12, 16; Soberanis ¶¶ 9, 12; Solis ¶¶ 4, 10, 13-14; Trumbach ¶¶ 4, 11-12, 15; Vaca ¶¶ 4, 10, 12-13; Valdez ¶¶ 5, 13, 15; Williams ¶¶ 14-15, 20; Zepeda ¶¶ 5, 12-13, 16.

[19]   *See* Allen ¶ 6; Betanzo ¶ 6; Robinson ¶ 6.

[20]   *See Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 944-45 (N.D. Cal. 2016) (employer "may have expected its employees to complete their daily [tasks], but that does not support an inference that [employer] expected its employees to do so in contravention of other company policies"); *Carrasco v. C.H. Robinson Worldwide*, 2013 WL 6198944, at *9 (E.D. Cal. Nov. 27, 2013) (foregoing breaks "to timely complete the tasks assigned" does not establish employer impeded or discouraged breaks).

[21]   *See, e.g., Hadjavi*, 2011 WL 3240763, at *1, *8 (collecting cases supporting denial of certification of claim that "business demands . . . prevented' [employees] from taking meal and rest breaks and that [employees] were 'forced' to miss meal and rest breaks").

employees.  This testimony, at minimum, demonstrates that Plaintiff's "time pressure" theory is not a classwide issue, subject to classwide proof.

## VIII.  PLAINTIFF'S CLAIMS FOR FAILURE TO PAY MINIMUM AND OVERTIME WAGES BASED ON WORK PERFORMED "OFF-THE-CLOCK" ARE NOT APPROPRIATE FOR CLASS CERTIFICATION

Plaintiff argues that ABC "had a company-wide policy of not paying Plaintiff and class members for the time they spent driving between home and first and last retail location." (Mot., at 2:23-25.)  Plaintiff claims that this time is compensable because ABC required employees to "complet[e] . . . administrative tasks at their homes" before leaving for their scheduled work assignments." (Mot., at 3:5-17.)

### A.  Defendants Have Always Maintained Lawful Written Timekeeping Policies That Prohibit "Off-The-Clock" Work

In *Brinker*, 53 Cal. 4th 1004 at 1051-52, the California Supreme Court recognized that class certification is improper where an employer has a lawful policy requiring employees to accurately record all time worked.  Under these circumstances, the Court stressed that off-the-clock claims "invariably require individualized proof":

> On a record such as this, where no substantial evidence points to a uniform, companywide policy, proof of off-the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off-the-clock, how long they worked, and whether [defendant] knew or should have known of their work.[22]

Here, ABC has lawful written policies that explicitly state that employees must record all time worked and cannot work off-the-clock.  ABC's 2016 timekeeping and off-the-clock policies provide that employees are required to: (1) "accurately report all working time, without exception"; (2) record correctly the time [they] begin and end work, as well as the beginning and ending time of each meal period"; and (3) "not, under any circumstances, perform any work 'off-the-clock' (*i.e.*, performing work without

---

[22]  *Id.  Accord Ordonez v. Radio Shack, Inc.*, 2013 WL 210223 at *8-9 (C.D. Cal. Jan. 17, 2013) (class cert. denied where defendant maintained a lawful policy prohibiting off-the-clock work and plaintiff failed to present sufficient evidence that violations were based on a common policy); *Howard v. CVS Caremark Corp.*, 2014 WL 7877404 at *12 (C.D. Cal. Dec. 9, 2014) ("[W]here no substantial evidence points to a uniform company-wide policy and proof of off-the-clock liability would have to continue in an employee-by-employee fashion, class certification is inappropriate.").

19

reporting that time for payment." (Ex. D at pp. 2-3.)  Similarly, ABC's 2019 timekeeping policy provides that employees are: (1) "paid for all hours worked"; (2) "not permitted to work 'off the clock'"; and (3) required to "clock in before beginning work." (Ex. E at pp. 1-2.)  Furthermore, the CBA applicable to Plaintiff also required him and other union members to "record and attest to their time in accordance with Company policies and procedures." (Ex. C at p. 28.)

> **B.     Plaintiff Admits That ABC's Timekeeping Policies Required Him To Report All Hours Worked And Prohibited Him From Performing Work Off-The-Clock**

Consistent with ABC's timekeeping policies, Plaintiff admits that he was required to accurately report all hours worked on his timecard:

> Q. Your understanding of [ABC]'s policy was that you were obligated to record accurately all hours worked on your timecard; is that correct?
>
> A. Yes.

(Ex. A at 67:7-10.)  Plaintiff also admits that ABC's timekeeping policies prohibited him from working off-the-clock:

> Q. Your understanding was that you were prohibited from working off the clock which means working without recording that time on a timecard; is that correct?
>
> A. Yes.

(Ex. A at 35:19-23.)  Furthermore, Plaintiff admitted that his managers would always approve overtime whenever he needed to work overtime:

> Q. Whenever you needed to work overtime, your managers would approve the overtime; is that correct?
>
> A. Yes.
>
> Q. You just needed to inform them you would need to work overtime; is that correct?
>
> A. Yes.

(Ex. B at 190:20-25.)  Therefore, to the extent Plaintiff performed work off-the-clock or failed to report all of his hours worked, Plaintiff did so in violation of ABC's policies.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

60003604v.8

## C.   Individualized Issues Predominate Plaintiff's Off-The-Clock Claims

### 1.   ABC Requires Class Members To Complete Weekly Timecard Attestations To Confirm The Accuracy Of Their Time Records

In addition to daily meal and rest period attestations, employees also have to attest to the accuracy of their timecards on a weekly basis.  (Lin Decl., ¶ 18; Ex. B at 181:1-5.)  The purpose of the timecard attestation system is to ensure that employees are being paid for all hours worked.  (Lin Decl., ¶ 18; Ex. B at 181:1-8)  On a weekly basis, the timekeeping system displays the employee's punch records for the week, and the employee must indicate whether the timecard is accurate or not.  (Lin Decl., ¶ 18.)  If the timecard is accurate, the employee will approve the timecard.  (Lin Decl., ¶ 18.)  If the timecard is not accurate, the employee must submit a form indicating what corrections need to be made on the timecards.  (Lin Decl., ¶ 18.)

Here, Plaintiff admits that he was required to attest to the accuracy of his time records on a weekly basis.  In addition, Plaintiff admits that he never noticed any errors on his time card, and never indicated that there were any inaccuracies:

> Q. Did you ever notice an error on your time card?
>
> A. No, I didn't notice that.
>
> Q. So as far as the attestation process, to your knowledge, you never indicated on the attestation that there was an inaccuracy with any of your time cards; is that correct?
>
> A. Correct.

(Ex. B at 181:14-21.)  Putative class members confirm that they were required to complete timecard attestations on a weekly basis and report any inaccuracies.[23]  If Plaintiff or any class member claims that their attestations were inaccurate, identifying any inaccuracies would require individual analysis and is not subject to common proof.

---

[23]   *See* Angulo ¶¶ 6-7; Arechiga ¶¶ 10-11; Bell ¶¶ 6-7; Benitez ¶¶ 7-8; Cabrera ¶ 7; Casas ¶¶ 8-9; Escobar ¶¶ 8-9; Gamez ¶¶ 6-8; Garcia ¶¶ 8-9; Garrison ¶¶ 8-9; Guzman ¶¶ 7-8; Hare ¶¶ 7-8; Hinojos ¶¶ 7-8; Hoffman ¶¶ 9-10; Llapapasca ¶¶ 6-7; Lozoya ¶¶ 7, 14; Metcalf ¶¶ 6-7; Morua ¶ 7; Naredo ¶¶ 12-13; Quinonez ¶¶ 7-8; Reyes ¶¶ 6-7; Rincon ¶¶ 11-12; Rodriguez ¶¶ 9-10; M. Sanchez ¶¶ 11-12; S. Sanchez ¶¶ 7-8; Shaw ¶¶ 11-12; Siu ¶¶ 12-13; Sloten ¶¶ 9-10; Soberanis ¶¶ 6-7; Solis ¶¶ 7-8; Trumbach ¶¶ 6-7; Vaca ¶¶ 7-8; Valdez ¶¶ 8-9; Williams ¶¶ 10-11; Zepeda ¶¶ 8-9.

21

### 2.     There Is No Common Evidence Of Off-The-Clock Work

Given that all employees have to record all time worked, any alleged work off the clock would require individualized inquiries.  As the California Supreme Court stated in *Brinker*, 53 Cal. 4th at 1052, "**[the fact] that employees are clocked out creates a presumption they are doing no work, a presumption [plaintiff] and the putative class members have the burden to rebut**." *Id.* (emphasis added).  Here, Plaintiff has not met his burden to rebut this presumption, and has not presented any uniform policy subject to common proof that would support his off-the-clock theory.

Indeed, numerous employees affirm that they never have worked off the clock, and have been paid for all hours worked.[24]  Plaintiff provides no classwide evidence in support of his assertion that Merchandisers had to review schedules or perform administrative tasks at home prior to beginning their workday.  To the contrary, multiple merchandisers have testified that they were not required to conduct any pre-shift tasks prior to beginning their workday.[25]

The conflicting testimony and lack of evidence in support of Plaintiff's theory of liability demonstrates that Plaintiff's claims are not appropriate for class certification.[26]

---

[24]   *See* Angulo ¶¶ 5, 8; Arechiga ¶¶ 8, 11; Bell ¶¶ 5, 8; Benitez ¶¶ 5-6, 9; Boklage ¶¶ 5, 7; Cabrera ¶¶ 5, 8; Casas ¶¶ 7, 11; Escobar ¶¶ 7, 11; Fregozo ¶¶ 5, 8; Gamez ¶¶ 5, 9; Garcia ¶¶ 7, 10; Garrison ¶¶ 7, 9; Guerra ¶¶ 11-12, 15; E. Guzman ¶¶ 5-6, 10; Hare ¶¶ 6, 9; Hinojos ¶¶ 5, 9; Hoffman ¶¶ 7-8, 11; Llapapasca ¶¶ 5, 8; Lozoya ¶¶ 12-13, 15; Metcalf ¶¶ 5, 8; Naredo ¶¶ 11, 14; Rincon ¶¶ 6-7, 9-10, 13; Rodriguez ¶¶ 5, 11; S. Sanchez ¶¶ 6, 9; Sauceda ¶¶ 7-8, 10-11, 13; Shaw ¶¶ 6-7, 9-10, 13; Siu ¶¶ 7, 11, 15; Soberanis ¶¶ 5, 8; Solis ¶¶ 6, 9; Trumbach ¶¶ 6, 10; Vaca ¶¶ 6, 9; Valdez ¶¶ 7, 12; Van Sloten ¶¶ 8, 11; Williams ¶¶ 9, 13; Zepeda ¶¶ 7, 11.

[25]   *See* Casas ¶ 6; Siu ¶ 6; Zepeda ¶ 6.

[26]   *See Rai v. CVS Caremark Corp.*, 2013 WL 10178675, at *9 (C.D. Cal. Oct. 11, 2013) (class certification denied based on conflicting testimony from potential class members; "This competing testimony is insufficient for the Court to find that CVS had a common practice or policy . . ., and the Court cannot find that common issues predominate."); *Ordonez*, 2013 WL 210223, at *11 (class certification denied; "[b]ecause of the competing testimony before the Court, plaintiff's evidence that defendant may have an illegal . . . policy is insufficient for this Court to find that common issues predominate"); *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 210 (E.D. Cal. 2015) (class certification denied; "Despite testimony from several dozen former employees that [employer] required off-the-clock [work], an effectively equal body of testimony from named plaintiffs and putative class members describes on-the-clock [work];" "plaintiffs have not carried their burden to show the predominance of common questions").

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

60003604v.8

**D.    Class Action Is Not A Superior Method For Adjudicating The Overtime Claim Because Labor Code Section 514 Preempts The Overtime Claim**

Labor Code section 514 exempts an employer from California's overtime laws if the CBA "expressly provides for the wages, hours of work and working conditions of the employees and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."  Cal. Lab. Code § 514.  An overtime claim does not exist for employees like Plaintiff who are subject to a qualifying CBA.  *See Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019) ("[the] CBAs in this case meet the requirements of section 514, and therefore [plaintiff's] claim for overtime pay is controlled by his CBAs").  A class action, therefore, is not a permitted (and certainly not a superior) method for adjudicating the overtime claim for union employees, who must file a grievance under the CBA rather than pursue a class action.

**IX.    PLAINTIFF'S DERIVATIVE CLAIMS FOR INACCURATE WAGE STATEMENTS AND WAITING TIME PENALTIES ARE NOT APPROPRIATE FOR CLASS CERTIFICATION**

Because Plaintiff's underlying claims for minimum wage, overtime, and meal and rest break violations do not meet the standards for class certification, the derivative claims for alleged failure to provide accurate itemized wage statements and waiting time penalties also should not be certified.[27]

**X.    PLAINTIFF IS AN INADEQUATE CLASS REPRESENTATIVE**

A putative class representative is inadequate "where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud."  *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010); *see also Hernandez v. Cnty. of Monterey*,

---

[27]    *See, e.g.*, *Dawson v. Hertz Transporting, Inc.*, 2018 WL 6112623, at *9-10 (C.D. Cal. Nov. 5, 2018) (denying certification of wage statement and UCL claims where they were "derivative of the [meal and rest period] claims and fail for the same reasons as [the underlying claims] do"); *Chavez v. AmeriGas Propane, Inc.*, 2015 WL 12859721, at *29 (C.D. Cal. Feb. 11, 2015) (denying certification of derivative claims for waiting time penalties and inaccurate wage statements; "Because the court concludes that Chavez's meal and rest break claims do not satisfy [the] commonality requirement, Chavez's derivative claims likewise do not satisfy that requirement.").

305 F.R.D. 132, 160 (N.D. Cal. 2015) ("an untrustworthy plaintiff could reduce the likelihood of prevailing on the class action and may be considered to have interests antagonistic to the class."). Here, Plaintiff's lack of credibility renders him an inadequate class representative because he was terminated for timecard fraud.

During his employment, Plaintiff understood that clocking out after he left his last store would constitute timecard falsification. (Ex. A at 76:25-78:12.) Nevertheless, Plaintiff admitted that, on multiple occasions, he clocked out after he left the last store for the day, that he was obligated to correct the incorrect time entries, but that he failed to do so. (Ex. A at 79:5-12, 81:17-82:17.) Once ABC discovered Plaintiff's practice of clocking out miles away from his last store on his way home, ABC terminated Plaintiff's employment for timecard fraud. (Ex. B at 242:3-21, Ex. 29.)

To make matters worse, when asked at his deposition why his employment with ABC ended, Plaintiff stated that he was terminated as part of a layoff. (Ex. A at 17:20-19:6.) However, when confronted with evidence of his timecard fraud, Plaintiff admitted that ABC had in fact informed him that was the reason for his termination. (*Id.*)

In a class action alleging underpayment of wages, the veracity of timecards is central to the litigation. At least one court specifically found a class representative to be inadequate in pursuing a wage and hour class action where "questions surrounded his purported falsification of time records and other documents." *Jaimez v. Daiohs USA, Inc.* 181 Cal. App. 4th 1286, 1307-08 (2010). As Plaintiff has made misrepresentations about issues that are material to the case, he is not an adequate class representative.

Furthermore, Rule 23(a)(3) requires that "the claims or **defenses** of the representative parties are typical of the claims or **defenses** of the class." The Ninth Circuit has made clear that "a named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). If this matter proceeds to trial, Plaintiff's falsified timecards will present defenses unique to Plaintiff that will detract from the interest of the putative class

members at trial.  Not only would ABC be entitled to any offset for any overpayment of wages, but if the amount of overpayment exceeds any uncompensated time, then Plaintiff has suffered no damages and lacks standing to pursue his claims.[28]

## XI.  THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR ADDITIONAL DISCOVERY

Plaintiff argues that, if the Court is inclined to deny certification, he should be granted "additional time to conduct pre-certification discovery" so he can "refile his motion at a later date."  (Mot., at 24:4-7.)  Plaintiff's request should be denied.

Here, Plaintiff filed his Complaint on April 16, 2019, i.e., more than six months before he filed his motion for class certification.  (*See* Dkt. No. 1, Ex. A.)  Since ABC removed this action, the Court has granted Plaintiff two extensions of time to submit his motion for class certification.  (*See* Dkt. Nos. 13, 26.)  Furthermore, Plaintiff does not set forth what additional discovery he intends to conduct or how it would address the issues raised by Defendants.  Nor has Plaintiff made any showing of good cause to grant his request.  Therefore, Plaintiff's request should be denied.  *See Litty v. Merrill Lynch & Co.*, 2014 WL 5904907 (C.D. Cal. Aug. 4, 2014), at *10 n.5.

## XII.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's Motion be denied in its entirety, with prejudice.

DATED: November 8, 2019

Respectfully submitted,
SEYFARTH SHAW LLP

By: */s/ Daniel Whang*
    Daniel Whang
    David Rosenberg
    Olivia Wada
Attorneys for Defendants The American Bottling Company and Keurig Dr Pepper Inc.

---

[28] *See J. C. Peacock, Inc. v. Hasko*, 196 Cal. App. 2d 353, 359 (1961) (stating that an employer "may recover back any overpayments secured through fraud or mistake.").  *See also English v. Apple Inc.*, 2016 WL 1188200, at *8 (N.D. Cal. Jan. 5, 2016) ("The danger that the issue of her individual standing will become the focus of this litigation and will ultimately prejudice the class makes English an atypical and inadequate class representative with respect to her second theory of liability.").

25